IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DR. MARK A. BARRY,                          :
                                            :
            Plaintiff,                       :
                                            :
    v.                                       :          C.A. No.:
                                            :
STRYKER CORPORATION,                         :          **JURY TRIAL DEMANDED**
                                            :
            Defendant.                       :

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Dr. Mark A. Barry ("Dr. Barry"), through his undersigned counsel, hereby alleges as follows:

**I.      THE PARTIES**

1.      Dr. Barry is an orthopedic surgeon who resides in San Diego, California.  Dr. Barry is sole owner of United States Patent Nos. 7,670,358 ("the '358 patent"); 8,361,121 ("the '121 patent"); 9,339,301 ("the '301 patent"); 9,668,787 ("the '787 patent"); and 9,668,788 ("the '788 patent") (collectively, the "Asserted Patents").

2.      On information and belief, Defendant Stryker Corporation ("Stryker") is a corporation organized and existing under the laws of the state of Delaware, with a registered agent The Company Corporation at 251 Little Falls Drive, Wilmington, DE 19808.

**II.     JURISDICTION AND VENUE**

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*  The Court has subject matter jurisdiction pursuant to 35 U.S.C. §§ 1331 and 1338(a).

4.      The Court has personal jurisdiction over Stryker because it is incorporated in Delaware and thus resides within this judicial district.

5.      Venue is proper pursuant to 28 U.S.C. § 1400(b) because Stryker is incorporated in Delaware and thus resides in this judicial district.

## III.    THE '358 PATENT

6.      On March 2, 2010, the United States Patent and Trademark Office issued the '358 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit A.)

7.      Dr. Barry is the owner of all right, title, and interest in the '358 patent, including the right to sue, enforce, and recover damages for all infringements.

8.      The '358 patent has not expired and is in full force and effect.

9.      Pursuant to 35 U.S.C. § 282, the '358 patent and each of its claims are presumed valid and enforceable.

10.     The '358 patent contains claims, for example claims 4 and 5, directed to a method of derotating vertebrae via the simultaneous application of force to linked engagement members attached to implanted pedicle screws.

## IV.    THE '121 PATENT

11.     On January 29, 2013, the United States Patent and Trademark Office issued the '121 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit B.)

12.     Dr. Barry is the owner of all right, title, and interest in the '121 patent, including the right to sue, enforce, and recover damages for all infringements.

13.    The '121 patent has not expired and is in full force and effect.

14.    Pursuant to 35 U.S.C. § 282, the '121 patent and each of its claims are presumed valid and enforceable.

15.    The '121 patent contains claims, for example claims 2, 3, and 4, directed to a system used in derotating vertebrae via the simultaneous application of force to linked engagement members attached to implanted pedicle screws.

## V.    THE '301 PATENT

16.    On May 17, 2016, the United States Patent and Trademark Office issued the '301 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit C.)

17.    Dr. Barry is the owner of all right, title, and interest in the '301 patent, including the right to sue, enforce, and recover damages for all infringements.

18.    The '301 patent has not expired and is in full force and effect.

19.    Pursuant to 35 U.S.C. § 282, the '301 patent and each of its claims are presumed valid and enforceable.

20.    The '301 patent contains claims, for example claims 1-10, directed to both a system for use in, as well as the method for, derotating vertebrae via the simultaneous application of force to linked engagement members attached to implanted pedicle screws.

## VI.    THE '787 PATENT

21.    On June 6, 2017, the United States Patent and Trademark Office issued the '787 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit D.)

22.     Dr. Barry is the owner of all right, title, and interest in the '787 patent, including the right to sue, enforce, and recover damages for all infringements.

23.     The '787 patent has not expired and is in full force and effect.

24.     Pursuant to 35 U.S.C. § 282, the '787 patent and each of its claims are presumed valid and enforceable.

25.     The '787 patent contains claims, for example claims 1-9, directed to a method for derotating vertebrae via the simultaneous application of force to linked elongated levers attached to implanted pedicle screws.

## VII.    THE '788 PATENT

26.     On June 6, 2017, the United States Patent and Trademark Office issued the '788 patent, entitled SYSTEM AND METHOD FOR ALIGNING VERTEBRAE IN THE AMELIORATION OF ABERRANT SPINAL COLUMN DEVIATION CONDITIONS. (Copy Attached as Exhibit E.)

27.     Dr. Barry is the owner of all right, title, and interest in the '788 patent, including the right to sue, enforce, and recover damages for all infringements.

