IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DR. MARK A. BARRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1787 (RGA) |
| | ) | (CONSOLIDATED) |
| STRYKER CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**SEASPINE DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR
LEAVE TO AMEND ANSWER AND COUNTERCLAIMS**

Morris, Nichols, Arsht & Tunnell LLP
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
cclark@morrisnichols.com

OF COUNSEL:

*Attorneys for Defendants SeaSpine Holdings
Corporation, SeaSpine Orthopedics Corporation,
and SeaSpine, Inc.*

Chad T. Nitta
Jason S. Jackson
Heather N. Tilley
Kutak Rock LLP
1801 California Street, Suite 3000
Denver, CO  80202-2652
(303) 297-2400

August 19, 2022

## TABLE OF CONTENTS

Page

I.      Introduction. .................................................................................................. 1

II.     Nature and Stage of the Proceedings. ........................................................... 2

III.    Summary of Argument and Issues to be Decided by the Court. ................... 3

IV.     Relevant Factual Background and related actions. ....................................... 3

        A.      The Medtronic Action. ...................................................................... 3

        B.      The DePuy Action. ............................................................................ 4

        C.      SeaSpine Promptly Disclosed Its Inequitable Conduct Allegations. .................... 6

V.      Argument. ..................................................................................................... 6

        A.      Legal Standard. ................................................................................. 6

        B.      Pursuant to Rule 15, SeaSpine Should be Freely Granted Leave to Amend. ........ 7

                1.      SeaSpine has not unduly delayed in seeking leave to amend. ................... 7

                2.      The proposed amended pleadings will not unduly prejudice Barry. ......... 9

                3.      SeaSpine does not seek to file the Amended Answer and
                        Counterclaims for an improper purpose and the public interest
                        weighs in favor of allowing amendment. ................................ 10

                4.      The Amended Answer and Counterclaims are not futile. ........................ 11

        C.      Good Cause Exists to Grant SeaSpine Leave to Amend Pursuant to Rule
                16. ................................................................................................... 14

VI.     Conclusion. ................................................................................................. 16

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Gould, Inc.*,
  739 F.2d 858 (3d Cir. 1984)......................................................................8

*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006)......................................................................7

*Barry v. DePuy Synthes Products Inc.*,
  C.A. No. 17-3003-PD (E.D. Pa. June 5, 2017)..............................4, 5, 10

*Barry v. Globus Medical, Inc.*,
  C.A. No. 17-2998-PD (E.D. Pa. July 5, 2017)............................................4

*Barry v. Medtronic, Inc.*,
  C.A. No. 14-104, D.I. 1 (E.D. Tex. February 18, 2014)..................3, 4, 10

*Barry v. Stryker Corp.*,
  C.A. No. 20-1787-RGA (D. Del. Dec. 30, 2020) ......................................2

*Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*,
  2010 WL 2898286 (D. Del. July 20, 2010) .............................................11

*Biovail Laboratories Intern. SRL v. Andrx Pharm.*,
  LLC, C.A. Nos. 05-586 (GMS), 05-730 (GMS), 06-620 (GMS), 2007 WL
  3231684 (D. Del. May 4, 2007)................................................................14

*Cornell & Co. v. Occupational Safety & Health Review Comm'n*,
  573 F.2d 820 (3d Cir. 1978)......................................................................9

*Diaz-Cruz v. Williams*,
  No. 1:11-cv-1302, 2013 WL 2249293 (3d Cir. 2006) ..............................9

*Dole v. Arco Chem. Co.*,
  921 F.2d 484 (3d Cir. 1990)......................................................................7

*E. Minerals & Chems. Co. v. Mahan*,
  225 F.3d 330 (3d Cir. 2000).................................................................7, 14

*Eisai Co. v. Teva Pharm. USA, Inc.*,
  247 F.R.D. 445 (D.N.J. 2007)..................................................................16

*Enzo Life Scis., Inc. v. Digene Corp.*,
  270 F. Supp. 2d 484 (D. Del. 2003)...................................................11, 16

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)................................................................11, 12

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*,
   350 F.3d 1327 (Fed. Cir. 2003)..........................................................................11

*Foman v. Davis*,
   371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)...........................................6, 7, 10

*Int'l Constr. Products LLC v. Caterpillar Inc.*,
   C.A. No. 15-108-RGA, 2018 WL 4611216 (D. Del. Sept. 26, 2018) .....................................8

*Koken v. GPC Int'l, Inc.*,
   443 F. Supp. 2d 631 (D. Del. 2006).....................................................................11

*Leader Techs., Inc. v. Facebook, Inc.*,
   2010 WL 2545959 (D. Del., June 24, 2010).............................................................7

