IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DR. MARK A. BARRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1787 (RGA) (SRF) |
| | ) | CONSOLIDATED |
| STRYKER CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**SEASPINE DEFENDANTS' LETTER BRIEF IN SUPORT OF THEIR
MOTION TO STRIKE PLAINTIFF'S FIRST AND SECOND
<u>AMENDED IDENTIFICATIONS OF ACCUSED PRODUCTS</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants SeaSpine Holdings
Corp., SeaSpine Orthopedics Corp., and
SeaSpine, Inc.*

OF COUNSEL:

Chad T. Nitta
Jason S. Jackson
Heather N. Tilley
KUTAK ROCK LLP
1801 California Street, Suite 3000
Denver, CO  80202-2652
(303) 297-2400

October 20, 2022

Dear Judge Fallon,

Defendants SeaSpine Holdings Corporation, SeaSpine Orthopedics Corporation, and SeaSpine, Inc. (collectively, "SeaSpine") hereby submit this letter brief in support of their motion to strike Plaintiff's First and Second Amended Identifications of Accused Products. (D.I. 95).

## I. INTRODUCTION.

Throughout the discovery process in this litigation, Plaintiff has repeatedly accused SeaSpine of engaging in bad faith, dilatory delay tactics and has emphasized the paucity of SeaSpine's document production.[1] In so arguing, Plaintiff attempts to draw attention away from the simple fact that the principal cause of the discovery delays has been Plaintiff's systematic efforts to obtain documents and information about SeaSpine products that do not, by Plaintiff's own admission, infringe any claims of the Asserted Patents.

When SeaSpine refused to capitulate to Plaintiff's expansion of the scope of discovery, Plaintiff sought an order compelling SeaSpine to produce documents and information about products that Plaintiff did *not* accuse of infringement. Judge Andrews unequivocally *denied* Plaintiff's request and confirmed that the proper scope of discovery is limited to products accused of infringing the claims of the Asserted Patents.

In an effort to circumvent Judge Andrews' ruling and to expand the scope of discovery to obtain the very documents and information that he had been denied, Plaintiff subsequently "accused" *six* additional SeaSpine systems of infringement, including products that *far* exceeded the scope of the Complaint.[2] Fully aware that he could not allege facts that would support a finding that the newly-identified products infringe any of claims of the Asserted Patents, Plaintiff refused SeaSpine's request that he amend his Complaint and infringement contentions with supporting factual allegations. Accordingly, SeaSpine seeks the Court's assistance and requests an Order holding that that Plaintiff may not circumvent his Rule 11 obligations and Rule 8 pleading requirements by unilaterally expanding the scope of discovery and accusing products of infringement where the infringement assertion is neither supported by the allegations in the Complaint nor Plaintiff's existing infringement contentions.

## II. PROCEDURAL HISTORY.

The present discovery dispute flows directly from the Discovery Conference held by Judge Andrews on July 21, 2022 (the "Discovery Conference"). As Plaintiff conceded in his Letter Brief submitted in advance of the Discovery Conference, the asserted patent claims teach a specific type of spinal derotation called *en bloc* derotation. (D.I. 68 at 1.) (*See also* D.I. 1, Complaint at ¶¶ 17,

---

[1] Plaintiff repeatedly points to the volume of his own production as evidence of his own good faith discovery efforts yet he ignores that the vast majority of his production is merely a regurgitation of documents he gathered and produced in his numerous prior litigations.

[2] While Plaintiff has thus far only requested the production of core technical documents with respect to the newly-accused products, if discovery is allowed as to the products, Plaintiff will almost certainly demand that SeaSpine supplement its discovery as to the new products. Such a production will be incredibly burdensome.

1

22, 27, 32, and 37.)  In the Letter Brief, Plaintiff took the position that discovery should not be limited solely to systems that were intended for *en bloc* derotation but that he was entitled to discovery about spinal derotation systems that could be used to perform segmental derotation as well.  (D.I. 68 at 2-3.)  Plaintiff did not argue that he was entitled to discovery about products or systems that are not intended for spinal derotation.

During the Discovery Conference, counsel for Plaintiff confirmed that the Asserted Patents are limited to *en bloc* spinal derotation.  (**Ex. A**, Discovery Conference Tr. at 4:28-5:1) (stating "Dr. Barry's patents cover different methods and systems of en bloc derotation.")  Counsel for Plaintiff also reiterated that Plaintiff was only seeking discovery about SeaSpine's spinal derotation systems.  (*Id*. at 4:10-12) (stating "Dr. Barry's entitled to discovery beyond just the Daytona system.  We're entitled to derotation information from SeaSpine…")  After hearing argument, Judge Andrews rejected Plaintiff's request to expand discovery to non-accused products and specifically ruled that discovery in this case is limited to products accused of infringement.