28.     The '788 patent has not expired and is in full force and effect.

29.     Pursuant to 35 U.S.C. § 282, the '788 patent and each of its claims are presumed valid and enforceable.

30.     The '788 patent contains claims, for example claims 1-6, directed to a system for use in derotating vertebrae via the simultaneous application of force to linked elongated levers attached to implanted pedicle screws.

## VIII.    KNOWLEDGE OF DR. BARRY'S PATENTS AND PATENT RIGHTS

31.     Stryker manufacturers medical devices and competes in the relevant area of spinal correction with various companies.

32.     Given the competitive landscape in which Stryker operates, on information and belief, Stryker has monitored not only the products and techniques offered by its competitors, but also the intellectual property and licenses competitors have reached regarding third-party intellectual property rights.

33.     As stated on the face of the '358 patent, Dr. Barry's earliest patent at issue in this Complaint and the parent to the other Asserted Patents, Dr. Barry's '358 patent published in 2006.  Dr. Barry's patent rights were licensed by what is now known as Zimmer Biomet ("Biomet"), which initially commercialized Dr. Barry's invention and provides a licensed product called the Trivium Derotation System.  Upon information and belief, Stryker has known of Dr. Barry, his inventions, and his Asserted Patents for years.  Upon further information and belief, Stryker, through its efforts to keep appraised of its industry and/or the intellectual property associated with its industry, has known of the Asserted Patents as each was issued by the United States Patent and Trademark Office.

34.     In 2014, Dr. Barry sued Stryker's competitor, Medtronic, Inc. ("Medtronic"), in the Eastern District of Texas (Civil Action No. 1:14-cv-104) ("Medtronic Case") for infringement of two of the Asserted Patents at issue in this case: the '358 and '121 patents.  These patents are the parent patents to the remaining Asserted Patents in this Complaint.

35.     Dr. Barry asserted that Medtronic induced surgeons to infringe the '358 and '121 patents through their use of Medtronic's Vertebral Column Manipulation ("VCM") system.  Dr. Barry ultimately prevailed at trial.  The jury found Medtronic liable for willful infringement and that both patents were not invalid.  The court found against Medtronic on its inequitable conduct defense.  Medtronic lost its appeal to the United States Court of Appeals for the Federal Circuit, and the United States Supreme Court denied Medtronic's petition for a writ of certiorari.

36.    Medtronic filed several unsuccessful petitions for *inter partes* review of the '358 patent and '121 patent. Stryker knows of this fact.

37.    While the Medtronic case was on appeal, in 2017 Dr. Barry sued two additional Stryker competitors—Globus Medical, Inc. ("Globus") and various DePuy entities[1]—accusing them of inducing infringement of all Asserted Patents. Dr. Barry brought these actions in the United States District Court for the Eastern District of Pennsylvania (Civil Action Nos. 2:17-cv-02998 ("Globus Case") and 2:17-cv-03003 ("DePuy Case")). The Globus Case settled and was dismissed with prejudice on August 29, 2019. The DePuy Case is still pending.

38.    Upon information and belief, Stryker was aware of the Medtronic Case since the inception of that suit. At the very least, Stryker would have learned of Dr. Barry and his '358 and '121 patents no later than February 4, 2016, when Dr. Barry served Stryker with subpoenas in relation to the Medtronic Case.

39.    Stryker was aware of the '301 patent, '787 patent, and '788 patent at least by or around August 28, 2017, when Dr. Barry sent Stryker a letter regarding its infringement of the Asserted Patents.

40.    Upon information and belief, Stryker has been aware of Medtronic's VCM system since that product was released on the market. Stryker knows that Medtronic was found to willfully infringe the '358 and '121 patents through Medtronic's inducement of surgeons to use the VCM system.

41.    Likewise, upon information and belief, Stryker has been aware of Biomet's Trivium Derotation System since that product was released on the market.

---

[1] The DePuy defendants consist of DePuy Synthes Products, Inc., Medical Device Business Services, Inc., and DePuy Synthes Sales, Inc. (d/b/a DePuy Synthes Spine).

42.     In light of all of the indications of the patented methods and systems that Stryker's products implemented, Stryker should have been compelled to conduct a patent search that would identify Dr. Barry's patent rights.  To the extent Stryker did not do so, such conduct was intentional, or at the very least, Stryker was willfully blind to Dr. Barry's patent rights.

43.     Based on these facts, Stryker has either affirmatively known of Dr. Barry's intellectual property covering the equipment and techniques associated with the Stryker Products as described herein, or at the very least, been willfully blind to the existence of that intellectual property and its relation to the Stryker Products as described herein.