*Medtronic, Inc. v. Mark A. Barry*,
   IPR2015-00780, Paper No. 50 (P.T.A.B September 7, 2016) ..............................................4

*Roquette Frères v. SPI Pharma, Inc.*,
   C.A. No. 06-540-GMS, 2009 WL 1444835 (D. Del. May 21, 2009).........................11, 15, 16

*Shane v. Fauver*,
   213 F.3d 113 (3d Cir. 2000)..............................................................................6

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)..........................................................................12

**Other Authorities**

37 C.F.R § 1.56...............................................................................................11, 12

MPEP § 2001.04................................................................................................11

MPEP § 2001.06(c) (8th ed. Rev. 2, May 2004) ...............................................................11

**Rules and Statutes**

35 U.S.C. § 102(b) ..........................................................................................5, 9, 13

Fed. R. Civil P. 9.............................................................................................5, 11, 16

Fed. R. Civil P. 12............................................................................................11, 14

Fed. R. Civ. P. 15 ......................................................................................... *passim*

Fed. R. Civ. P. 16 ......................................................................................... *passim*

## I.     INTRODUCTION

Through a careful review of Plaintiff Mark A. Barry's ("Barry") voluminous—and on-going—document production, as well as prior case histories, deposition transcripts, patent file histories, and Barry's prior admissions, Defendants SeaSpine Holdings Corporation, SeaSpine Orthopedics Corporation, and SeaSpine, Inc. (collectively, "SeaSpine") have been able to piece together an often subtle, but unmistakeable, pattern and practice of misrepresentations by Barry before the United States Patent and Trademark Office ("PTO").  Further, SeaSpine's investigation has confirmed that Barry's deceptive concealment from the PTO was intentional rather than the product of "innocent mistake."  SeaSpine's good faith effort to explore fully the underlying facts—which undeniably took considerable time as well as effort[1]—supports a finding of good cause to grant SeaSpine's motion for leave to file the Amended Answer and Counterclaims.[2]

Of equal importance to SeaSpine's diligent investigation, Barry cannot demonstrate that he will be prejudiced if SeaSpine is granted leave to file the Amended Answer and Counterclaims. Barry has been on notice of SeaSpine's intent to add a defense and counterclaim of unenforceability for inequitable conduct since at least June 30, 2022 when SeaSpine disclosed the facts and theories underlying its inequitable conduct allegations in its Initial Invalidity Contentions.[3]  (*See* SeaSpine's Patent Initial Invalidity Contentions, attached as Exhibit 1 at pp. 11-12, 87).  In addition, because SeaSpine's allegations are based on *Barry's own conduct*, Barry

---

[1] SeaSpine's investigation is still ongoing and discovery is still open.

[2] SeaSpine's Amended Answer and Counterclaims to Plaintiff's Complaint for Patent Infringement and Second Amended Answer and Counterclaims and Jury Demand ("Amended Answer and Counterclaims") in clean and redline form are attached as Exhibits A and B, respectively, to SeaSpine's motion for leave.

[3] Indeed, SeaSpine's allegations did not escape Barry's attention.  To the contrary, Barry threatened to file a motion to strike SeaSpine's assertion of inequitable conduct.

cannot claim a lack of knowledge of the underlying facts.[4]  Finally, in the unlikely event that Barry demonstrates that he requires information from SeaSpine or a third party to respond to SeaSpine's inequitable conduct allegations, discovery is still open and Barry can seek additional documents and information if he so desires.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Barry filed this action on June 2, 2021, asserting claims for infringement of U.S. Patent Nos. 7,670,358 (the "'358 Patent"), 8,361,121 (the "'121 Patent"), 9,339,301 (the "'301 Patent"), 9,668,787 (the "'787 Patent"), and 9,668,788 (the "'788 Patent") (collectively, the "Asserted Patents").  (D.I. 1, ¶¶ 60, 75, 83, 93, 105).  SeaSpine's partial motion to dismiss [D.I. 9, C.A. No. 21-806-RGA] was denied on January 26, 2022 [D.I. 14] and SeaSpine filed its Answer and Counterclaims on February 9, 2022 [D.I. 17, C.A. No. 21-806-RGA].  On March 2, 2022, Barry filed a motion to dismiss SeaSpine's Counterclaims [D.I. 20, C.A. No. 21-806-RGA].  In response, SeaSpine filed its Amended Counterclaims on March 16, 2022 [D.I. 25, C.A. No. 21-806-RGA].