In the wake of Judge Andrews' ruling, Plaintiff sent SeaSpine a letter in which Plaintiff purported to "amend" his identification of accused products to include three previously unaccused products (the "Amended Identification of Products").  (**Ex. B**.)  Plaintiff simply identified these newly accused products by name without providing Defendant any notice as to how or why these products infringe one or more claims of the Asserted Patents.  Plaintiff then demanded that SeaSpine produce core technical documents related to the newly accused products within 30 days.

SeaSpine responded to the Amended Identification of Accused Products and objected to Plaintiff's purported identification of additional accused products.  SeaSpine also requested that Plaintiff amend the Complaint and his infringement contentions to set forth facts to support an allegation that each of the new products infringe the claims of the Asserted Patents.  Plaintiff refused and instead served a Second Amended Identification of Asserted Patents, Accused Products, Preliminary Damages Model, and Confirmation of Production of File Histories in which he purported to accuse *five additional* SeaSpine systems of infringement.  (**Ex. C** at 1.)

### III.   ARGUMENT.

#### A.   The Infringement Allegations In The Complaint Are Limited To Spinal Derotation Products That Are Used For *En Bloc* Derotation.

It is well settled by courts in the Third Circuit that the scope of discovery is not limitless; rather, the scope of relevant discovery is circumscribed by the complaint and its allegations.  *See e.g., Castellani v. City of Atl. City*, 102 F. Supp. 3d 657, 663 (D.N.J. 2015) (*quoting Toth v. Cal. Univ. of Pa.*, No. 09–1692, 2011 WL 2436138, at *2 (W.D.Pa. June 15, 2011)).

In the Complaint for Patent Infringement, Plaintiff accuses the Daytona Deformity System, the Daytona Small Stature Spinal System, and "any other SeaSpine instruments manufactured, sold, distributed, loaned, consigned, or otherwise *used to derotate en bloc* multiple levels of vertebrae" of infringing the claims of the Asserted Patents.  (D.I. 1 at ¶ 51) (emphasis added.)  Simply put, as alleged in the Complaint, Plaintiff's infringement allegations are limited to SeaSpine's products used for *en bloc* spinal derotation. (*See id*. at ¶¶ 58, 60-65. 73-76, 83-86, and 93-97) (confirming that Plaintiff's infringement allegations are limited to products that can be used to perform *en bloc* spinal derotation).  Moreover, Plaintiff confirmed in the Complaint that the

2

Asserted Patents teach *en bloc* derotation. (*Id*. at ¶¶ 17, 22, 32 and 37.) Thus, based on the allegations in the Complaint as well as Judge Andrews' prior rulings, the scope of relevant discovery is properly limited to those spinal derotation products specifically identified in the Complaint (as well as in Plaintiff's initial Identification of Accused Products) that are used to perform *en bloc* derotation.

### B. Plaintiff Previously Sought To Expand The Scope of Discovery To Other Spinal Derotation Production, Which Judge Andrews Denied.

Despite the plain language in the Complaint, in his voluminous first set of discovery requests, Plaintiff served more than fifty Requests for Production that sought documents and information about products *other* than the accused Daytona system. Specifically, in the definitions that he included with his discovery requests, Plaintiff defined "Defendant Product" as products "intended for or capable of being used in a medical procedure to *correct a spinal deformity condition*, including *but not limited to*, the *en bloc* derotation of multiple levels of vertebrae." (**Ex. D** at 3) (emphasis added.) Thus, on the face of the definition, Defendant Products include products that are *not* capable of *en bloc* derotation—the only type of products accused of infringement in the Complaint. Plaintiff then promulgated Requests for Production and Interrogatories that sought documents and information about Defendant Products.

When SeaSpine declined to produce documents and information about Defendant Products other than the Daytona system—the only product identified in the Complaint and the only Seaspine system that can be used to perform *en bloc* derotation—Plaintiff sought an order compelling SeaSpine to respond to his discovery requests. However, Plaintiff did not seek to compel discovery about *all* Defendant Products—*i.e.* any product that could be used in a procedure to correct any spinal deformity condition. Instead, Plaintiff argued that discovery should not be limited to spinal derotation products used for *en bloc* derotation but rather it should be expanded to "reasonably similar" products that did not infringe the Asserted Patents—namely spinal derotation products that could be used for segmental derotation. (D.I. 68 at 1.) (*See also* D.I. 68-2.) In so arguing, Plaintiff conceded that the only products that are "reasonably similar" to the products accused of infringement in the Complaint are *spinal derotation products*.