## IX.     STRYKER PRODUCTS

44.     The term "Stryker Products" as used herein refers to the EVEREST® Deformity Spinal System, MESA® 2 Deformity Spinal System, Xia® 3 SUK Direct Vertebral Rotation ("DVR") System, and any other Stryker instruments manufactured, sold, distributed, loaned, consigned, or otherwise used to derotate *en bloc* multiple levels of vertebrae.

45.     Upon information and belief, the Stryker Products were designed to compete in the market with products such as Medtronic's VCM kit and Biomet's Trivium Derotation System.

EVEREST

46.     Stryker has manufactured, sold, distributed, loaned, consigned, or otherwise made available vertebral derotation instruments under the name EVEREST® Deformity Spinal System.

47.     The following image of the EVEREST® Deformity Spinal System shows five reducers, or levers, attached to five pedicle screws and connected via a coupler along the spine. This image was taken from the EVEREST® Deformity Spinal System Surgical Technique Guide, which is attached hereto as Exhibit F (Surgical Technique Guide), at 14.



48.    The reducers can be attached to any combination of pedicle regions on either side of the spine.  Exhibit F at 12.  Upon information and belief, the couplers can connect reducers across the spine.  Upon further information and belief, surgeons have used EVEREST® Deformity Spinal System instruments to build constructs with at least six reducers or levers attached to six pedicle screws and connected via couplers both along the length of the spine as well as transversely across the spine, and thereafter performed a derotation maneuver.

49.    The coupling feature allows for *en bloc* vertebral derotation which distributes force over multiple vertebral levels.

50.    According to the EVEREST® Deformity Spinal System Surgical Technique Guide's description, the system can be used with the EVEREST® line of implantable products. *See generally* Exhibit F.

MESA 2

51.    Stryker has manufactured, sold, distributed, loaned, consigned, or otherwise made available vertebral derotation instruments under the name MESA® 2 Deformity Spinal System.

52.    The following image of the MESA® 2 Deformity Spinal System shows 10 rods, or levers, attached to 10 pedicle screws.  Couplers connect the 10 rods (in sets of two)

transversely across the spine.  This image comes from the MESA® 2 Deformity Spinal System Surgical Technique Guide, which is attached hereto as Exhibit G (MESA 2 Surgical Technique Guide), at 22.



53.     The rods can be attached to any combination of pedicle regions on either side of the spine.  Exhibit G at 22-23.  Upon information and belief, the couplers can connect rods long the spine as well as across the spine.  Upon further information and belief, surgeons have used MESA® 2 Deformity Spinal System instruments to build constructs with at least six rods attached to six pedicle screws and connected via couplers both along the length of the spine as well as transversely across the spine, and thereafter performed a derotation maneuver.

54.     Stryker explains and instructs that its MESA® 2 Deformity Spinal System can be used to perform both segmental and *en bloc* derotation: "Revolutionary Design of Crickets Provides Ability to Accomplish Correction Maneuvers in All Planes & Design Allows for Quick Removal," "Ability to Segmentally or Globally Derotate Spine to Achieve Axial Plane Correction," and "Streamlined Instrumentation Provides Slow, Controlled Correction of Spine While Distributing Forces Across Entire Construct."  *See* Exhibit G at 3.

55.     According to the MESA® 2 Deformity Spinal System Surgical Technique Guide, the MESA® 2 Deformity Spinal System can be used with the MESA® line of implantable products.  *See generally* Exhibit G.

XIA 3

56.    Stryker has manufactured, sold, distributed, loaned, consigned, or otherwise made available vertebral derotation instruments under the name Xia® 3 SUK DVR system.

57.    The following image of the Xia® 3 SUK DVR system shows eight rods or levers attached to eight pedicle screws and connected via clamps along the length of the spine as well as transversely across the spine.  The following image comes from the Xia® 3 Spinal System Surgical Technique Guide, which is attached hereto as Exhibit H, at 37.  Upon information and belief, surgeons have built such constructs suing the Xia® 3 SUK DVR system and thereafter performed derotation maneuvers.



58.    Stryker acknowledges that its "Xia 3 Spinal System is a comprehensive system designed to treat modern spinal deformity" and can be used "to perform *Segmental* as well as *En Bloc* vertebral body derotation maneuvers."  *See* Exhibit I (Xia 3 Spinal System AIS Surgical Technique Guide) at 3; *see also* Exhibit H, at 37.

59.    According to the Xia® 3 Spinal System Surgical Technique Guide, the Xia® 3 SUK DVR System can be used with the Xia® line of implantable products.  *See generally* Exhibits H & I.