On March 21, 2022, the present action was consolidated with *Barry v. Stryker Corp.*, C.A. No. 20-1787-RGA (D. Del. Dec. 30, 2020).  SeaSpine produced Core Technical Documents on April 18, 2022 [D.I. 50, C.A. No. 20-1787-RGA], and Barry served his Infringement Contentions to SeaSpine on May 13, 2022 [D.I. 55, C.A. No. 20-1787-RGA].  The Parties subsequently engaged in written discovery requests and responses.  SeaSpine served its First Set of Requests for Production of Documents to Barry on June 13, 2022.  [D.I. 60, C.A. No. 20-1787-RGA].  A majority of SeaSpine's 81 requests sought discovery on Barry's understanding of the state of the art at the time he filed his invention and his public disclosures of his claimed invention.[5]

---

[4] Barry also cannot credibly claim surprise as he is facing inequitable conduct allegations in other pending lawsuits.

[5] *See, e.g.*, Request Nos. 11, 14-71.

(*See* SeaSpine's First Set of Requests for Production of Documents to Barry, attached as Exhibit 2. SeaSpine subsequently served its initial invalidity contentions on June 30, 2022.[6]   [D.I. 64, C.A. No. 20-1787-RGA].   On July 13, 2022, Barry served his Objections and Responses to SeaSpine's First Set of Requests for Production.   [D.I. 69, C.A. No. 20-1787-RGA].   To date, Barry has produced approximately 29,000 documents on a rolling basis, with the most recent production coming on August 10, 2022.

## III.   SUMMARY OF ARGUMENT AND ISSUES TO BE DECIDED BY THE COURT

Good cause exists to grant SeaSpine leave to file the Amended Answer and Counterclaims pursuant to Fed. R. Civ. P. 15 and 16 because: (i) the filing of the Amended Answer and Counterclaims has not been unduly delayed; (ii) the filing of the Amended Answer and Counterclaims will not unfairly prejudice Barry; (iii) the amendment is not brought for an improper purpose; and (iv) the amendment will not be futile.   *See* Fed. R. Civ. P. 15(a); 16(b).

## IV.   RELEVANT FACTUAL BACKGROUND AND RELATED ACTIONS

### A.   The Medtronic Action.

Barry accused Medtronic, Inc. ("Medtronic") of infringement of the '358 and '121 Patents in *Barry v. Medtronic, Inc.*, C.A. No. 14-104, D.I. 1 (E.D. Tex. February 18, 2014) (the "Medtronic Action").   On July 20, 2015, Medtronic filed its first amended answer and counterclaim in which it raised inequitable conduct as an affirmative defense.   (Medtronic's Counterclaims, attached as Exhibit 3).   Among the facts it cited in support of its allegations, Medtronic pointed to Figure 6 of the '358 Patent as invalidating prior art because it came from a surgery that occurred more than a year before the filing of the first application that gave rise to the patents asserted against Medtronic.

---

[6] Barry brought a Bates numbering error to SeaSpine's attention on June 30, 2022.   SeaSpine corrected the error and served Barry their Amended Initial Invalidity Contentions on July 5, 2022. (D.I. 65, C.A. No. 20-1787-RGA).

Unable to deny the timing of the surgery, Barry characterized the references in the patents to Figure 6 as a "mistake."  Barry subsequently filed multiple requests for Certificates of Correction for each of the patents he had accused Medtronic of infringing.  Because an *inter partes* review for the '358 Patent was pending at the time Barry filed his requests, Barry was forced to withdraw his request for correction with respect to the '358 Patent and filed a motion for correction with the PTAB.  The PTAB subsequently denied Barry's motion, raising doubts as to Barry's "mistake" and found a lack of good faith in making the request.  (*Medtronic, Inc. v. Mark A. Barry*, IPR2015-00780, Paper No. 50 at p. 8 (P.T.A.B September 7, 2016), attached as Exhibit 4).

Following the PTAB's denial of Barry's motion for correction, the Texas district court in the Medtronic Action found that "Dr. Barry must undertake the expense and effort of reexamination to correct the description in the '358 Patent."  (D.I. 443, Medtronic Action).  Approximately one week after judgment against Medtronic was entered, Barry circumvented the court's express instruction to seek reexamination by filing *another* request for Certificate of Correction for the '358 Patent.  Unaware of the court's ruling—because Barry did not disclose it— the PTO granted Barry's request to "correct" his "mistake" in the '358 Patent.