After hearing argument from both sides, Judge Andrews rejected Plaintiff's request to expand the scope of discovery and ruled that discovery in this case is limited to products accused of infringement—SeaSpine's Daytona system. (**Ex. A**, Discovery Tr. at 20:21-25.)

### C. After The Discovery Conference, Plaintiff Accused Non Derotational Products Of Infringement.

Following the Discovery Conference, in a blatant attempt to circumvent the letter of Judge Andrews' Order and the spirit of the Default Standard for Discovery, Including Discovery of Electronically Stored Information (the "Default Standard"), Plaintiff accused three new SeaSpine products of infringement: the Mariner Adult Deformity system, the Mariner MIS System, and the Mariner Pedicle Screw System. (**Ex. B**.) When SeaSpine objected, Plaintiff doubled down and accused five additional SeaSpine systems of infringement: Malibu, NewPort, Atoll OCT, Sierra, and NorthStar. (**Ex. C** at 1.)

3

Of the new SeaSpine products that Plaintiff now purports to accuse of infringement, only one—Mariner Adult Deformity, which is only an investigational product and not yet commercialized—is a spinal derotation system. None of the remaining systems are capable of being used to perform *any* type of spinal derotation, let alone *en bloc* derotation. Plaintiff himself characterized the systems as "Associated Products," which he defined as being used *with*, but are not themselves, derotational products. (**Ex. D** at 3.)

### D. Plaintiff Cannot Expand The Scope Of Discovery By "Accusing" Products That Do Not Meet Each And Every Element Of An Asserted Patent Claim.

The Federal Circuit has long recognized that to meet the plausibility standard necessary for pleading infringement, an accused product must meet "each and every element of at least one claim of the patents-in-suit." *See e.g., Disc Disease Solutions, Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018.) Although the Default Standard does not define "accused product," it is not plausible to argue that the requirement to constitute an "accused product" under the Default Standard is different than the standard upheld by the Federal Circuit for accusing a product of infringement in a pleading. Yet that is *precisely* the outcome Plaintiff seeks in this case.

The Complaint, Plaintiff's infringement contentions, and Plaintiff's admissions during the Discovery Conference make clear that infringement of the Asserted Patents is limited to spinal derotation systems that perform *en bloc* derotation. Further, Plaintiff has admitted that spinal derotational products that are used for segmental derotation are, at most, "reasonably similar" to products that infringe the Asserted Patents but *do not themselves infringe*. Thus, to meet "each and every element" of an asserted claim, an accused system must be used for *en bloc* derotation.

Plaintiff has not and cannot demonstrate that he has a plausible basis to allege that any of the SeaSpine systems he "accused" of infringement following the Discovery Conference can be used *on their own* to perform *en bloc* derotation. Indeed, Plaintiff has had over two months to amend his pleadings and/or supplement his contentions since this dispute first crystallized, but has failed to do so. This is not surprising as Plaintiff does not have a proper basis to classify them as "accused products" pursuant to the Default Standard. To hold otherwise and order SeaSpine to produce voluminous discovery related to products that do not and cannot meet each and every element of even one asserted claim would render meaningless the well-established requirement under *Iqbal/Twombly* that a plaintiff must plausibly allege infringement. Put another way, Plaintiff's addition of accused products through its Default Standard disclosures is no different from providing a conclusory allegation in a complaint that a product infringes. In the Rule 12 context, such an allegation would be subject to dismissal; it should be treated no differently here.

Ultimately, Plaintiff should not be allowed to strategically designate products as "accused" under the Default Standard when such an accusation contradicts the allegations in the Complaint, Plaintiff's infringement contentions, and Judge Andrews' orders. At a minimum, before Plaintiff is allowed to accuse additional SeaSpine systems of infringement and seek discovery on such products, he should be required to seek leave to amend his Complaint[3] and supplement his infringement contentions such that SeaSpine is properly placed on notice of Plaintiff's infringement claims.

---

[3] Should Plaintiff seek leave, SeaSpine reserves all rights to challenge any such motion.

4

        Respectfully,

        */s/ Brian P. Egan*

        Brian P. Egan (#6227)

BPE/lkm
Attachments

cc:    All Counsel of Record (via electronic mail; w/attachments)