60.    Stryker specifically and intentionally has designed the Stryker Products to be competitive in the market, making use of industry norms in the standard of care such as *en bloc* derotation, and upon information and belief, has and will continue to educate, encourage, direct, train, or otherwise induce the performance of methods and construction of instruments that make use of those norms.

## X.    COUNT I: WILLFUL INFRINGEMENT OF THE '358 PATENT

61.    Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

EVEREST

62.    Stryker, without license or authorization to do so, induces the infringement of the '358 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the EVEREST® Deformity Spinal System to surgeons performing spinal derotation procedures resulting in the performance of the methods of at least claim 4 of the '358 patent.

63.    Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons on how to perform spinal derotation procedures using the EVEREST® Deformity Spinal System that infringe at least claim 4 of the '358 patent.

64.    For example, when assembled as instructed, the EVEREST® Deformity Spinal System involves implanting at least two sets of pedicles screws in multiple levels of vertebrae, and using engagement members which act as levers attached to the pedicle screws.  As taught by Stryker, a spinal rod is passed through the head portions (or spinal rod conduits) of the implanted pedicle screws, which is then secured by an engagement means, shown by a representative set screw in the images from the technique guide.  Stryker teaches linking the engagement members

one to another on the same side of the spine. The linked engagement members form a representative "handle means," which is mechanically linked to those engagement members. With the exception of the screws and rods, the construct described in this paragraph is a representative pedicle screw cluster derotation tool.

65.    Stryker teaches the use of such constructs to perform a derotation maneuver of the engaged vertebrae.

66.    Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons on how to use a second pedicle screw cluster derotation tool—with the same components as discussed above—together with a second set of pedicle screws and second spinal rod, to perform a derotation maneuver that involves applying force to the handle means of both tools substantially simultaneously.

67.    On information and belief, the EVEREST® Deformity Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

68.    In this manner, Stryker induces surgeons to infringe at least claim 4 of the '358 patent when they use the EVEREST® Deformity Spinal System.

MESA 2

69.    Stryker, without license or authorization to do so, induces the infringement of the '358 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the MESA® 2 Deformity Spinal System to surgeons performing spinal derotation procedures resulting in the performance of the methods of at least claim 4 of the '358 patent.

70.    Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons on how to perform spinal derotation procedures using the MESA® 2 Deformity Spinal System that infringe at least claim 4 of the '358 patent.

71.    For example, when assembled as instructed, the MESA® 2 Deformity Spinal System involves implanting at least two sets of pedicles screws in multiple levels of vertebrae, and using engagement members which act as levers attached to the pedicle screws. As taught by Stryker, a spinal rod is passed through the head portions (or spinal rod conduits) of the implanted pedicle screws, which is then secured by an engagement means. Stryker teaches linking the engagement members one to another across the spine (i.e., transverse the spine). On information and belief, Stryker also teaches linking of engagement members on the same side of the spine (i.e., longitudinal linking). Such longitudinally linked engagement members form a representative "handle means," which is mechanically linked to those engagement members. With the exception of the screws and rods, the construct described in this paragraph is a representative pedicle screw cluster derotation tool.

72.    Stryker teaches the use of such constructs to perform a derotation maneuver of the engaged vertebrae.

73.    Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons on how to use a second pedicle screw cluster derotation tool—with the same components as discussed above—together with a second set of pedicle screws and second spinal rod, to perform a derotation maneuver that involves applying force to the handle means of both tools substantially simultaneously.

74.    On information and belief, the MESA® 2 Deformity Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct

the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

75.    In this manner, Stryker induces surgeons to infringe at least claim 4 of the '358 patent when they use the MESA® 2 Deformity Spinal System.

XIA 3

76.    Stryker, without license or authorization to do so, induces the infringement of the '358 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the Xia® 3 Spinal System to surgeons performing spinal derotation procedures resulting in the performance of the methods of at least claim 4 of the '358 patent.

77.    Stryker provides instruction, education, or encouragement to surgeons on how to perform spinal derotation procedures using the Xia® 3 Spinal System that infringe at least claim 4 of the '358 patent.

78.    For example, when assembled as instructed, the Xia® 3 Spinal System involves implanting at least two sets of pedicles screws in multiple levels of vertebrae, and using engagement members which act as levers attached to the pedicle screws.  As taught by Stryker, a spinal rod is passed through the head portions (or spinal rod conduits) of the implanted pedicle screws, which is then secured by an engagement means, such as the Xia buttress thread blocker. Stryker teaches linking the engagement members one to another across the spine (i.e., transverse the spine).  Stryker also teaches linking of engagement members on the same side of the spine (i.e., longitudinal linking).  Such longitudinally linked engagement members form a representative "handle means," which is mechanically linked to those engagement members. With the exception of the screws and rods, the construct described in this paragraph is a representative pedicle screw cluster derotation tool.