### B.      The DePuy Action.

Barry also accused DePuy Synthes Products ("DePuy") and related entities of infringement of the Asserted Patents in *Barry v. DePuy Synthes Products Inc.*, C.A. No. 17-3003-PD (E.D. Pa. June 5, 2017) (the "DePuy Action"), *consolidated with Barry v. Globus Medical, Inc.*, C.A. No. 17-2998-PD (E.D. Pa. July 5, 2017) (the "Consolidated Action").  In its answer filed Oct. 12, 2017, DePuy asserted an affirmative defense alleging "Barry's claims are barred in whole or in part by the doctrine of estoppel, waiver, unclean hands, inequitable conduct, and acquiescence." (D.I. 51, Consolidated Action).  Almost two years later, on September 20, 2019, Barry moved for judgment on the pleadings regarding DePuy's inequitable conduct defense, urging that DePuy had

failed to plead facts to support DePuy's affirmative defense that the Asserted Patents are invalid based on equitable defenses and DePuy's invalidity contentions could not remedy the deficient pleadings. (D.I. 103, DePuy Action). The court denied Barry's motion as untimely and, in the alternative, denied Barry's motion because "the goals for Rule 9(b)'s heightened pleading requirements" had been served as Barry had notice of the substance of DePuy's inequitable conduct defense as DePuy had elaborated on its equitable defense in its Invalidity Contentions. (D.I. 154 at p. 6, DePuy Action, attached as Exhibit 5).

Barry also moved for summary judgment as to DePuy's § 102(b) defense, by which DePuy alleged that Barry invalidated the Asserted Patents by employing his claimed method and system in commercial surgeries more than a year before applying for patent protection with the PTO. (D.I. 104, DePuy Action). In denying Barry's motion, the DePuy court noted that there were disputed factual issues as to whether there was reason to believe that Barry's invention worked for its intended purpose before the critical date in view of Barry's testimony as well as expert testimony.[7] (Exhibit 5 at pp. 13-17, 27).

As part of his rolling production in this action, Barry produced to SeaSpine, among thousands of other documents, copies of DePuy's invalidity contentions (Exhibit 6) and Barry's Supplemental Responses to Stryker's First Set of Interrogatories (Exhibit 7). When SeaSpine was finally able to dig through Barry's voluminous production and identify these and other key

---

[7] For example, Barry testified that he believed the 2003 surgeries were "scientifically validated with respect to safety and efficacy," and that he "considered them safer than prior art where single vertebrae were derotated." (Exhibit 5 at p. 9). Dr. Yassir, Barry's expert witness, testified that the 2003 surgeries were not "new and experimental medical procedure[s]." (*Id.* at p. 8). Dr. Lawrence Lenke also testified during the Medtronic trial that the performing surgeon is able to observe immediately if the procedure has been effective. (*Id.* at 14).

documents, it was able to undertake an investigation to confirm for itself whether sufficient facts existed to demonstrate that Barry had engaged in inequitable conduct before the PTO.

### C.      SeaSpine Promptly Disclosed Its Inequitable Conduct Allegations.

Although SeaSpine's investigation into Barry's inequitable conduct was and still is ongoing, SeaSpine put Barry on notice of its intent to raise a defense and counterclaim for inequitable conduct by including several allegations in its Invalidity Contentions regarding Barry's repeated failure to disclose his prior experimental use to the PTO.   In particular, SeaSpine identified several misrepresentations made by Barry, specifically his: (1) failure to disclose prior public use of the invention claimed in the Asserted Patents; (2) failure to disclose prior public sales of the invention claimed in the Asserted Patents; and (3) failure to disclose prior offers for sale of the invention claimed in the Asserted Patents.  (Exhibit 1 at pp. 11-12).

After serving its Invalidity Contentions, SeaSpine further determined, based on its review of transcripts that it identified among the thousands of documents produced by Barry, that Barry had made material misrepresentations to the PTO in his requests for Certificates of Correction. Although SeaSpine's review of Barry's voluminous production remains ongoing—and Barry continues to produce documents—SeaSpine's diligent investigative efforts to date have uncovered more than a reasonable basis for SeaSpine to assert affirmative defenses and counterclaims of inequitable conduct.

## V.      ARGUMENT

### A.      Legal Standard.

The grant or denial of a motion to amend a pleading is within the discretion of the court. *See* Fed. R. Civ. P. 15(a).  Under Rule 15(a), leave to amend is to be "freely given" when justice so requires.  *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  The Third Circuit has adopted a liberal policy

favoring the amendment of pleadings under Rule 15. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990). This standard ensures that claims are "decided on the merits rather than technicalities." *Id.* at 487. Accordingly, in the Third Circuit, leave to amend is ordinarily permitted absent a showing of "undue delay, bad, faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman*, 371 U.S. at 182; *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

Where a party moves to amend the pleadings after a deadline imposed by a scheduling order, Rule 16 must also be satisfied. *See E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). Under Rule 16(b), "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). "Good cause" exists when the ordered schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Leader Techs., Inc. v. Facebook, Inc.*, 2010 WL 2545959, at *3 (D. Del., June 24, 2010) (citing Fed. R. Civ. P. 16(b)(4) Advisory Committee's Notes (1983 amendments)).