79.     Stryker teaches the use of such constructs to perform a derotation maneuver of the engaged vertebrae.

80.     Stryker provides instruction, education, or encouragement to surgeons on how to use a second pedicle screw cluster derotation tool—with the same components as discussed above—together with a second set of pedicle screws and second spinal rod, to perform a derotation maneuver that involves applying force to the handle means of both tools substantially simultaneously.

81.     On information and belief, the Xia® 3 Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

82.     In this manner, Stryker induces surgeons to infringe at least claim 4 of the '358 patent when they use the Xia® 3 Spinal System.

WILLFUL INFRINGEMENT OF THE '358 PATENT

83.     At all times relevant to this cause of action, Stryker provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons perform the methods of the '358 patent and infringe the claims therein.

84.     Stryker knows and at all relevant times has known of its infringement of the '358 patent or at the very least has been willfully blind to its infringement of the '358 patent.

85.     Because Stryker knows and at all relevant times has known of its infringement of the '358 patent, or at the very least has been willfully blind to its infringement of the '358 patent, its infringement is deliberate and willful.

86.     Dr. Barry has been and continues to be damaged and irreparably harmed by Stryker's infringement of the '358 patent.

87.     Upon information and belief, such infringement has been, and will continue to be, willful, and upon further belief, Stryker lacks any reasonable invalidity or non-infringement defenses making this case exceptional and entitling Dr. Barry to increased damages and reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

## XI.    COUNT II: WILLFUL INFRINGEMENT OF THE '121 PATENT

88.     Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

EVEREST

89.     Stryker, without license or authorization to do so, induces the infringement of the '121 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the EVEREST® Deformity Spinal System to surgeons performing spinal derotation procedures resulting in the assembly of systems that infringe at least claim 2 of the '121 patent.

90.     Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons performing spinal derotation procedures on how to assemble systems using the EVEREST® Deformity Spinal System that infringe at least claim 2 of the '121 patent.

91.     For example, Stryker has caused surgeons to assemble the EVEREST® Deformity Spinal System as described in paragraphs 65-67.  On information and belief, Stryker also provides instruction, education, or encouragement to surgeons on how to assemble the two pedicle screw cluster derotation tools described in those paragraphs with a minimum of three engagement members apiece, and further teaches the cross-linking, or connecting across the spine, of the two pedicle screw cluster derotation tools.  This construct infringes at least claim 2 of the '121 patent.

92.     Upon information and belief, the EVEREST® Deformity Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct

the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

MESA 2

93.     Stryker, without license or authorization to do so, induces the infringement of the '121 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the MESA® 2 Deformity Spinal System to surgeons performing spinal derotation procedures resulting in the assembly of systems that infringe at least claim 2 of the '121 patent.

94.     Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons performing spinal derotation procedures on how to assemble systems using the MESA® 2 Deformity Spinal System that infringe at least claim 2 of the '121 patent.

95.     For example, Stryker has caused surgeons to assemble the MESA® 2 Deformity Spinal System as described in paragraphs 72-74.   On information and belief, Stryker also provides instruction, education, or encouragement to surgeons on how to assemble the two pedicle screw cluster derotation tools described in those paragraphs with a minimum of three engagement members apiece, and further teaches the cross-linking, or connecting across the spine, of the two pedicle screw cluster derotation tools.  This construct infringes at least claim 2 of the '121 patent.

96.     Upon information and belief, the MESA® 2 Deformity Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

XIA 3

97.     Stryker, without license or authorization to do so, induces the infringement of the '121 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making

available the Xia® 3 Spinal System to surgeons performing spinal derotation procedures resulting in the assembly of systems that infringe at least claim 2 of the '121 patent.

98.    Stryker provides instruction, education, or encouragement to surgeons performing spinal derotation procedures on how to assemble systems using the Xia® 3 Spinal System that infringe at least claim 2 of the '121 patent.

99.    For example, Stryker has caused surgeons to assemble the Xia® 3 Spinal System as described in paragraphs 58 and 79-81.  Stryker also provides instruction, education, or encouragement to surgeons on how to assemble the two pedicle screw cluster derotation tools described in those paragraphs with a minimum of three engagement members apiece, and further teaches the cross-linking, or connecting across the spine, of the two pedicle screw cluster derotation tools.  This construct infringes at least claim 2 of the '121 patent.