**B.      Pursuant to Rule 15, SeaSpine Should be Freely Granted Leave to Amend.**

The factors to consider in weighing a motion to amend pursuant to Fed. R. Civ. P. 15 are well settled: (i) whether the amendment has been "unduly delayed;" (i) whether the amendment would unfairly prejudice the non-moving party; (iii) whether the amendment is brought for some improper purpose; and (iv) whether the amendment is futile. *See Arthur*, 434 F.3d at 204. Each of the foregoing factors weigh in favor of granting SeaSpine leave to file the Amended Answer and Counterclaims.

**1.      SeaSpine has not unduly delayed in seeking leave to amend.**

In the Third Circuit, "[d]elay alone is not sufficient to justify denial of leave to amend." *Id.* (noting that "only one appellate court . . . has approved denial of leave to amend based on a delay

of less than one year'); *see also Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) ("The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay.")  SeaSpine has shown diligence, "which means its amendment has not been unduly delayed."  *Int'l Constr. Products LLC v. Caterpillar Inc.*, C.A. No. 15-108-RGA, 2018 WL 4611216, at *4 (D. Del. Sept. 26, 2018).

The timing of SeaSpine's decision to seek leave to amend is not the product of undue delay. Rather, it is the result of SeaSpine's *diligence*.  As set forth *infra*, SeaSpine has worked diligently to piece together a long-running but often subtle pattern of misrepresentation by Barry before the PTO.  Among other things, SeaSpine has had to sift through Barry's numerous filings with the PTO as well as Barry's voluminous testimony from a number of other proceedings while at the same time responding to Barry's own discovery requests and preparing its invalidity contentions. Further, although Barry has produced documents in discovery relating to assertions of inequitable conduct by other entities sued by Barry, SeaSpine has not blindly relied on those allegations to support its own assertion of inequitable conduct.  Rather, SeaSpine has reviewed the thousands of documents produced by Barry in this case—with more being produced on a regular basis—and used those documents to form the basis of its allegations.  More than that, SeaSpine has used multiple sources of information to stitch together a timeline of Barry's conduct and compared that with various inconsistent representations made by Barry.

The product of  SeaSpine's efforts is a well-documented pattern of deceptive conduct by Barry that includes repeated failures to disclose several of his prior art *en bloc* derotation surgeries to the PTO during prosecution of the Asserted Patents, Barry's improper amendment by a post-issuance certificate of correction to conceal the patent-defeating nature of a prior art *en bloc* derotation surgery, as well as materially false statements contained within Barry's *multiple*

8

improper certificates of correction.  SeaSpine should not be faulted for taking the time to consider carefully Barry's conduct before the PTO prior to filing the present motion for leave to amend.

### 2. The proposed amended pleadings will not unduly prejudice Barry.

The question of whether granting leave to amend will result in undue prejudice to the opposing party has been held to be the most important factor courts consider in deciding whether to allow or deny such leave.  *See Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978).  Indeed, "[t]he Third Circuit has instructed that 'undue prejudice is the touchstone for the denial of leave to amend.'"  *Diaz-Cruz v. Williams*, No. 1:11-cv-1302, 2013 WL 2249293, at *2 (3d Cir. 2006).

To evaluate prejudice for purposes of granting leave to amend pursuant to Rule 15, the reviewing court should focus on the hardship to the non-movant if the amendment is permitted. Here, there is no hardship to Barry if SeaSpine is permitted to file the Amended Answer and Counterclaims.  Barry has formally been on notice of SeaSpine's intent to pursue an inequitable conduct defense and counterclaims since at least June 30, 2022 when SeaSpine served its Invalidity Contentions.  (Initial Invalidity Contentions at pp. 11-12, 87).  Further, in addition to the allegations set forth therein specifically regarding Barry's inequitable conduct, SeaSpine's Invalidity Contentions also assert anticipation under 35 U.S.C. § 102(b) based on Barry's prior public disclosures, sales, and offers to sell that occurred prior to the critical date of the Asserted Patents. (Initial Invalidity Contentions at pp. 5-11).  These allegations also support a defense and counterclaim for inequitable conduct because, as set out in the Amended Answer and Counterclaims, Barry failed to disclose these prior public disclosures, sales, and offers to sell to the PTO during prosecution of the Asserted Patents.  (*See, e.g.,* Amended Answer and Counterclaims at ¶¶ 52-228).  Moreover, similar allegations of inequitable conduct have been asserted against Barry by defendants in parallel proceedings, including by both Medtronic and