100.    Upon information and belief, the Xia® 3 Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

WILLFUL INFRINGEMENT OF THE '121 PATENT

101.    At all times relevant to this cause of action, Stryker provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons construct and use the systems of the '121 patent and infringe the claims therein.

102.    Stryker knows and at all relevant times has known of its infringement of the '121 patent or at the very least has been willfully blind to its infringement of the '121 patent.

103.    Because Stryker knows and at all relevant times has known of its infringement of the '121 patent or at the very least has been willfully blind to its infringement of the '121 patent, its infringement is deliberate and willful.

104.    Dr. Barry has been and continues to be damaged and irreparably harmed by Stryker's infringement of the '121 patent.

105.    Upon information and belief, such infringement has been, and will continue to be, willful and upon further belief Stryker lacks any reasonable invalidity or non-infringement defense making this case exceptional and entitling Dr. Barry to increased damages and reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

## XII.    COUNT III: WILLFUL INFRINGEMENT OF THE '301 PATENT

106.    Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

EVEREST

107.    Stryker, without license or authorization to do so, induces the infringement of the '301 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the EVEREST® Deformity Spinal System to surgeons performing spinal derotation procedures resulting in the assembly of systems that infringe at least claim 1 of the '301 patent.

108.    Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons performing spinal derotation procedures on how to assemble systems using the EVEREST® Deformity Spinal System that infringe at least claim 1 of the '301 patent.

109.    For example, Stryker has caused surgeons to assemble the EVEREST® Deformity Spinal System as described in paragraph 92.  On information and belief, Stryker also provides instruction, education, or encouragement to surgeons on how to assemble the two pedicle screw cluster derotation tools described in that paragraph with a minimum of three engagement members apiece, where the engagement members of the two tools are attached to pedicle screws on the same vertebrae (in other words, and for example, in a three-by-three assembly), and further teaches the cross-linking of the two pedicle screw cluster derotation tools. This construct infringes at least claim 1 of the '301 patent.

110.    Upon information and belief, the EVEREST® Deformity Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

MESA 2

111.    Stryker, without license or authorization to do so, induces the infringement of the '301 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the MESA® 2 Deformity Spinal System to surgeons performing spinal derotation procedures resulting in the assembly of systems that infringe at least claim 1 of the '301 patent.

112.    Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons performing spinal derotation procedures on how to assemble systems using the MESA® 2 Deformity Spinal System that infringe at least claim 1 of the '301 patent.

113.    For example, Stryker has caused surgeons to assemble the MESA® 2 Deformity Spinal System as described in paragraph 96.  On information and belief, Stryker also provides instruction, education, or encouragement to surgeons on how to assemble the two pedicle screw cluster derotation tools described in that paragraph with a minimum of three engagement members apiece, where the engagement members of the two tools are attached to pedicle screws on the same vertebrae (in other words, and for example, in a three-by-three assembly), and further teaches the cross-linking of the two pedicle screw cluster derotation tools.  This construct infringes at least claim 1 of the '301 patent.

114.    Upon information and belief, the MESA® 2 Deformity Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

XIA 3

115.    Stryker, without license or authorization to do so, induces the infringement of the '301 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the Xia® 3 Spinal System to surgeons performing spinal derotation procedures resulting in the assembly of systems that infringe at least claim 1 of the '301 patent.

116.    Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons performing spinal derotation procedures on how to assemble systems using the Xia® 3 Spinal System that infringe at least claim 1 of the ' 301 patent.

117.    For example, Stryker has caused surgeons to assemble the Xia® 3 Spinal System as described in paragraph 100.  As shown in that paragraph and related images, Stryker provides instruction, education, or encouragement to surgeons on how to assemble the two pedicle screw cluster derotation tools described in that paragraph with a minimum of three engagement members apiece, where the engagement members of the two tools are attached to pedicle screws on the same vertebrae (in other words, and for example, in a three-by-three assembly), and further teaches the cross-linking of the two pedicle screw cluster derotation tools.  This construct infringes at least claim 1 of the '301 patent.

118.    Upon information and belief, the Xia® 3 Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

WILLFUL INFRINGEMENT OF THE '301 PATENT

119.    At all times relevant to this cause of action, Stryker provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons construct and use the systems of the '301 patent and infringe the claims therein.

- 21 -

120.    Stryker knows and at all relevant times has known of its infringement of the '301 patent or at the very least has been willfully blind to its infringement of the '301 patent.

121.    Because Stryker knows and at all relevant times has known of its infringement of the '301 patent or at the very least has been willfully blind to its infringement of the '301 patent, its infringement is deliberate and willful.