9

DePuy.  (*See* D.I. 62 at ¶ 108, Medtronic Action; D.I. 51 at ¶ 138, DePuy Action).  Finally, SeaSpine's assertion of inequitable conduct is based on facts *known* to Barry, including his own statements and representations to the PTO, as well as documents *produced* by Barry.  The only prejudice that Barry can reasonably claim is that SeaSpine was able to sift through the tens of thousands of documents Barry produced in order to piece together the pattern of Barry's inequitable conduct.

Accordingly, Barry will not be prejudiced by the Amended Answer and Counterclaims because Barry has had—and in fact, *still* has—ample notice and opportunity to conduct discovery on the issue of his inequitable conduct.  SeaSpine's inequitable conduct allegations are supported by discovery in Barry's possession or obtainable by Barry during the discovery period set forth in the present Scheduling Order.  This "touchstone" factor therefore strongly weighs in favor of allowing SeaSpine leave to file the Amended Answer and Counterclaims.

> **3.     SeaSpine does not seek to file the Amended Answer and Counterclaims for an improper purpose and the public interest weighs in favor of allowing amendment.**

The third factor for the Court to consider is whether SeaSpine is seeking the amendment in bad faith or for an improper purpose.  *See Foman*, 371 U.S. at 182.  Here, the amendment is not brought for an improper purpose, dilatory motive, or in bad faith.  Rather, SeaSpine confirmed inequitable conduct as a legitimate defense and counterclaim during discovery and has properly pleaded the relevant facts with the requisite particularity. Further, SeaSpine has no dilatory motive—the case is still in the early stages of discovery, and both parties are still able to seek discovery related to the defense.  Apart from the deadline to amend, there will be no other disruption to the Scheduling Order and the integrity of the established trial date and discovery cut-off date can therefore be maintained.  SeaSpine's proposed amendments are motivated by its desire

to have this case fully decided on the merits and are brought in good faith.  This factor therefore weighs in favor of allowing SeaSpine leave to file the Amended Answer and Counterclaims.

### 4.    The Amended Answer and Counterclaims are not futile.

Finally, SeaSpine's proposed Amended Answer and Counterclaims should be allowed because the proposed amended counterclaim and defense for inequitable conduct is not futile.  An amendment is futile when it "fails to state a claim upon which relief can be granted, or 'advances a claim or defense that is legally insufficient on its face'."  *Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, 2010 WL 2898286, at *1 (D. Del. July 20, 2010) (quoting *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006); *see also Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003).

The same standard of legal sufficiency as under Rule 12(b)(6) is applied in assessing futility of a proposed amendment.  *Roquette Frères v. SPI Pharma, Inc.*, C.A. No. 06-540-GMS, 2009 WL 1444835, at *3 (D. Del. May 21, 2009).  Inequitable conduct before the PTO must be pleaded with particularity in accordance with Rule 9(b).  *See Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003).  To plead the circumstances of inequitable conduct with the requisite particularity under Rule 9(b), the Amended Answer and Counterclaims need only identify (not prove) the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).

Under 37 C.F.R. § 1.56(a), "applicants have a duty to disclose to the PTO information of which they are aware which is material to the examination of the application."  Importantly, the duty to disclose is not limited to prior art—*any* material information must be disclosed.  (*See* MPEP § 2001.04) (8th ed. Rev. 2, May 2004); *see also* MPEP § 2001.06(c) (8th ed. Rev. 2, May 2004) ("At a minimum, the applicant should call the attention of the Office to the litigation, the existence

and the nature of any allegations relating to validity and/or "fraud," or "inequitable conduct" relating to the original patent, and the nature of litigation materials relating to these issues."). Additionally, a false statement submitted in an affidavit or other signed document—including in a certificate of correction—is *presumed* material. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011). Thus, the duty is violated and the patent will be rendered unenforceable for inequitable conduct if an applicant fails to disclose material information or makes false or misleading statements with an intent to deceive or mislead the PTO. *See* 37 C.F.R § 1.56 ("[N]o patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct.").