122.    Dr. Barry has been and continues to be damaged and irreparably harmed by Stryker's infringement of the '301 patent.

123.    Upon information and belief, such infringement has been, and will continue to be, willful and upon further belief Stryker lacks any reasonable invalidity or non-infringement defense making this case exceptional and entitling Dr. Barry to increased damages and reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

## XIII.    COUNT IV: WILLFUL INFRINGEMENT OF THE '787 PATENT

124.    Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

EVEREST

125.    Stryker, without license or authorization to do so, induces the infringement of the '787 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the EVEREST® Deformity Spinal System to surgeons performing spinal derotation procedures resulting in the performance of the methods of at least claim 6 of the '787 patent.

126.    Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons on how to perform spinal derotation procedures using the EVEREST® Deformity Spinal System that infringe at least claim 6 of the '787 patent.

127.    On information and belief, when assembled as instructed, the EVEREST® Deformity Spinal System involves implanting at least two sets of pedicles screws in two levels of vertebrae, and using elongated levers which act as levers attached to the pedicle screws (in other

words, and for example, in a two-by-two construct). As taught by Stryker, a spinal rod is passed through the head portions (or spinal rod conduits) of the implanted pedicle screws, which is then secured by an engagement means, shown by a representative set screw in the images from the technique guide. On information and belief, Stryker teaches linking the elongated levers one to another on the same side of the spine, as well as across the spine, such that a single force moves all elongated levers in unison.

128.    Stryker teaches the use of such constructs to perform a derotation maneuver of the engaged vertebrae.

129.    On information and belief, the EVEREST® Deformity Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the elongated levers resulting in the derotation of the vertebrae.

130.    In this manner, Stryker induces surgeons to infringe at least claim 6 of the '787 patent when they use the EVEREST® Deformity Spinal System.

MESA 2

131.    Stryker, without license or authorization to do so, induces the infringement of the '787 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the MESA® 2 Deformity Spinal System to surgeons performing spinal derotation procedures resulting in the performance of the methods of at least claim 6 of the '787 patent.

132.    Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons on how to perform spinal derotation procedures using the MESA® 2 Deformity Spinal System that infringe at least claim 6 of the '787 patent.

133.    On information and belief, when assembled as instructed, the MESA® 2 Deformity Spinal System involves implanting at least two sets of pedicles screws in two levels of

vertebrae, and using elongated levers which act as levers attached to the pedicle screws (in other words, and for example, in a two-by-two construct). As taught by Stryker, a spinal rod is passed through the head portions (or spinal rod conduits) of the implanted pedicle screws, which is then secured by an engagement means. On information and belief, Stryker teaches linking the elongated levers one to another on the same side of the spine, as well as across the spine, such that a single force moves all elongated levers in unison.

134. Stryker teaches the use of such constructs to perform a derotation maneuver of the engaged vertebrae.

135. On information and belief, the MESA® 2 Deformity Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the elongated levers resulting in the derotation of the vertebrae.

136. In this manner, Stryker induces surgeons to infringe at least claim 6 of the '787 patent when they use the MESA® 2 Deformity Spinal System.

XIA 3

137. Stryker, without license or authorization to do so, induces the infringement of the '787 patent by manufacturing, selling, distributing, loaning, consigning, or otherwise making available the Xia® 3 Spinal System to surgeons performing spinal derotation procedures resulting in the performance of the methods of at least claim 6 of the '787 patent.

138. Upon information and belief, Stryker provides instruction, education, or encouragement to surgeons on how to perform spinal derotation procedures using the Xia® 3 Spinal System that infringe at least claim 6 of the '787 patent.

139. When assembled as instructed, the Xia® 3 Spinal System involves implanting at least two sets of pedicles screws in two levels of vertebrae, and using elongated levers which act

as levers attached to the pedicle screws (in other words, and for example, in a two-by-two construct). As taught by Stryker, a spinal rod is passed through the head portions (or spinal rod conduits) of the implanted pedicle screws, which is then secured by an engagement means. Stryker teaches linking the elongated levers one to another on the same side of the spine, as well as across the spine, such that a single force moves all elongated levers in unison.

140. Stryker teaches the use of such constructs to perform a derotation maneuver of the engaged vertebrae.

141. On information and belief, the Xia® 3 Spinal System has been assembled in the above-described manner, such that when force is applied to the entire construct the force is received simultaneously across the engagement members resulting in the derotation of the vertebrae.

142. In this manner, Stryker induces surgeons to infringe at least claim 6 of the '787 patent when they use the Xia® 3 Spinal System.