Here, SeaSpine's proposed Amended Answer and Counterclaims include sufficient allegations of underlying facts from which the Court may reasonably infer that Barry "(1) knew of the withheld material information and of the falsity of the material misrepresentations, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *See Exergen*, 575 P.3d at 1328-29. For example, the Amended Answer and Counterclaims allege that prior to meeting with his patent prosecution counsel, Barry conducted multiple surgeries using the method and apparatus of the invention and had published and presented on the methods, apparatus, and results of these surgeries in connection with the July 2004 11th International Meeting on Advanced Spine Techniques ("IMAST"). (Amended Answer and Counterclaims at ¶¶ 65, 244-253). Each prior surgery involved an *en bloc* derotation surgical procedure that Barry knew worked for its intended purpose when each procedure was complete, and Barry disclosed these prior surgeries to his patent prosecution counsel before preparing the patent application for the '358 Patent. (*Id.* at ¶¶ 62, 68-70, 77-78, 86-87). Yet, publicly-available documents as well as

12

documents produced by Barry *confirm* that Barry did not disclose the prior surgical procedures when he filed the application that resulted in the '358 Patent.  His strategic reason for doing so is obvious—the prior surgical procedures potentially invalidated the patent he was applying for under 35 U.S.C. § 102(b).  (Amended Answer and Counterclaims at ¶¶ 63, 65-69).

Not only did both Barry *and* his patent prosecution counsel intentionally withhold this information from the PTO to avoid its invalidating effect under 35 U.S.C. § 102(b), after Medtronic discovered Figure 6 (which disclosed one of the prior art surgeries) more than ten years after Barry filed the application that resulted in the '358 Patent, Barry filed *multiple* requests for a Certificate of Correction in effort to recharacterize Figure 6 as an investigational procedure "**in the development of the present invention**" rather than "**using the system and method of the present invention**."  (Amended Answer and Counterclaims at ¶¶ 267, 280).  Thus, Barry compounded his deceptive practice of withholding the existence of the prior surgeries from the PTO by making false representations to the PTO in order to further his scheme.

Considering the consistent pattern of Barry's lack of candor and good faith in his web of litigations, it is reasonable to infer that either or both Barry and his counsel intended to deceive the PTO.  Moreover, the withheld information was material to the PTO's issuance of the '358 Patent, as the withheld disclosures implicate the statutory bar to patentability under pre-AIA 35 U.S.C. § 102(b).

Intentional deception is the most reasonable inference that can be drawn from Barry's *repeated* efforts to avoid re-examination and re-cast Figure 6 as results observed during the "development phase" rather than results observed by practicing the claimed method and system (i.e., when the invention was "ready for patenting").  Moreover, Barry undertook these measures to correct the "mistake" with respect to Figure 6 after both the PTAB *and* a Texas district court

stated the requested "correction" was inappropriate for a Certificate of Correction and Barry "must undergo reexamination…"—the pattern of lack of candor and good faith is clear, and the timing of the events at issue strongly suggest that Barry strategically planned his actions to take advantage of the examiner's unawareness of the prior disclosures and inequitable conduct allegations and findings outside the PTO.  The only reasonable conclusion is that Barry and his counsel intended to deceive the PTO in connection with the certificates of correction.

SeaSpine has alleged the specific facts upon which it relies for its claim with the specificity required—the proposed Amended Answer and Counterclaims provides the "date, time, or place of the inequitable conduct" by, *inter alia*, identifying with specificity how and when Barry breached his duty of candor and how such breaches were material to the prosecution, and that Barry's decision to withhold information from the PTO during prosecution was deliberate and made with an intent to deceive the PTO.  These allegations are sufficient to plead a defense and counterclaim for inequitable conduct.  The proposed Amended Answer and Counterclaims are therefore not futile as they state a claim for inequitable conduct that would survive a Rule 12(b)(6) motion to dismiss and should therefore be permitted.

Under the multi-factor test applied by courts to consider requests for leave to amend pursuant to Fed. R. Civ. P. 15, the Court should grant SeaSpine leave to file the Amended Answer and Counterclaims.

**C.      Good Cause Exists to Grant SeaSpine Leave to Amend Pursuant to Rule 16.**

As the deadline to amend pleadings in the Scheduling Order has passed, SeaSpine must also satisfy the good cause requirement of Fed. R. Civ. P. 16.  *See E. Minerals*, 225 F.3d at 340. The District of Delaware has repeatedly found that good cause has been shown where facts needed to be investigated and confirmed to plead an inequitable conduct claim with the requisite particularity.  *See, e.g., Biovail Laboratories Intern. SRL v. Andrx Pharm.,* LLC, C.A. Nos. 05-

586 (GMS), 05-730 (GMS), 06-620 (GMS), 2007 WL 3231684, at *2 (D. Del. May 4, 2007) (granting leave to amend where defendant needed to learn and confirm the bases of its allegations of inequitable conduct, noting "a contrary ruling would tend to encourage knee jerk, thoughtless, and poorly grounded assertions of inequitable conduct by defendants in patent infringement actions); *see also Roquette Frères*, 2009 WL 1444835, at *5 (allowing defendant to amend its pleading to assert inequitable conduct based on information provided and confirmed through discovery).