WILLFUL INFRINGEMENT OF THE '787 PATENT

143. At all times relevant to this cause of action, Stryker provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons perform the methods of the '787 patent and infringe the claims therein.

144. Stryker knows and at all relevant times has known of its infringement of the '787 patent or at the very least has been willfully blind to its infringement of the '787 patent.

145. Because Stryker knows and at all relevant times has known of its infringement of the '787 patent or at the very least has been willfully blind to its infringement of the '787 patent, its infringement is deliberate and willful.

146. Dr. Barry has been and continues to be damaged and irreparably harmed by Stryker's infringement of the '787 patent.

147.     Upon information and belief, such infringement has been, and will continue to be, willful and upon further belief Stryker lacks any reasonable invalidity or non-infringement defense making this case exceptional and entitling Dr. Barry to increased damages and reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

## XIV.   COUNT V: WILLFUL INFRINGEMENT OF THE '788 PATENT

148.     Dr. Barry incorporates by reference the preceding paragraphs of this Complaint.

EVEREST

149.     For the reasons explained in paragraphs 126-130, Stryker has induced surgeons to infringe at least claim 1 of the '788 patent through their use of the EVEREST® Deformity Spinal System.

MESA 2

150.     For the reasons explained in paragraphs 132-136, Stryker has induced surgeons to infringe at least claim 1 of the '788 patent through their use of the MESA® 2 Deformity Spinal System.

XIA 3

151.     For the reasons explained in paragraphs 138-142, Stryker has induced surgeons to infringe at least claim 1 of the '788 patent through their use of the Xia® 3 Spinal System.

WILLFUL INFRINGEMENT OF THE '788 PATENT

152.     At all times relevant to this cause of action, Stryker provided the instruction, education, encouragement, or direction described above to surgeons with the intent of having those surgeons construct and use the system of the '788 patent and infringe the claims therein.

153.     Stryker knows and at all relevant times has known of its infringement of the '788 patent or at the very least has been willfully blind to its infringement of the '788 patent.

154.    Because Stryker knows and at all relevant times has known of its infringement of the '788 patent or at the very least has been willfully blind to its infringement of the '788 patent, its infringement is deliberate and willful.

155.    Dr. Barry has been and continues to be damaged and irreparably harmed by Stryker's infringement of the '788 patent.

156.    Upon information and belief, such infringement has been, and will continue to be, willful and upon further belief Stryker lacks any reasonable invalidity or non-infringement defense making this case exceptional and entitling Dr. Barry to increased damages and reasonably attorney's fees pursuant to 35 U.S.C. §§ 284 and 285.

## XV.    PRAYER FOR RELIEF

WHEREFORE, Dr. Barry requests the following relief:

A. Judgment under 35 U.S.C. § 271 that Stryker willfully infringes Dr. Barry's patents referenced and detailed above;

B. Damages under 35 U.S.C. § 284 adequate to compensate Dr. Barry for Stryker's willful infringement and continued infringement of Dr. Barry's patents referenced and detailed above;

C. Trebling or other enhancement of the damages pursuant to 35 U.S.C. § 284 as a result of Stryker's willful and deliberate acts of infringement;

D. Award pursuant to 35 U.S.C. § 284 of costs and pre- and post-judgment interest on Dr. Barry's compensatory damages; and

E. Award pursuant to 35 U.S.C. § 285 of Dr. Barry's attorneys' fees incurred in this action; and

      F. All other relief the Court deems warranted and appropriate.

## XVI.  JURY TRIAL REQUEST

     157.    Dr. Barry pursuant to the Seventh Amendment of the United States Constitution requests trial by jury on all issues properly heard by a jury.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Dominick T. Gattuso*
Dominick T. Gattuso (#3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Telephone: (302) 472-7311
dgattuso@hegh.law

*Attorneys for Plaintiff Dr. Mark A. Barry*

OF COUNSEL:

KILPATRICK TOWNSEND
& STOCKTON LLP
D. Clay Holloway
Mitchell G. Stockwell
Suite 2800, 1100 Peachtree Street NE
Atlanta, GA  30309-4528
Telephone:  404 815 6500
cholloway@kilpatricktownsend.com
mstockwell@kilpatricktownsend.com

Dario A. Machleidt
Kathleen R. Geyer
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Telephone: 206-467-9600
DMachleidt@kilpatricktownsend.com
KGeyer@kilpatricktownsend.com

Taylor J. Pfingst
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
TPfingst@kilpatricktownsend.com

Andrew W. Rinehart
1001 West Fourth Street
Winston-Salem, NC 27101
ARinehart@kilpatricktownsend.com

Dated:  December 30, 2020