Good cause exists for purposes of Rule 16(b)(4) because SeaSpine could not have met the deadline to amend pleadings under the Scheduling Order due to the fact that it needed time to carefully review thousands of pages of documents to piece together its inequitable conduct claims, including to: (1) determine whether any claim of the Asserted Patents captured the undisclosed "improvements" over the method Barry practiced when performing the June 10, 2003 surgery originally depicted in the now-corrected Figure 6; (2) determine whether the invention as claimed necessitated the "experimental" surgeries as Barry claims; (3) determine whether the information withheld by Barry and the misrepresentations made in the Certificates of Correction were significant; (4) determine whether the information withheld and the misrepresentations made were of the type that a surgeon could make in good faith and/or through innocent mistake; (5) review the relevant PTO practices and procedures in effect during the relevant time frame; and (6) determine whether the prosecution history indicated that the information withheld and misrepresentations made impacted the issuance and subsequent corrections to the Asserted Patents. During this time, SeaSpine was also working on its initial invalidity contentions, which were due on June 30, 2022, engaged with Barry in discovery disputes related to SeaSpine's reasonable

objection to discovery requests related to unaccused products, and was also working on claim construction disclosures, due August 12, 2022.

SeaSpine's time and care in investigating its theories and marshaling the facts was necessary given that Rule 9(b) requires that claims of inequitable conduct in patent cases be pled with particularity.  *See* Fed. R. Civ. P. 9(b); *Enzo* 270 F. Supp. 2d at 487-88.   Indeed, where inequitable conduct claims are made, the pleading party should confirm the factual allegations through discovery prior to filing.  *Id.* at 489; *see also Roquette Frères*, 2009 WL 1444835, at *5 (D. Del. May 21, 2009) (finding it "appropriate" for defendant to confirm proposed inequitable conduct allegations through discovery); *see also Eisai Co. v. Teva Pharm. USA, Inc.*, 247 F.R.D. 445, 449 (D.N.J. 2007) ("This Court cannot fault a party for waiting an extra couple of months to fully synthesize the information available to it before filing a motion to amend.  This is particularly true with regard to an allegation of inequitable conduct.").

As a direct result of SeaSpine's careful and methodical approach to reviewing the entirety of the record to confirm if any other information had been withheld by Barry during prosecution or other misrepresentations had been made, SeaSpine has been able to uncover additional facts not relied upon by Medtronic and DePuy to support their allegations of inequitable conduct.  For example, to SeaSpine's knowledge, DePuy did not raise the issue with respect to Barry's inappropriate behavior related to the Certificates of Correction.  Accordingly, SeaSpine has satisfied the "good cause" requirement under Rule 16 and SeaSpine should be granted leave to file the Amended Answer and Counterclaims.

## VI.    CONCLUSION

For at least the reasons set forth above, SeaSpine respectfully requests that the Court grant its Motion to File an Amended Answer, Defense, and Counterclaims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
cclark@morrisnichols.com

OF COUNSEL:

Chad T. Nitta
Jason S. Jackson
Heather N. Tilley
KUTAK ROCK LLP
1801 California Street, Suite 3000
Denver, CO  80202-2652
(303) 297-2400

*Attorneys for Defendants SeaSpine Holdings Corporation, SeaSpine Orthopedics Corporation, and SeaSpine, Inc.*

August 19, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 19, 2022, upon the following in the manner indicated:

Dominick T. Gattuso, Esquire                           *VIA ELECTRONIC MAIL*
Gillian L. Andrews, Esquire
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE  19801
*Attorneys for Plaintiff*

D. Clay Holloway, Esquire                              *VIA ELECTRONIC MAIL*
Mitchell G. Stockwell, Esquire
Courtney S. Dabbiere, Esquire
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
*Attorneys for Plaintiff*

Dario A. Machleidt, Esquire                            *VIA ELECTRONIC MAIL*
Kathleen R. Geyer, Esquire
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
*Attorneys for Plaintiff*

Taylor J. Pfingst, Esquire                             *VIA ELECTRONIC MAIL*
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
*Attorneys for Plaintiff*

Andrew W. Rinehart, Esquire                    *VIA ELECTRONIC MAIL*
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101
*Attorneys for Plaintiff*

/s/ *Brian P. Egan*

_____
Brian P. Egan (#6227)