Page 1

1                          - - -
2            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE
3
                           - - -
4
    MARK A. BARRY,           :
5                            :  CIVIL ACTION
            Plaintiff,        :
6                            :
            vs.              :
7                            :
    STRYKER CORPORATION,     :
8                            :
            Defendant       :   NO. 20-1787 RGA
9
                           - - -
10
               WEDNESDAY, OCTOBER 26, 2022
11
                           - - -
12        Telehponic transcript of DISCOVERY MOTIONS
13    taken at Wilmington, Delaware, commencing at 11:00
14    a.m., before John P. Donnelly, Registered Diplomate
15    Reporter, and Notary Public in and for the
16    Commonwealth of Pennsylvania and the State of
17    Delaware.
18
19        BEFORE: HON. SHERRY R. FALLON, J.
20
21                         - - -
22
               VERITEXT LEGAL SOLUTIONS
23        Registered Professional Reporters
           300 Delaware Avenue, Suite 815
24             Wilmington, DE 19801
                 (302)571-0510

Page 2

```
 1    APPEARANCES:
 2
             BARNES & THORNBURG, LLP
 3           BY:  REGINA MURPHY, ESQUIRE
             222 Delaware Avenue
 4           Suite 1200
             Wilmington, Delaware 19801
 5           and
             KATHLEEN GEYER, ESQUIRE
 6           D. CLAY HOLLOWAY, ESQUIRE
             KILPATRICK TOWNSEND
 7           Representing the Plaintiff
 8
             MORRIS NICHOLS ARSHT & TUNNELL
 9           BY:  BRIAN P. EGAN, ESQUIRE
                  CAMERON P. CLARK, ESQUIRE
10           1201 North Market Street
             16th Floor
11           Wilmington, Delaware 19899
             and
12           CHAD T. NITTA, ESQUIRE
             KUTAK ROCK, LLP
13           Representing CSpine Ortho
14
15
                            - - -
16
17    ALSO PRESENT:
18
             TAYLOR PFINGST, ESQUIRE
19
             DARIO A. MACHLEIDT, ESQUIRE
20
21
22                          - - -
23
24
```

Page 3

1                           INDEX

2                            - - -

3

4                            - - -

5                          EXHIBITS

6                            - - -

7   NUMBER                 DESCRIPTION                    PAGE

8

    No Exhibits were marked for identification.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DISCOVERY MOTIONS

Page 4

```
1                    THE COURT:  Good morning, everyone.
2    This is Magistrate Judge Sherry Fallon joining the
3    call in Barry v Stryker and CSpine, Judge Andrews'
4    case.  The docket number is 20-1787.  Do we have our
5    court reporter?
6                    (A brief exchange between The Court
7    and John Donnelly, the court reporter.)
8                    THE COURT:  Okay, we have our court
9    reporter.  Start with appearances of counsel
10   starting with Delaware counsel for Dr. Barry.
11                   MS. MURPHY:  Good morning, this is
12   Gigi Murphy from Barnes & Thornburg on behalf of the
13   plaintiff, Dr. Barry.  And with me on the line are
14   cocounsel all from the law firm of Kilpatrick
15   Townsend.  And appearing is Kate Geyer, Taylor
16   Pfingst, Dario Machleidt, Clay Holloway.
17                   THE COURT:  Thank you.  Who will take
18   the lead on those issues today?
19                   MS. MURPHY:  Ms. Geyer will be taking
20   the lead on these issues.
21                   THE COURT:  Thank you.  And for
22   defendant CSpine.
23                   MR. EGAN:  Good morning.  Your Honor.
24   This is Brian Egan from Morris Nichols on behalf
```

1   CSpine.  Joining me is my colleague, Cameron Clark.

2   As well as Chad Nitta from Kutak Rock.  With the

3   Court's permission, Mr. Nitta will be arguing on

4   behalf of CSpine today.

5                   THE COURT:  Okay.  We have cross

6   motions here that overlap.  One is plaintiff's

7   motion as to whether CSpine should be compelled to

8   produce core technical documents on a newly accused

9   product.  And the other one is CSpine's motion as to

10  whether plaintiff's amended identifications of

11  accused products should be stricken and plaintiff

12  should be required to seek leave to amend the

13  complaint.

14                  Before we get started, I neglected to

15  ask if any other attorneys or observers are on the

16  line for the other defendant in the case, Stryker.

17  Is anyone on the line for Stryker?

18                  (No response.)

19                  THE COURT:  Hearing none, I just want

20  to mention at the start that I appreciate the

21  discovery dispute letters that were filed on this

22  motion.  The Court had a number of discovery

23  disputes in other unrelated matters and an

24  assortment of cases, predominantly patent cases, and

```
 1    briefing was not quite as succinct and clear as the
 2    briefing in this case.  And it certainly makes the
 3    Court's job a bit easier when parties present the
 4    issues clearly and it demonstrates that there was a
 5    sincere effort exerted in the meet and confer
 6    process.  I want to thank both sides for that and
 7    commend both sides for that.
 8              Having said that, I have thoroughly
 9    read the submissions.  I have reviewed the exhibits,
10    particularly the hearing transcript from the first
11    discovery dispute before Judge Andrews that, I
12    guess, laid the ground, so to speak, for this
13    issue -- these issues to come up.
14              So I'm prepared to go forward.  You
15    are free to provide a little bit of background and
16    context.  But I think I have a handle on what
17    happened previously leading us to where we are now.
18    With that, we will proceed in the order that the
19    motions were filed.  I believe the first submission
20    was, in fact, made by Dr. Barry.  So we will start
21    with Dr. Barry and you can address both the motion
22    to compel as well as the opposition to CSpine's
23    motion.
24              MS. GEYER:  Thank you, Your Honor.
```

DISCOVERY MOTIONS

Page 7

1    This is Kate Geyer on behalf of plaintiff,

2    Dr. Barry.  I want to confirm, am I coming through

3    loud and clear?

4                    THE COURT:  Yes, you are.  Thank you.

5                    MS. GEYER:  Dr. Barry asked this

6    Court to compel the production of core technical

7    documents for the six newly accused products

8    identified in Dr. Barry's second amended

9    identification of accused products.  And deny

10   CSpine's motion to strike the standing for two

11   reasons.  The first reason is that each of the newly

12   accused products fit squarely within Dr. Barry's

13   infringement theory set forth in both the complaint

14   and his infringement contentions.  Second, CSpine's

15   own documents teach that these accused products can

16   and should be used with each other.  And that a

17   surgeon can and should combine those accused

18   products to perform infringing surgeries.

19                    And, Your Honor, I understand that

20   you have the background on this case, but I think

21   one small piece that might be worth going over

22   again.  First is the specific type of surgery at

23   issue here.

24                    Dr. Barry's opening brief on page one

DISCOVERY MOTIONS

1    includes a couple pictures of the surgeries that can

2    be used.  And Dr. Barry's asserted patents cover

3    systems and methods to correct spinal deformities,

4    the most common of which is scoliosis.  Specifically

5    doing that using en bloc construct.  These en bloc

6    constructs are a combination of implants and

7    instruments.

8                When a surgeon is performing these

9    surgeries, he starts by -- he or she starts by

10   screwing screws into the vertebrae, and threading a

11   metal rod through those screws.  And those screws

12   and rods are what we refer to as "the implants."

13               The surgeon will then use other

14   tools, such as the metal tools you see in those

15   pictures, or clamps, to connect those metal tubes

16   across and along the spine.  And those are built on

17   top of those implants.  Those tools allow the

18   surgeon to move multiple vertebrae, a block of

19   vertebrae at one time, and move the spine into

20   proper alignment.

21               After the spine is in proper

22   alignment, all of those instruments, the metal tubes

23   and the clamps are removed, and the implants stay in

24   the body.  So since the inception of this case,

DISCOVERY MOTIONS

Page 9

1    Dr. Barry has identified the infringing structures

2    and methods as those de-rotation instruments that

3    are used with implants to correct spinal deformities

4    such as scoliosis in an en bloc manner.

5                    And Dr. Barry's allegations in the

6    complaint, and specifically those in paragraph 51

7    through 58, set forth Dr. Barry's allegations

8    regarding the scope of the accused CSpine products.

9                    THE COURT:  Can I stop you there.

10   Can we actually look at those paragraphs of the

11   complaint if you are able to access the docket.  I'm

12   getting there myself.  Just bear with me.

13                    (A brief pause.)

14                    THE COURT:  I believe you just stated

15   and it's referred and the same statement is

16   essentially made in your submission, which is the

17   reply letter to CSpine's motion.  But in any event,

18   it's the same topic and same discussion.  You state

19   that the paragraphs that you just referenced are the

20   paragraphs that support the basis that CSpine ought

21   to be on notice of your infringement theories and

22   that they essentially encompass these eight newly

23   accused products.  Do I have that right?

24                    MS. GEYER:  Yes, Your Honor.

1              THE COURT:  And you reference

2     specifically, again, paragraph 51 through 58?

3              MS. GEYER:  Yes, Your Honor.

4              THE COURT:  And looking at the

5     complaint, paragraph 51 through 58 has nothing to do

6     with CSpine.  These are all of the allegations

7     against Stryker.  So where in the complaint is the

8     Court to look to say that CSpine's -- confirmation

9     that CSpine is on notice of these theories through

10    the complaint?  Your representation in DI 112 that

11    "Dr. Barry confirmed in his complaint and

12    contentions that specific types of surgeries using

13    the Daytona and any other CSpine de-rotation

14    instruments together with any CSpine implants

15    product line resulted in infringement."

16             That's at page two citing the

17    compliant at paragraph 51 which, as I said, is not

18    relating to CSpine at all.

19             MS. GEYER:  Yes, Your Honor.  I

20    apologize if we were unclear.  When we were

21    referencing the complaint, the complaint you are

22    referencing is the Stryker one, and that was before

23    these cases were consolidated.  So we were

24    referencing and citing to the complaint in the case

1   number ending in 806.  And in that case, it is a

2   separate complaint for the CSpine defendants.  And

3   that entire complaint refers to CSpine.  I think the

4   one you are referring to is the complaint against

5   Stryker.

6               THE COURT:  Thank you for the

7   clarification.  All right, you may proceed.

8               MS. GEYER:  And, Your Honor, are you

9   able to get that other complaint in front of you?

10  Would it be helpful if I walked through or maybe

11  read some of that into the record?

12              THE COURT:  Just give me the

13  reference and I will get to it.

14              MS. GEYER:  Okay.  So paragraph one

15  in the CSpine complaint defines the term "CSpine

16  products" and specifically identifies "any CSpine

17  instruments that are manufactured, sold,

18  distributed, loaned, consigned or otherwise used to

19  de-rotate en bloc multiple levels of vertebrae" as

20  the infringing instrument.

21              In paragraph 51 and 53, Dr. Barry

22  uses the Daytona deformity system as examples of

23  those infringing de-rotation instruments.  Paragraph

24  56 of the complaint, Dr. Barry identifies examples

Page 12

1   of infringing implants, and specifically the Daytona

2   and the Malibu line of implantable products.

3   Dr. Barry says that "the Daytona deformity system

4   surgical technique guide can be used" -- or that

5   "teaches that the Daytona deformity system can be

6   used with both Daytona and Malibu line of

7   implantable products."

8                  The combination of those is that

9   Dr. Barry's complaint sets forth that "the Daytona

10  deformity instruments can be used with the Daytona

11  implants."  And "the Daytona deformity instruments

12  can also be used with the Malibu implants to perform

13  infringing surgeries."  So therefore, Dr. Barry has

14  given two specific examples of how those -- has

15  given a specific example of about how two different

16  product lines, one deformity product line and one

17  spinal implant line, can be combined to perform an

18  infringing surgery.

19                  These allegations are sufficient to

20  put CSpine on notice that de-rotation instruments

21  from one system and implants from a different system

22  can be combined to perform a single infringing

23  surgery.

24                  And further, Dr. Barry reiterated

1    this infringement theory in his infringement

2    contention.  So this is Exhibit E to Dr. Barry's

3    opening brief.  Dr. Barry's infringement contentions

4    say that the Daytona deformity system uses the

5    Malibu pedicle screw spinal system.  Dr. Barry

6    further states that "all pedicle screws that CSpine

7    distributes that are compatible with the Daytona

8    deformity system can be used to perform infringing

9    surgeries."

10              So Dr. Barry's infringement analysis

11   extends to all CSpine pedicle screws sharing the

12   infringing characteristics that are compatible with

13   Daytona deformity instruments.

14              There can be no dispute that CSpine

15   has been on notice of Dr. Barry's infringement

16   theory that instruments from Daytona can be used

17   with implants from a different spinal system, such

18   as Malibu.  And these types of exemplary contentions

19   in the complaint are sufficient to accuse similar

20   accused products.

21              The complaint is not required to list

22   every single accused product or every single

23   combination of accused products.  That is the

24   purpose of the identification of the accused

Page 14

1    product.

2                    Therefore, the scope of the

3    allegations in Dr. Barry's complaint and

4    infringement contentions are the same as the scope

5    of Dr. Barry's newly accused products.

6    Specifically, those accused products identify all of

7    the CSpine de-rotation systems and any spinal

8    implants that are compatible with those de-rotation

9    systems.

10                    Moreover, Dr. Barry identified these

11   compatible systems using CSpine's own documents.

12   Within CSpine's productions of its 28 documents,

13   CSpine produced surgical technique guides for both

14   the Daytona deformity system and the Daytona small

15   stature system.  And a surgical technique guide is a

16   document that CSpine gives to surgeons which teaches

17   how a surgeon can and should use those systems to

18   perform surgeries.

19                    Both of those surgical technique

20   guides confirm that CSpine teaches that the Daytona

21   deformity system and the Daytona small stature

22   system are compatible with implants from other

23   systems.

24                    When we were discussing Daytona and

DISCOVERY MOTIONS

Page 15

1    Malibu before, each of places we discussed those in

2    the complaint and the infringement contentions cite

3    to these surgical technique guides from CSpine.  And

4    then as set forth in the Daytona small stature

5    surgical technique guide, which could contains

6    instructions for use at the end, is the Daytona

7    small stature system "can be attached to other clear

8    CSpine posterior spinal fixation systems."

9                    It is precisely these compatible

10   accused products that Dr. Barry has identified in

11   his second amended identification of accused

12   product.

13                    So after the hearing with Judge

14   Andrews, CSpine identified all of those products in

15   their supplemental responses interrogatory number

16   one.  Consistent with judge Andrews order, Dr. Barry

17   then added those products to his identification of

18   accused products.  Consistent with Judge Andrews'

19   order, CSpine should now be required to produce core

20   technical documents for those products.

21                    THE COURT:  All right, but the focus

22   of the discovery hearing, at least as it appears

23   Judge Andrews understood it, was that the

24   plaintiff's intended the scope of the accused

DISCOVERY MOTIONS

Page 16

1   products were spinal de-rotation systems.  Is that

2   an accurate representation of the earlier hearing,

3   that that's where the focus was?

4             MS. GEYER:  That was -- I think that

5   was a focus on -- it was a focus on spinal

6   de-rotation systems.  But Dr. Barry and the parties

7   have been discussing the instruments and the

8   implants as separate parts of the dispute.  I

9   believe in CSpine's briefing, it acknowledges that

10  the defendant system, for which there was a dispute

11  with Judge Andrews, was around the de-rotation

12  system and those instruments.  A dispute that had

13  not ripened by the time we got to Judge Andrews'

14  discovery conference was about what Dr. Barry had

15  referred to as associated systems, which were the

16  implants that can be used with the de-rotation

17  systems.  So I don't think that the idea of

18  compatible implant systems were in the scope of the

19  disputes with Judge Andrews.

20            THE COURT:  But the implant systems,

21  as I understand it, even as acknowledged by

22  plaintiff, do not -- standing alone do not infringe

23  any of the asserted patents.  At least that's the

24  position, as I understand it, taken by the

DISCOVERY MOTIONS

Page 17

1   plaintiff.  Correct?

2                   MS. GEYER:  Yes, Your Honor.  We are

3   not accusing them of infringing on their own.  What

4   we are accusing, and what the accused product

5   actually is, is it's the actual construct that the

6   surgeon builds during surgery.  So these products

7   are essentially just tools and screws that are not

8   combined in any way, shape or form when CSpine gives

9   them to a doctor.  The doctor is the one that

10  actually does the direct infringement and actually

11  builds the infringing construct.

12                  So it could be the Malibu screw used

13  with the Daytona instrument that the doctor builds,

14  and that is the accused product.

15                  THE COURT:  So you are saying that

16  these systems can be infringing in combination with

17  the accused Daytona systems, the implants?

18                  MS. GEYER:  Correct.  Yes.

19                  THE COURT:  You are saying that this

20  theory is supported for the reasons that you cited

21  to Exhibit E, your contentions, as well as the

22  paragraph in the complaint against CSpine.

23                  MS. JACOBS:  Yes, Your Honor.  And I

24  will also mention this is pretty common practice in

 1    the industry.  Other spinal systems, de-rotation

 2    systems from other companies also are compatible

 3    with screws from other system.  This is just how

 4    these products work in the industry.

 5                    I also would point to CSpine's own

 6    documents in its core technical production.  Because

 7    it's CSpine's surgical technique guide and CSpine's

 8    instructions for use that say that these de-rotation

 9    systems can be used with implants from other

10    systems.

11                    THE COURT:  Anything further before I

12    hear from CSpine?

13                    MS. GEYER:  I think briefly, Your

14    Honor.  CSpine stated that no such law exists to

15    support Dr. Barry's theory of infringement that a

16    surgeon can combine two products to infringe the

17    patent.  And CSpine, quite frankly, is wrong.  In

18    our reply brief we cite to the Align Technology vs

19    3Shape case, which is 2020 Westlaw 5979353.  The

20    facts in that case are nearly identical to the case

21    here.

22                    In Align Technology, the plaintiffs

23    asserted that a "single end user uses two accused

24    products in a combined manner to infringe the

DISCOVERY MOTIONS

Page 19

```
 1   asserted patent."  Plaintiff also alleges that the

 2   defendant instructed the end user to purchase and

 3   install two accused products together in a matter

 4   that infringes the patent.

 5              And the Court found that those

 6   allegations and the supporting evidence were

 7   sufficient to survive a motion for summary judgment

 8   of non-infringement.  Dr. Barry's allegations are

 9   nearly identical.  We are asserting that a single

10   end user -- here a surgeon -- used two accused

11   products -- a de-rotation such as Daytona and a

12   spinal implant system such as Mariner -- in a

13   combined manner to infringe the asserted claim.  As

14   we discussed, CSpine's 28 documents also confirm

15   that CSpine instructs end users they can purchase

16   and use those two products together.

17              THE COURT:  But one of the accused

18   products used in that combination is, you know, it's

19   labeled an accused product.  But it's acknowledged

20   that it's a non-infringing product.  So how does

21   that fit with the case you cited?

22              MS. GEYER:  So I think the case that

23   we cited is the same facts.  Is that neither of

24   those accused products, standing on their own,
```

DISCOVERY MOTIONS

1    infringe each and every element of the asserted

2    patent.  Instead, the two accused products had to be

3    combined together.  And it was only that combination

4    of the accused products that practices the patent.

5    And that's what we are saying here.

6                    The deformity systems, Daytona,

7    Mariner, and Daytona small stature system, all of

8    those systems can infringe the patents on their own.

9    They can also infringe, though, when combined with

10   the implants from other systems.

11                   So again, it's the accused product is

12   really the combination of the products, it is not

13   the individual products themselves.

14                   THE COURT:  All right.  I will hear

15   from CSpine.

16                   MR. NITTA:  Thank you, Your Honor.

17   This is Chad Nitta for CSpine defendants.  Your

18   Honor, there are several points that Ms. Geyer

19   raised that I would like to address.  But I would

20   like to start with the last point, Your Honor, that

21   you just raised with respect to the law.

22                   Your Honor, in the case law that

23   Dr. Barry cites, as you noted, full sets of products

24   were identified from the beginning of the case as

1    accused products.  And the allegation was these

2    accused products need to be combined in order to

3    infringe.  Your Honor, Dr. Barry's complaint in this

4    matter is a far cry from presenting that argument.

5               To the contrary, Dr. Barry very

6    clearly accuses a single product, Daytona.  And

7    repeatedly alleged that Daytona has all of the

8    implants and tools that are necessary to infringe.

9               The fact that there is a single

10   paragraph referenced to another line of implantable

11   products, Your Honor, does not rise to the notion

12   that Dr. Barry was alleging a combination of

13   disparate products, which is now exactly the

14   argument that he chooses to make.  That his theory

15   has always been it's mix and match between implants

16   and de-rotation tools.

17              Your Honor the complaint simply

18   doesn't read that way.  It says repeatedly that the

19   Daytona system, which includes both implants and

20   de-rotation tools, that is the infringing product.

21              Your Honor, there is no concept there

22   needs be to be a combination with anything else.

23   Rather, the allegations were clear that the system

24   as a whole, Daytona, had everything that was

1    necessary.

2                    In addition, Your Honor, with respect

3    to the one paragraph that Ms. Geyer mentioned,

4    paragraph 56 from the complaint, where there is an

5    allegation that the Daytona deformity system can be

6    used with Daytona and/or Malibu line implantable

7    products, Your Honor.  The actual evidence that they

8    cite, the Daytona deformity surgical -- system

9    surgical technique guide doesn't say anything about

10   Malibu implantable products, Your Honor.  That

11   citation is simply the reference which is quoted

12   elsewhere that Daytona uses Malibu technology.

13                   And the reason I mention this is

14   because the surgical technique guide for Daytona is

15   over 50 pages long.  It includes numerous pictures,

16   numerous set of instructions on how to use Daytona.

17   Your Honor, there is not a single reference in any

18   of the instructions on how to build the constructs,

19   on how to use the constructs in any of the pictures.

20   There is not a single reference to any implantable

21   device other than Daytona.

22                   Dr. Barry has pointed out in the

23   Daytona small stature instructions for use, there is

24   a reference to these other products.  Your Honor,

 1    that was at the very end under the indications for

 2    use.  There was no allegation by Dr. Barry, nor can

 3    there be, that there was anything in the actual

 4    instructions for using the product that references

 5    using Daytona with any other implantable device that

 6    is not Daytona.

 7                    And, Your Honor, the reason for that

 8    is simple, the implants are -- in the Daytona

 9    system -- specifically designed to be used with the

10    Daytona de-rotation tools.  The notion that

11    Dr. Barry is putting out now that these implants can

12    be swapped out, Your Honor, is simply not supported.

13    They don't point to anything in which CSpine's ever

14    made that claim, not anything in the public record,

15    not anything they found on the internet, not

16    anything in the surgical technique guides.

17                    And the reason for that, Your Honor,

18    is because implants from other product lines cannot

19    be used to do en bloc de-rotation with the Daytona

20    de-rotation tools.  That's why Daytona is sold as a

21    system that has both implants and de-rotation tools

22    because they are designed to work together, Your

23    Honor.

24                    I also want to point out, Your Honor,

```
 1    that the documents that Dr. Barry points to, the
 2    surgical technique guide and the instructions for
 3    use, those documents were available at the time that
 4    Dr. Barry did his original infringement contentions
 5    in this case, which he served in May.  And we know
 6    they were available because he cites both documents,
 7    Your Honor.  And despite citing both documents --
 8    and, frankly, Your Honor, he cites the same portions
 9    of the documents that we see in the letter briefs,
10    there is not an assertion in the infringement
11    contentions that any product other than Daytona
12    infringes, Your Honor.  It's the only accused
13    product, notwithstanding the fact that Dr. Barry had
14    these exact documents.
15              The only point at which the
16    additional products became accused, Your Honor, was
17    after the discovery conference.  And as Ms. Geyer
18    noted, in Dr. Barry's original discovery requests
19    that were at issue at that discovery conference, he
20    did define implants.  But he called them "associated
21    products," Your Honor.  He never claimed they were
22    accused products because they weren't.  And during
23    the discovery conference the question -- narrow
24    question that was raised is Dr. Barry entitled to
```

DISCOVERY MOTIONS

Page 25

1  informing about product that were not accused.

2               Which, by the way, Your Honor, would

3  include the associated products for which he was

4  seeking discovery.  And the answer that Judge

5  Andrews gave clearly was no.  Discovery is limited

6  to accused products.  It was only after that ruling,

7  Your Honor, limiting discovery to accused products,

8  that, for the first time, Dr. Barry decided to refer

9  to the additional products as "accused," instead of

10 "associated."

11             And Dr. Barry chose to rely on the

12 documents that were available to him at the time he

13 did his infringement contentions.  And at that time,

14 when he chose not to accuse them, he now cites the

15 same documents as being the proper basis to identify

16 them as accused for purposes of the Delaware Default

17 Standard.

18             Your Honor, that is the crux of our

19 point.  As you have noted, the standard for pleading

20 an accused -- identifying an accused product in a

21 pleading is clear, not disputed.  Dr. Barry even

22 agrees the accused product has to meet every element

23 of at least one claim.  Dr. Barry also admits that

24 the implanted products do not meet that standard.

DISCOVERY MOTIONS

1              So the question becomes why would the

2     definition of accused products for the purposes of

3     the Delaware Default Standard somehow be broader

4     than the basic pleading standard that's been adopted

5     by the Federal Circuit and this court for

6     identifying an accused product, Your Honor.  That is

7     the point for which there no law.

8              We don't contest that there is law

9     that says you can take two things, label them both

10    accused, and then assert the combination is an

11    accused product.  But that is simply not what

12    happened.  In fact, after Dr. Barry's discovery was

13    denied, he is choosing to reclassify his products

14    and trying to reclassify his own infringement theory

15    in order to get this discovery that was denied at

16    the last discovery conference.  That is the crux of

17    what we disagree with, Your Honor.

18              Daytona is identified repeatedly in

19    the complaint.  Daytona is the only product

20    identified in the infringement contentions.

21              Beyond that, Your Honor, we finally

22    hear this argument that it is about the implant

23    being able to be compatible with de-rotation tools.

24    Your Honor, in their infringement contentions,

1    Dr. Barry says specifically alleges "any screw and

2    rod-based systems offered by CSpine for use in

3    conjunction with a Daytona deformity spinal system

4    infringes this claim."  Your Honor, that is the

5    exact point that they knew the evidence they were

6    pointing to does not support, nor have they

7    identified any evidence to suggest or support that

8    these independent product lines can be used with the

9    de-rotation tools to perform en bloc de-rotation.

10                   And the reason there is none of that

11    evidence is because they can't, Your Honor.  That is

12    why we are opposing discovery on completely

13    independent product lines under a theory of possible

14    compatibility for use in en bloc de-rotation, Your

15    Honor, for which there is no evidence, nor can there

16    be.

17                   Even in the indications for use that

18    they cite at the end of the Daytona small stature

19    surgical technique guide, it is simply a statement

20    they can be attached to these other -- that the

21    Daytona can be attached to these other systems.

22    Nothing in there suggests that those implants can be

23    used with the de-rotation tools to perform en bloc

24    de-rotation.  That is what the prior 55 pages were

instructing the surgeon to do, how to do de-rotation, what to use. And there is no not a single reference to another implantable product besides Daytona in either of surgical technique guides which is the clearest indication that supports our point that these other implants cannot be used in de-rotation tools.

Your Honor, so we strongly disagree with the notion that the newly accused products fit in the infringement contentions. They don't. And they intentionally didn't. Dr. Barry had this information, chose not to accuse those other products in the infringement contentions.

And secondly, Your Honor, the notion that the CSpine documents support that these other independent product lines should be used, Your Honor, is also not true. There is no evidence that's been presented, nor does any exist, that would demonstrate one of these implant products could simply be grabbed by a surgeon and be used with the Daytona de-rotation tools. Your Honor, these are specialized products. They are not mix and match.

THE COURT: Just a couple of

1    questions.  What about the Mariner adult deformity

2    system, isn't that also a de-rotation system and

3    what is the basis for resisting discovery with

4    respect to that system?

5                    MR. NITTA:  Your Honor, at this time,

6    as we noted in our opening letter, Dr. Barry did two

7    separate identifications after the discovery

8    conference of accused products.  In that first

9    identification, Your Honor, Dr. Barry identified

10   three different Mariner products, including the

11   Mariner implant product.  And our objection, Your

12   Honor, was to the non-de-rotation tools being

13   identified.

14                   Your Honor, we would also object that

15   Mariner adult deformity, which is limited to

16   segmental de-rotation and is still in experimental

17   stage, infringes.  But if that was the sole

18   additional product that had been identified, Your

19   Honor, we wouldn't be here.

20                   But even in that initial

21   identification, they have chosen to group Mariner

22   together as if it is a single product line and it's

23   not.  They may have the same name.  It may be part

24   of the same product family for purposes of CSpine

1    marketing.  But the fact that it is called Mariner

2    adult deformity does not mean it is a related at all

3    to Mariner pedicle screw system, which is what they

4    are trying to identify.

5                  Your Honor, if these limitations for

6    the additional accused products was Mariner adult

7    deformity, then we would have had that discussion

8    with Dr. Barry.  And, again, we most likely would

9    not be here.  Because that would have been at least

10   within the realm of de-rotation tools, which you

11   correctly noted was the focus of the argument that

12   was presented, Your Honor, by Dr. Barry -- discovery

13   conference.

14                  He had the opportunity to argue in

15   favor of the associated products, which are not

16   de-rotation tools.  But he chose to even go narrower

17   to de-rotation tools that couldn't do en bloc.  And

18   that was denied by Judge Andrews and limited to

19   accused products, which you heard them say are

20   de-rotation tools for en bloc de-rotation.

21                  THE COURT:  My other question just

22   goes to -- relating to relief it's seeking to compel

23   the plaintiff to move to seek leave to file an

24   amended complaint if it want -- if Dr. Barry wants

DISCOVERY MOTIONS

```
 1    to add more accused products to the case.  But you

 2    are not taking the position, and I certainly didn't

 3    assume this from your letter brief, but let's

 4    confirm on the record that you are not taking the

 5    position that CSpine would stipulate to an amendment

 6    of the complaint to allegedly expand theories of

 7    infringement such that it would wrap in these

 8    additional accused products, are you?

 9                    MR. NITTA:  No, we are not

10    stipulating to that for the reasons we said, we

11    don't believe there is a factual basis to accuse

12    these additional products.  But we certainly think

13    that is the right procedural step so we would have

14    the opportunity to challenge the assertion and

15    explore the factual basis.  No, we would not

16    stipulate to an amendment to add these separate

17    product lines.  This not just a matter of form, Your

18    Honor.

19                    THE COURT:  Understood.  As I said, I

20    didn't presume that.  I just wanted to clarify for

21    our record.  It's kind of a novel request for relief

22    asking the Court to compel a party to engage in a

23    motion practice.  I certainly don't find any

24    authority for that in the Federal Rules.  I am
```

 1   assuming that none was cited under the Federal Rules

 2   or under cases in your letter briefing that CSpine

 3   has no such authority either.  Am I correct?

 4              MR. NITTA:  Correct, Your Honor.  I

 5   apologize, I think we more appropriately should have

 6   said that in order for this to be ripe, that needs

 7   to happen.  Obviously, if Dr. Barry does not want to

 8   amend or seek to amend, we do not mean to imply that

 9   he should be ordered to do so.  Our only point was

10   if the proper way to accuse products, the first step

11   is to amend the complaint.  And that is what we are

12   saying.  We are not asking for an order requiring

13   him to do so against his will.  I apologize for

14   that, if we gave that impression we should have

15   clarified.

16              THE COURT:  Not a problem.  I think I

17   interpreted it correctly when I read the briefing.

18   It's certainly clarified now.  All right.  Well,

19   anything further before I hear some brief response

20   from Ms. Geyer.

21              MR. NITTA:  No, Your Honor.  I don't

22   believe so.  Thank you.

23              THE COURT:  All right.  Plaintiff,

24   brief response then I have a question or two.

DISCOVERY MOTIONS

Page 33

1              MS. GEYER:  Thank you, Your Honor.

2    This is a discovery dispute on what is accused.

3    What Mr. Nitta just focused on was what the evidence

4    shows, what specific documents show.  What --

5    essentially seems to be moving for summary judgment

6    that those products do not infringe and are not

7    within the case --

8              THE COURT:  Let me interject there,

9    it might be a good time to ask my question.  I don't

10   necessarily -- you know, disagree with the prospect

11   that discovery disputes are not the platform for

12   moving for summary judgment.

13             But nonetheless, my guide post, and

14   counsel's as well, is relevant and proportionality

15   under Rule 26.  Correct?

16             MS. GEYER:  Yes, Your Honor.

17             THE COURT:  And relevance is, for the

18   most part, measured under the Federal Rules by the

19   record, the allegations, the theories on which the

20   other side is put on notice by the party with the

21   burden of proof as to what is allegedly infringing.

22   Correct?

23             MS. GEYER:  Yes, Your Honor.

24             THE COURT:  And simply putting

DISCOVERY MOTIONS

Page 34

```
 1   products on a list of accused products doesn't

 2   overcome the relevance prong of the inquiry under

 3   Rule 26 unless there is notice somewhere in this

 4   record to the other side that this discovery fits

 5   within the theory on which they are on notice.

 6   Correct?

 7              MS. GEYER:  If I followed you, Your

 8   Honor, I think that's correct.  As we said, notice

 9   would be in the complaint and the infringement

10   contentions as we served them.

11              THE COURT:  That is what I'm getting

12   to.  If your theory is -- you pointed out a number

13   of things in the complaint and I have Exhibit E, the

14   contentions, open in front of me.  If I had to ask

15   you for where is the best evidence among all of

16   these items that you cited that these products can

17   be swapped out -- so to speak -- to be compatible

18   with the de-rotation systems and when used in

19   combination that they are allegedly infringing.

20              MS. GEYER:  Yes, Your Honor.  I would

21   point you to paragraph 56 of the complaint which

22   says "According to the Daytona --

23              (Overlapping speakers.)

24              THE COURT:  Part of the -- focus on
```

1    what it actually says in front of me while you were

2    reading it.  I am there now.  I am at paragraph 56

3    of the CSpine complaint in a related case that was

4    consolidated with this.  Go ahead.

5                    MS. GEYER:  For the record, it says

6    "According to the Daytona deformity system surgical

7    technique guide" --

8                    THE COURT:  I don't have paragraph

9    56.  That is not what it says in front of me.  Let

10   make sure that I have the right -- what is the last

11   four numbers of the docket item for that complaint

12   because I keep fishing around with all of these

13   related cases.  What is the correct docket number

14   for that?

15                   MS. GEYER:  0806.

16                   THE COURT:  All right.  Let me scroll

17   back to that.  I will move down to paragraph 56.  I

18   lost my place as to where it was, which docket.  So

19   I now have it.  Let me go to paragraph 56, then we

20   can go back to your point that you were making.

21                   I asked for your best evidence of how

22   you put CSpine on notice of your theory that you

23   would wrap in these additional accused products.

24   You're taking me to paragraph 56.  Correct?

1          MS. JACOBS:  Yes, Your Honor.  I will

2    say it is 56, but it's got to be read in the context

3    of paragraph 51 to 58.  Paragraph 56 states

4    "According to the Daytona deformity system surgical

5    technique guide, Daytona deformity system can be

6    used with Daytona and/or Malibu line of implantable

7    products."

8          And the reason I say it needs to be

9    read in context is because if you go to paragraph 51

10   and 54.  51 talks about the instruments.  And 54

11   talks about how you combine those instruments with

12   those implantable products to perform an infringing

13   surgery.  So that entire section really talks about

14   it, but it is the combination of those three

15   paragraphs that put them on notice that other

16   implantable lines of products can be used with

17   Daytona.

18          THE COURT:  Where would they get that

19   notice from this?  This is all focused on the

20   Daytona system used in conjunction with the Daytona

21   and Malibu lines of implantable products.  And then

22   it goes on to, in subsequent paragraphs, through the

23   still photos and demonstratives to explain that.

24          But, you know, again, I'm not seeing

DISCOVERY MOTIONS

1   how this is so expansive that these implants are

2   specifically designed to be swapped out, you know,

3   with other -- with de-rotation systems.  And thus,

4   they should be wrapped in to the whole definition of

5   accused products.

6              MS. GEYER:  So this is an inducement

7   case.  And so the person reading this surgical

8   technique guide is the surgeon.  And the surgeon

9   understands -- and CSpine as well.  CSpine works in

10  spinal industry.  They are very familiar with the

11  products and the interoperability of them.  But the

12  actual direct infringer would know that it's the

13  Daytona deformity system can be used with a line of

14  implantable products.  Those are the implants that

15  are required to perform en bloc de-rotation.  The

16  instruments would be compatible with those line of

17  implantable products.  You could use both the

18  implants and tools to infringe the claim.

19              So it's not just the tools and that's

20  one of issues that Mr. Nitta was getting into that

21  he said if it was just the deformity system, and you

22  took away the Mariner implant system, we wouldn't

23  have a contention.  But that's part of the problem,

24  is it is the implant system.  The implants are

```
 1   required by the claim to construct these infringing
 2   constructs, or perform an infringing surgery.
 3              And I think if you look a Docket 112,
 4   our reply brief on page two, it puts the
 5   side-by-side of the claims in the patent, versus the
 6   complaint, versus the contention and shows how each
 7   claim requires instruments and implants.  Where we
 8   identify them in the complaint, and where we
 9   identify them in the contention.
10              I also want to clarify that while
11   Malibu is the only one listed here, we only had the
12   Daytona deformity system surgical technique guide at
13   the time of the complaint.  The Daytona small
14   stature deformity system is a separate system, with
15   a separate surgical technique guide, which was
16   produced to us in the core technical production and
17   was labeled as highly confidential.  So it was not
18   something that was publicly available.  So a lot of
19   this information we didn't get until we got those 28
20   documents, which is why that level of detail is
21   included in our contention.
22              That's all we are trying to do is the
23   core technical documents, CSpine produced 23 for two
24   de-rotation systems.  We are adding one de-rotation
```

 1    system and five implant systems.  Presumably, that

 2    is less than one hundred documents.  So the burden

 3    here is incredibly low.  And, quite frankly, if

 4    these products don't infringe, or if they can't be

 5    used compatibly, as Mr. Nitta says, we won't put

 6    them in our contentions.  But that is an issue for

 7    the contentions.  That is an issue for the merits.

 8    That not an issue of whether we get a core technical

 9    production.

10              THE COURT:  I think part of the issue

11    here raised by CSpine is that you had much of this

12    same information available to you as far back as

13    May.  And only after Judge Andrews denied the

14    efforts to obtain discovery on non-accused products,

15    you developed this theory as an end run around his

16    ruling when this information was out there all along

17    and you, you know, acknowledge what your theories

18    were in that hearing before Judge Andrews.  You

19    stuck with that theory.  And on that basis, then

20    Judge Andrews said they will identify their other

21    systems.  But it is up to you, plaintiff, to do the

22    research.  And, you know, and the point being that

23    it is up to you as the plaintiff to put them on

24    notice of what new theories would wrap those newly

```
 1   accused products into the case.

 2                   And, you know, that's been the point

 3   of the questioning of the Court for your best

 4   evidence of where those theories are already

 5   existing, such that they ought to be on notice of

 6   those various wrapping those new accused products

 7   into the case.

 8                   MS. GEYER:  With all due respect,

 9   Your Honor, I would dispute that characterization

10   and, quite frankly, CSpine's characterization of

11   this discovery hearing.  That hearing was limited to

12   just discovery into the de-rotation system.

13                   The issue of associated products and

14   implants that could be used with those associated

15   products had not ripened for dispute.  The parties

16   had not met and conferred on the issue.  We weren't

17   aware that CSpine was refusing to produce discovery

18   into those issues.  And instead, CSpine used the

19   results of the discovery hearing to say because

20   Judge Andrews said that you have to specifically

21   list out every accused product, we are not going to

22   give you the associated products.

23                   So that was a separate dispute and it

24   was not ripe at the time.  And it was not addressed
```

 1    in the hearing.  And the reason we had to address

 2    them separately as the deformity system versus the

 3    implants that can be used with them is, quite

 4    frankly, no other -- this is our fifth time, fifth

 5    defendant.  No other defendant has withheld

 6    discovery on implants that can be used with these

 7    systems.  It is just not something that has come up

 8    before.

 9              So what happened at the discovery

10    hearing is Judge Andrews was weighing the certainty

11    that CSpine knew all the products it had to do

12    discovery on against Dr. Barry's statement that this

13    information is not publicly out there.  We need some

14    level of discovery to know what is out there to

15    accuse it.

16              And that is why we found Mariner

17    adult deformity, for example, was a new product.  We

18    had no idea until that hearing that it could be used

19    for de-rotation.  And after that hearing, that is

20    when CSpine started refusing and saying we are not

21    going to produce anything about associated products.

22    We are not going to produce anything about the

23    implants that can be used with these de-rotation

24    systems.  That was a position they first took after

1    the hearing.  And that's why our first amendment to

2    the accused product only identified the Mariner

3    system.

4                   It was after they took that hard

5    stand that they weren't even going to produce

6    comparable implants that we had to do our second

7    amendment to identify all the implants that are in

8    CSpine's confidential documents to give CSpine that

9    notice of what was there.

10                  So I think CSpine was more

11   weaponizing Judge Andrews' orders, which was limited

12   to de-rotation systems and that's what caused us to

13   have to adds those and specifically list them as

14   accused products.

15                  THE COURT:  Anything else?

16                  MS. GEYER:  Nothing from me, Your

17   Honor.

18                  THE COURT:  Thank you.  All right,

19   Mr. Nitta, anything further?

20                  MR. NITTA:  Your Honor, thank you.

21   Just two points.  First, Your Honor, with respect to

22   the inquiry you just undertook.  You asked Ms. Geyer

23   to identify the best paragraph that would put us on

24   notice, Your Honor.  Ms. Geyer pointed to paragraph

1    56.  Your Honor, if you still have that, you will

2    see that that cites to the Daytona deformity system

3    surgical technique guide at pages 118.  Your Honor,

4    as it happens, Dr. Barry included that surgical

5    technique guide in the letter briefing that is in

6    front of Your Honor.  And particularly in document

7    108, which was their, I believe, opening letter

8    brief.  That surgical technique guide is attached as

9    Exhibit E, Your Honor.  As I told you in my opening,

10   you should absolutely feel free to look at the

11   document, Your Honor.  There is no mention or

12   reference in that document to the Malibu line of

13   implantable products being used to perform

14   de-rotation.

15              And the notion that the de-rotation

16   tools have to be used with some sort of implant is

17   true, Your Honor.  That's why Daytona includes

18   implants.  What it does not state in the technique

19   guide is that the de-rotation tool should be used

20   with any non-Daytona implants, Your Honor.

21              So while we certainly can accept the

22   notion that the accused system and method requires

23   both implants and de-rotation tools, we absolutely

24   dispute that we have ever been put on notice that

```
 1    the de-rotation tools were going to be

 2    interchangeably used with independent products as

 3    some sort of combined infringement or accused

 4    products, Your Honor.  And that was one point.

 5               Your Honor, with respect to the

 6    discovery dispute, Your Honor, it's always been

 7    CSpine's position, and Dr. Barry is well aware that

 8    our position is that discovery should be limited to

 9    Daytona, which is the accused product.  Your Honor,

10    the fact they chose to focus during the hearing on

11    the de-rotation tools doesn't change CSpine's

12    position.  We absolutely disagree with the notion

13    that we had to make clear to Dr. Barry before the

14    hearing that we were limiting discovery to the

15    Daytona system, Your Honor.  That has always been

16    our position.  It was only after that hearing when

17    the associated products were brought in.  We

18    maintained our position, Your Honor.

19               Then lastly, Your Honor, with respect

20    to the idea that -- I apologize.  I lost my train of

21    thought for just a moment.

22               But Your Honor, the last point I want

23    to close with is while I understand that this is a

24    discovery dispute, Rule 26 client, Your Honor, what,
```

DISCOVERY MOTIONS

Page 45

```
 1   frankly, we heard from Mrs. Geyer was that Dr. Barry
 2   saying that he needs information in order to
 3   determine whether or not those implants infringe.
 4              Your Honor, they have accused them.
 5   That is exactly our point of contention.  You cannot
 6   accuse them, call them accused products in order to
 7   determine -- to obtain discovery to determine if
 8   they are accused.  Your Honor, that turns the
 9   process on its head.  The allegations made to date
10   don't support the notion that these are accused.
11   The infringement contentions did not identify them
12   as accused, notwithstanding the fact that the
13   Daytona small stature surgical technique guide was
14   available.
15              Your Honor, so the notion that you
16   can simply -- that the plaintiff can identify them
17   as accused pursuant to the Delaware Default Standard
18   in order to obtain discovery that had been
19   previously denied in order to make a determination
20   if they are infringing, that is absolutely backward.
21   That is why we are here today.  Thank you, Your
22   Honor.  That's all that I have.
23              THE COURT:  All right.  Very well.
24              MS. GEYER:  Your Honor, I have one
```

1    final point, if I may.  Mr. Nitta is challenging the

2    sufficiency of the evidence in our complaint and

3    that's not appropriate to do at the stage of

4    discovery.  The allegations say what they say.  They

5    give notice to what they give notice for.  That is

6    not a basis to challenge the sufficiency of the

7    evidence.  And to the extent Mr. Nitta says the

8    information was available at the time of the

9    complaint, they produced all the documents as AEO.

10           So I'm not sure how he can maintain

11   that we could have had a more robust complaint when

12   all those documents are highly confidential.

13           THE COURT:  All right, having read

14   thoroughly the briefing on these issues and over

15   cross motions, having heard the arguments of

16   counsel, which was helpful putting more context and

17   background to the issues discussed in the

18   submissions, I'm going to grant in part and deny in

19   part the plaintiff's motion to compel production of

20   core technical documents.

21           The part that I will grant is to

22   order the production of core technical documents by

23   CSpine for the Mariner adult deformity system.

24           The remaining accused products

DISCOVERY MOTIONS

Page 47

```
 1    identified in the motion, and those include I
 2    believe the Mariner PIS system, Mariner pedicle
 3    screw system, Malibu system, Newport system, Atol
 4    OCT system, Sierra system, North Star system.  I
 5    don't believe I left any out, but if I have, let my
 6    order be clear as for all remaining systems, aside
 7    from the Mariner adult deformity system, the motion
 8    is denied without prejudice at this time on this
 9    records.
10              Correspondingly, I will grant the
11    motion to strike the amended identifications of
12    accused products as to those products beyond the
13    Mariner adult deformity system.  Again, without
14    prejudice.  And certainly the plaintiff is free to
15    come back and seek whatever relief it deems
16    appropriate with respect to that and to attempt to
17    get those products and get further discovery on
18    those products into the case.
19              I will deny any other relief that has
20    been requested by CSpine in terms of compelling the
21    plaintiff to take certain action, including a motion
22    practice at this time.  I think it was not CSpine's
23    intent to seek that type of relief.  But to the
24    extent their briefing suggests otherwise, it is
```

1  entirely up to the plaintiff to take whatever steps

2  he sees fit to progress the assertion of his

3  infringement claims in this litigation.

4              Having said that, I will now give my

5  ruling -- the basis for my ruling at this time.

6              In accordance with Judge Andrews'

7  earlier ruling, and it is largely that ruling that

8  has shaped the foundation for my ruling.  The

9  obtaining information on other spinal de-rotation

10  systems appeared to be the goal of plaintiff's

11  argument during the July hearing before Judge

12  Andrews.

13              This seems to be most -- the

14  information that's most important to the plaintiff.

15  And the plaintiff argues in its efforts to obtain

16  discovery on the spinal implants, that it has placed

17  CSpine on notice that these systems can be

18  infringing in combination with the accused Daytona

19  system.  But this theory is not supported by the

20  pleaded allegation.

21              There's one line in paragraph 56 that

22  states that "the Daytona deformity system can be

23  used with a Daytona and/or Malibu line of

24  implantable products."  But that's it.  The focus of

```
 1    the complaint here is on the Daytona system.  And to
 2    expand on that, based on the arguments before Judge
 3    Andrews on obtaining information about CSpine's
 4    de-rotation system.
 5              At the hearing, the plaintiff -- the
 6    Court -- Judge Andrews -- stated that the focus of
 7    that argument was the plaintiff wanted discovery on
 8    a product it hadn't accused of infringement.  And
 9    the plaintiff's response is that they were entitled
10    to "de-rotation information from CSpine."
11              And the focus on the arguments
12    revolved around that.  Plaintiff stated further
13    specifically if there is another system out there by
14    CSpine that is capable of what you see here, you
15    know, and they intend that it's only used for the
16    segmental surgery.  We don't get discovery on that
17    because segmental to them is irrelevant because it's
18    not infringing.
19              The plaintiff disagreed with that and
20    made its arguments around that, that because the
21    de-rotation systems were not publicly available,
22    they needed further discovery.
23              And when Judge Andrews considered the
24    arguments, he made a few important points that led
```

1    up to his ruling for CSpine to disclose its other
2    product line.
3                 He asked CSpine if it sold any other
4    product lines for spinal de-rotation.  And CSpine,
5    while making it clear that they should not be
6    required to produce information about products that
7    are not de-rotation systems, nonetheless it
8    responded to the Court's inquiry there were other
9    product lines.  And the Judge asked them to disclose
10   it.  He thought it might prevent further discovery
11   disputes like this one if CSpine had given the
12   plaintiff the names of the various product lines.
13                 But he also noted that then the
14   plaintiff can go off and do some research and see if
15   there is anything else to accuse.  He noted -- I'm
16   referring now to page 20 of the transcript -- "it is
17   the plaintiff's job to name the accused products and
18   get discovery on the accused products."
19                 Then he went on to make the statement
20   a few paragraphs later page 21 of the transcript,
21   all parties have quoted here that "if plaintiff
22   wants to accuse new products as a result of that,
23   they can do so and they can get more discovery."
24                 But that was not an instruction

```
 1    simply to go out and add some products to the list
 2    of accused products and then have that automatically
 3    open the door to additional discovery.  It is
 4    relevant to have any meaning under the Federal Rules
 5    is to be measured by the infringement theory
 6    asserted for which the defendants are on notice.
 7                    And here, this theory that implants
 8    can be swapped out with other de-rotation systems is
 9    simply not a theory that's articulated in the
10    complaint or sufficiently in the contention
11    interrogatories that have been attached, or
12    contention -- infringement contentions that have
13    than been attached as Exhibit E to document item
14    number 108, wherein the focus of both the
15    contentions and the complaint is on the Daytona
16    deformity system and de-rotation systems.  And
17    that's why I'm permitting the discovery of core
18    technical documents with respect to the Mariner
19    adult deformity system because we are talking about
20    the discovery.
21                    We are not -- it is not a ruling on
22    what is specifically allowed to be presented in
23    terms of what products come into evidence at trial,
24    or whether or not there is infringement as a matter
```

1    of law, induced infringement or otherwise as a

2    matter of law.

3                     This is simply a ruling on what the

4    scope of discovery should be as defined by the

5    contours of the contentions in the complaint that

6    exist on the record thus far.  So I think it's only

7    fair that the plaintiffs have discovery about

8    another de-rotation system, the Mariner adult

9    deformity system.

10                    It may be that as this case

11   progresses, and contentions are amended or other

12   events occur in the case, it would expand the

13   relevance into the scope of -- relevance and the

14   scope of discovery into the products that the

15   plaintiff wants to accuse.  But I don't see that

16   it's warranted by the record that exists presently.

17                    So that my ruling.  When can CSpine

18   produce the core technical documents that the Court

19   has order on the Mariner adult deformity system?

20                    MR. NITTA:  Your Honor, this is Chad

21   Nitta.  Can we have 14 days -- I'm not sure of the

22   status since this is new product and it is still in

23   its -- they don't use the word experimental -- still

24   in a pilot stage.  I need to find out the status of

DISCOVERY MOTIONS

```
 1    those documents.  Can certainly do that within 14
 2    case, Your Honor.  The production, not find out.
 3                 THE COURT:  Understood.  So within 14
 4    days.  If there is any issue with that, I would
 5    direct that the parties meet and confer and just so
 6    that that continues to move and progress is made on
 7    that front.  But I will order the production within
 8    14 days of today's date.
 9                 As with all of my rulings, subject to
10    72(a) it's a non-dispositive ruling.  Should there
11    be any objections, the parties are free to take up
12    objections to Judge Andrews.  And he will review my
13    order to determine whether it is clearly erroneous
14    or contrary to law.  And this transcript will serve
15    as the Order of the Court.  I won't be writing a
16    memorandum order.  So with that, is there anything
17    further from plaintiff, Dr. Barry?
18                 MR. HOLLOWAY:  Your Honor, this is
19    Clay Holloway, if I may ask -- it will come across
20    as two questions, not of the substance of your
21    order, which I thought was very well laid out.
22    Thank you for that.
23                 My questions are kind of getting
24    at -- you refer to this as not having substantive
```

DISCOVERY MOTIONS

Page 54

1   impact on the case, rather defining the scope of

2   current discovery.  And you also refer to it not

3   foreclosing the ability for Dr. Barry to -- if the

4   evidence were to go that way, to potentially come

5   back and seek the addition of those products to the

6   case.

7           I will ask my question about the

8   second part first, which is in light of what has

9   transpired, meaning from Judge Andrews' order,

10  through us using the local rule practice of amending

11  our accused instrumentality to seek the core

12  production in advance of the contentions, as the

13  rule lays out, if CSpine refuses to produce products

14  on, for example, the specifically identified Malibu

15  implantables from the complaint.  And it limits its

16  discovery, as it is currently trying to do, to only

17  those things that it says are capable on their own

18  of en bloc de-rotation, then it will control access

19  to the information that would allow us to then make

20  those specific allegations in the contentions and

21  have no access to the core documents that would lead

22  us there.

23          That is why when we read paragraph 56

24  of the complaint, it refers to being used in

1   conjunction with the Malibu implantable systems.

2   Surgical technique guides, as Ms. Geyer pointed out,

3   are handed out to the surgeons.  Sometimes surgeons

4   will put them online.  Medical device companies do

5   not like that.  So when we find them, it is rare.

6   Things like product catalogs, where it will show the

7   pictures of screws and have thing like indications

8   for use that tell you, you can use screw A with

9   system B, those are not publicly available.

10          And CSpine's position is that unless

11  the document shows a specific tool being used for en

12  bloc de-rotation, it's not susceptible to discovery.

13  So it is going to hold all of those cards, and we

14  are never going to get to see the documents that we

15  would then have to cite in the contentions.

16          What we try to do in our current

17  contentions was specifically say "the screw and

18  rod-based systems are exemplary.  Any screw and

19  rod-based systems offered by CSpine for use in

20  conjunction with the Daytona spinal deformity system

21  infringe this claim."  Dr. Barry's infringement

22  theories extend to all of CSpine's rod-based systems

23  that share the infringing characteristics.  Meaning

24  can get hooked up to de-rotation tools.

DISCOVERY MOTIONS

1              My fear is that while your order does

2    not preclude us from returning in an effort to make

3    a screw part of the accused system, CSpine, who to

4    date, seven months into the case has produced a sum

5    total of 28 documents.  It is simply just not going

6    to do it.  As we saw after the Judge Andrews' order

7    they will step back and say it's not named in your

8    contentions because it's not named in the complaint.

9    It's not fair game.  We are not giving you anything.

10             And we appreciate that there is a

11   Rule 11 basis and we satisfied that in paragraph 56.

12   So my question is, I'm not sure what the mechanism

13   is that's going to allow us to do that.  That

14   question is brought on by the following, which gets

15   to the first part of my comments here and question,

16   which is that it is not substantive.

17             I have a feeling what CSpine is about

18   to do is to argue that you have to prove, Dr. Barry,

19   that the Daytona system tools, to count as an

20   infringing procedure, were hooked up to Daytona

21   screws.  If they were hooked up to, for example, a

22   Malibu screw, because the Malibu screw is not an

23   accused instrumentality, that combination does not

24   lead to induced infringement.

DISCOVERY MOTIONS

```
 1              And that is why, as best we can,
 2    based on the instructions for use that we have,
 3    combined with the surgical technique guides that
 4    mention compatibility across those product lines, we
 5    have not accused everything CSpine sells.  We have
 6    only accused the pedicle screw implantables, that
 7    based on current knowledge, can be used with
 8    de-rotation systems.
 9              So at this point, I fear what we are
10    in a position where the holder of the non-publicly
11    available documents is going to refuse inquiry and
12    is going to take the strong position that no
13    combination is possible unless you can prove it is
14    Daytona on Daytona.  And that we are foreclosed from
15    the discovery that would allow us to complete that
16    loop.
17              This is precisely why other
18    jurisdictions, like the Eastern District of Texas,
19    require not just a core technical production, but a
20    core technical production that fits within the
21    allegation of non-publicly available information.
22    So that the plaintiff has the ability to say look,
23    all of these things get put together in an
24    infringing way, even though I didn't have public
```

Page 58

1    access to that -- the filing of the complaint -- I

2    put you on notice that Daytona tools plus Malibu

3    screws equals infringement.

4                 And I understand Your Honor saying it

5    was simply one paragraph.  But it doesn't take

6    anymore than that.  The claim says you implant a

7    pedicle screw.  You attach a de-rotation tool to it.

8    That is exactly what paragraph 56 says.  You take a

9    tool, you hook it on an implant from Malibu, low and

10   behold, an infringing system.

11                So I'm not asking now for a

12   reconsideration of your order.  But I think that

13   that position of where we are left, in light of what

14   we tried to do after the Judge Andrews' order, puts

15   us back in the same spot.  CSpine is not going to

16   produce documents for things that it says we can't

17   prove today are always en bloc de-rotation.  And

18   since we are not going produce the documents to you,

19   you have no evidence to prove it, much less enough

20   evidence to, as it says, "alleged in the complaint,"

21   which is not required.

22                So respectfully, Your Honor, we will

23   go forward from this order.  But I wanted to say all

24   of that because I have a strong suspicion we will

Page 59

1    back in front of you very soon.  Because what we

2    could do right now is write the complaint citing the

3    instructions for use that are there -- or rewrite

4    the contentions exactly as I quoted that language

5    from you, but instead of saying "any rod-based

6    systems," simply naming the products.  And saying

7    based on the IFUs they can be put together.  And

8    Mr. Nitta's response is they have no evidence of

9    that, Your Honor.

10                  Well, your document and Mr. Nitta

11   said several times, you can attach Daytona stuff to

12   Malibu stuff.  He said that.  I don't need anything

13   else.  That is sufficient for me to be able to

14   allege it for the purposes of the contentions phase.

15   If they come back with evidence and say look, you

16   said Malibu could be attached to Daytona, but look

17   you actually can't attach this de-rotator to this

18   screw, that is the evidence that will come out in

19   the case.

20                  But they are taking the position we

21   don't ever get to see the evidence.  That's the

22   problem we have right now, because in following the

23   local rules, we now find ourselves in front of you,

24   with no ability to get production, and yet we are

DISCOVERY MOTIONS

Page 60

1    invited to come back if we can get that evidence.
2    And CSpine is telling you they are never going to
3    give it to us.
4                THE COURT:  I just ordered in part
5    production.  And I would expect -- and again, I'm
6    not -- I haven't seen any of the documents produced
7    to date.  That production of the core technical
8    documents on de-rotation systems would provide
9    insight or reveal whether other implant systems can
10   be swapped.  That may be a big presumption on my
11   part.  But the point being I have made my discovery
12   ruling.  You are going --
13               (Overlapping speakers.)
14               MR. HOLLOWAY:  Your Honor -- I don't
15   mean to interrupt.
16               THE COURT:  -- and you can -- it's
17   without prejudice to return if, in fact, you feel
18   this is a chicken-and-egg type of situation where
19   you can't get the information that would be
20   sufficient for the order -- for the Court to further
21   order or compel further production.
22               MR. HOLLOWAY:  Your Honor, could I
23   request then that that be expressly part of your
24   order.  That their core technical production on

DISCOVERY MOTIONS

1    de-rotation systems must include evidence that shows

2    or shows that it is not possible for implants or

3    other systems to be used with the de-rotation tools

4    of the alleged de-rotation systems, which are

5    Daytona and Mariner.

6                    THE COURT:  Response from CSpine.

7                    MR. NITTA:  Your Honor, the

8    effectively Mr. Holloway is attempting to reargue

9    their entire position, and I don't expect you want

10   us to respond to all of the points.  But, Your

11   Honor, that last request to specify what should be

12   included and, frankly, what should not be included,

13   Your Honor, was neither briefed, nor the proper

14   subject of this dispute, Your Honor.

15                   And our position is, as you noted,

16   since Dr. Barry is saying these implant are intended

17   to be used with the Daytona de-rotation tool, when

18   they produced documents about the Daytona

19   de-rotation system, they presumably would give the

20   evidence that Mr. Holloway is suggesting exists.

21                   The problem that we have is that

22   there is no such evidence indicating that Daytona is

23   supposed to be used with other implants.  As I told

24   you, it not supposed to be used with other implant

Case 1:20-cv-01787-RGA-SRF   Document 118   Filed 11/07/22   Page 62 of 82 PageID #: 2517

DISCOVERY MOTIONS

Page 62

```
1    devices.  The response we are clearly hearing from
2    Dr. Barry is well, then you need to give us all the
3    information about those other implants so we can
4    confirm that they can't be used with Daytona,
5    notwithstanding the fact nothing in Daytona supports
6    that.
7               So we would object to a requirement
8    of inclusion in core technical documents information
9    about compatibility if it is not in there, Your
10   Honor.
11              MR. HOLLOWAY:  Respectfully, Your
12   Honor, to respond to that, he just said it's
13   chicken-and-egg problem and he is going to hide the
14   egg.
15              MR. NITTA:  Your Honor, that --
16              (Overlapping speakers.)
17              THE COURT:  Counsel, I heard
18   argument.  I made my ruling.  I recognize this is an
19   issue that make come up again.  I think that the
20   points that were raised after my ruling are points
21   that need to be fully briefed at a future time,
22   given the fact that the issue comes up again.
23              I granted a production in part.
24   Let's see where that leads the parties.  If this
```

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

DISCOVERY MOTIONS

Page 63

1    still is an issue and Dr. Barry feels it is an

2    impediment to discovery, then we I will entertain an

3    application for further relief if it's warranted

4    under the Federal Rules and based on the theory

5    Dr. Barry is arguing and to which CSpine has a

6    response and a position in opposition.  I will hear

7    it at a future time if needed.

8                    MR. NITTA:  Thank you, Your Honor.

9                    THE COURT:  With that, I believe our

10   proceedings are adjourned.  Thank you, Counsel.

11                   (Whereupon, the hearing was adjourned

12   at 12:25 p.m.)

13                            - - -

14

15

16

17

18

19

20

21

22

23

24

1                    DISCOVERY MOTIONS
2                         - - -
3                  C E R T I F I C A T E
4                         - - -
5

6          I do hereby certify that I am a Notary
   Public in good standing; that the aforesaid
   testimony was taken before me, pursuant to notice,
7  at the time and place indicated; that said deponent
   was by me duly sworn to tell the truth, the whole
8  truth, and nothing but the truth; that the testimony
   of said deponent was correctly recorded in machine
9  shorthand by me and thereafter transcribed under my
   supervision with computer-aided transcription; that
10 the deposition is a true and correct record of the
   testimony given by the witness; and that I am
11 neither of counsel nor kin to any party in said
   action, nor interested in the outcome thereof.
12
13         WITNESS my hand and official seal this 26TH
14 day of OCTOBER 2022
15
16
17
18         *John P. Donnelly, RPR*

19
           John P. Donnelly, RDR
20         Notary Public
21
22
23
24 Job No. 5515463

| & |
| --- |
| **&**  2:2,8 4:12 |

| 0 |
| --- |
| **0806**  35:15 |

| 1 |
| --- |
| **108**  43:7 51:14 |
| **11**  56:11 |
| **112**  10:10 38:3 |
| **118**  43:3 |
| **1200**  2:4 |
| **1201**  2:10 |
| **12:25**  63:12 |
| **14**  52:21 53:1,3,8 |
| **16th**  2:10 |
| **17271**  64:18 |
| **19801**  1:24 2:4 |
| **19899**  2:11 |

| 2 |
| --- |
| **20**  50:16 |
| **20-1787**  1:8 4:4 |
| **2020**  18:19 |
| **2022**  1:10 64:14 |
| **21**  50:20 |
| **222**  2:3 |
| **23**  38:23 |
| **26**  1:10 33:15 |
| 34:3 44:24 |
| **26th**  64:13 |
| **28**  14:12 19:14 |
| 38:19 56:5 |

| 3 |
| --- |
| **300**  1:23 |
| **302**  1:24 |
| **3shape**  18:19 |

| 5 |
| --- |
| **50**  22:15 |
| **51**  9:6 10:2,5,17 |
| 11:21 36:3,9,10 |
| **53**  11:21 |
| **54**  36:10,10 |
| **55**  27:24 |
| **5515463**  64:24 |
| **56**  11:24 22:4 |
| 34:21 35:2,9,17 |
| 35:19,24 36:2,3 |
| 43:1 48:21 |
| 54:23 56:11 |
| 58:8 |
| **571-0510**  1:24 |
| **58**  9:7 10:2,5 |
| 36:3 |
| **5979353**  18:19 |

| 7 |
| --- |
| **72**  53:10 |

| 8 |
| --- |
| **806**  11:1 |
| **815**  1:23 |

| a |
| --- |
| **a.m.**  1:14 |
| **ability**  54:3 |
| 57:22 59:24 |
| **able**  9:11 11:9 |
| 26:23 59:13 |
| **absolutely**  43:10 |
| 43:23 44:12 |
| 45:20 |
| **accept**  43:21 |
| **access**  9:11 |
| 54:18,21 58:1 |

**accurate**  16:2
**accuse**  13:19
 25:14 28:12
 31:11 32:10
 41:15 45:6
 50:15,22 52:15
**accused**  5:8,11
 7:7,9,12,15,17
 9:8,23 13:20,22
 13:23,24 14:5,6
 15:10,11,18,24
 17:4,14,17 18:23
 19:3,10,17,19,24
 20:2,4,11 21:1,2
 24:12,16,22 25:1
 25:6,7,9,16,20
 25:20,22 26:2,6
 26:10,11 28:9
 29:8 30:6,19
 31:1,8 33:2 34:1
 35:23 37:5
 39:14 40:1,6,21
 42:2,14 43:22
 44:3,9 45:4,6,8
 45:10,12,17
 46:24 47:12
 48:18 49:8
 50:17,18 51:2
 54:11 56:3,23
 57:5,6
**accuses**  21:6
**accusing**  17:3,4
**acknowledge**
 39:17
**acknowledged**
 16:21 19:19
**acknowledges**
 16:9

**action**  1:5 47:21
 64:11
**actual**  17:5 22:7
 23:3 37:12
**add**  31:1,16 51:1
**added**  15:17
**adding**  38:24
**addition**  22:2
 54:5
**additional**  24:16
 25:9 29:18 30:6
 31:8,12 35:23
 51:3
**address**  6:21
 20:19 41:1
**addressed**  40:24
**adds**  42:13
**adjourned**  63:10
 63:11
**admits**  25:23
**adopted**  26:4
**adult**  29:1,15
 30:2,6 41:17
 46:23 47:7,13
 51:19 52:8,19
**advance**  54:12
**aeo**  46:9
**aforesaid**  64:6
**agrees**  25:22
**ahead**  35:4
**aided**  64:9
**align**  18:18,22
**alignment**  8:20
 8:22
**allegation**  21:1
 22:5 23:2 48:20
 57:21

**allegations** 9:5,7
  10:6 12:19 14:3
  19:6,8 21:23
  33:19 45:9 46:4
  54:20
**allege** 59:14
**alleged** 21:7
  58:20 61:4
**allegedly** 31:6
  33:21 34:19
**alleges** 19:1 27:1
**alleging** 21:12
**allow** 8:17 54:19
  56:13 57:15
**allowed** 51:22
**amend** 5:12 32:8
  32:8,11
**amended** 5:10
  7:8 15:11 30:24
  47:11 52:11
**amending** 54:10
**amendment** 31:5
  31:16 42:1,7
**analysis** 13:10
**andrews** 4:3
  6:11 15:14,16,18
  15:23 16:11,13
  16:19 25:5
  30:18 39:13,18
  39:20 40:20
  41:10 42:11
  48:6,12 49:3,6
  49:23 53:12
  54:9 56:6 58:14
**answer** 25:4
**anymore** 58:6
**apologize** 10:20
  32:5,13 44:20

**appearances** 2:1
  4:9
**appeared** 48:10
**appearing** 4:15
**appears** 15:22
**application** 63:3
**appreciate** 5:20
  56:10
**appropriate**
  46:3 47:16
**appropriately**
  32:5
**argue** 30:14
  56:18
**argues** 48:15
**arguing** 5:3 63:5
**argument** 21:4
  21:14 26:22
  30:11 48:11
  49:7 62:18
**arguments** 46:15
  49:2,11,20,24
**arsht** 2:8
**articulated** 51:9
**aside** 47:6
**asked** 7:5 35:21
  42:22 50:3,9
**asking** 31:22
  32:12 58:11
**assert** 26:10
**asserted** 8:2
  16:23 18:23
  19:1,13 20:1
  51:6
**asserting** 19:9
**assertion** 24:10
  31:14 48:2

**associated** 16:15
  24:20 25:3,10
  30:15 40:13,14
  40:22 41:21
  44:17
**assortment** 5:24
**assume** 31:3
**assuming** 32:1
**atol** 47:3
**attach** 58:7
  59:11,17
**attached** 15:7
  27:20,21 43:8
  51:11,13 59:16
**attempt** 47:16
**attempting** 61:8
**attorneys** 5:15
**authority** 31:24
  32:3
**automatically**
  51:2
**available** 24:3,6
  25:12 38:18
  39:12 45:14
  46:8 49:21 55:9
  57:11,21
**avenue** 1:23 2:3
**aware** 40:17
  44:7

**b**

**b** 55:9
**back** 35:17,20
  39:12 47:15
  54:5 56:7 58:15
  59:1,15 60:1
**background**
  6:15 7:20 46:17

**backward** 45:20
**barnes** 2:2 4:12
**barry** 1:4 4:3,10
  4:13 6:20,21 7:2
  7:5 9:1 10:11
  11:21,24 12:3,13
  12:24 13:5
  14:10 15:10,16
  16:6,14 20:23
  21:5,12 22:22
  23:2,11 24:1,4
  24:13,24 25:8,11
  25:21,23 27:1
  28:11 29:6,9
  30:8,12,24 32:7
  43:4 44:7,13
  45:1 53:17 54:3
  56:18 61:16
  62:2 63:1,5
**barry's** 7:8,12
  7:24 8:2 9:5,7
  12:9 13:2,3,10
  13:15 14:3,5
  18:15 19:8 21:3
  24:18 26:12
  41:12 55:21
**based** 27:2 49:2
  55:18,19,22 57:2
  57:7 59:5,7 63:4
**basic** 26:4
**basis** 9:20 25:15
  29:3 31:11,15
  39:19 46:6 48:5
  56:11
**bear** 9:12
**beginning** 20:24
**behalf** 4:12,24
  5:4 7:1

[behold - coming]                                                                                              Page 3

**behold** 58:10
**believe** 6:19 9:14
  16:9 31:11
  32:22 43:7 47:2
  47:5 63:9
**best** 34:15 35:21
  40:3 42:23 57:1
**beyond** 26:21
  47:12
**big** 60:10
**bit** 6:3,15
**bloc** 8:5,5 9:4
  11:19 23:19
  27:9,14,23 30:17
  30:20 37:15
  54:18 55:12
  58:17
**block** 8:18
**body** 8:24
**brian** 2:9 4:24
**brief** 4:6 7:24
  9:13 13:3 18:18
  31:3 32:19,24
  38:4 43:8
**briefed** 61:13
  62:21
**briefing** 6:1,2
  16:9 32:2,17
  43:5 46:14
  47:24
**briefly** 18:13
**briefs** 24:9
**broader** 26:3
**brought** 44:17
  56:14
**build** 22:18
**builds** 17:6,11
  17:13

**built** 8:16
**burden** 33:21
  39:2

**c**

**c** 64:3,3
**call** 4:3 45:6
**called** 24:20 30:1
**cameron** 2:9 5:1
**capable** 49:14
  54:17
**cards** 55:13
**case** 4:4 5:16 6:2
  7:20 8:24 10:24
  11:1 18:19,20,20
  19:21,22 20:22
  20:24 24:5 31:1
  33:7 35:3 37:7
  40:1,7 47:18
  52:10,12 53:2
  54:1,6 56:4
  59:19
**cases** 5:24,24
  10:23 32:2
  35:13
**catalogs** 55:6
**caused** 42:12
**certain** 47:21
**certainly** 6:2
  31:2,12,23 32:18
  43:21 47:14
  53:1
**certainty** 41:10
**certify** 64:5
**chad** 2:12 5:2
  20:17 52:20
**challenge** 31:14
  46:6

**challenging** 46:1
**change** 44:11
**characteristics**
  13:12 55:23
**characterization**
  40:9,10
**chicken** 60:18
  62:13
**chooses** 21:14
**choosing** 26:13
**chose** 25:11,14
  28:12 30:16
  44:10
**chosen** 29:21
**circuit** 26:5
**citation** 22:11
**cite** 15:2 18:18
  22:8 27:18
  55:15
**cited** 17:20
  19:21,23 32:1
  34:16
**cites** 20:23 24:6
  24:8 25:14 43:2
**citing** 10:16,24
  24:7 59:2
**civil** 1:5
**claim** 19:13
  23:14 25:23
  27:4 37:18 38:1
  38:7 55:21 58:6
**claimed** 24:21
**claims** 38:5 48:3
**clamps** 8:15,23
**clarification**
  11:7
**clarified** 32:15
  32:18

**clarify** 31:20
  38:10
**clark** 2:9 5:1
**clay** 2:6 4:16
  53:19
**clear** 6:1 7:3
  15:7 21:23
  25:21 44:13
  47:6 50:5
**clearest** 28:5
**clearly** 6:4 21:6
  25:5 53:13 62:1
**client** 44:24
**close** 44:23
**cocounsel** 4:14
**colleague** 5:1
**combination** 8:6
  12:8 13:23
  17:16 19:18
  20:3,12 21:12,22
  26:10 34:19
  36:14 48:18
  56:23 57:13
**combine** 7:17
  18:16 36:11
**combined** 12:17
  12:22 17:8
  18:24 19:13
  20:3,9 21:2 44:3
  57:3
**come** 6:13 41:7
  47:15 51:23
  53:19 54:4
  59:15,18 60:1
  62:19
**comes** 62:22
**coming** 7:2

commencing
  1:13
commend  6:7
comments  56:15
common  8:4
  17:24
commonwealth
  1:16
companies  18:2
  55:4
comparable  42:6
compatibility
  27:14 57:4 62:9
compatible  13:7
  13:12 14:8,11,22
  15:9 16:18 18:2
  26:23 34:17
  37:16
compatibly  39:5
compel  6:22 7:6
  30:22 31:22
  46:19 60:21
compelled  5:7
compelling
  47:20
complaint  5:13
  7:13 9:6,11 10:5
  10:7,10,11,21,21
  10:24 11:2,3,4,9
  11:15,24 12:9
  13:19,21 14:3
  15:2 17:22 21:3
  21:17 22:4
  26:19 30:24
  31:6 32:11 34:9
  34:13,21 35:3,11
  38:6,8,13 46:2,9
  46:11 49:1

51:10,15 52:5
  54:15,24 56:8
  58:1,20 59:2
complete  57:15
completely
  27:12
compliant  10:17
computer  64:9
concept  21:21
confer  6:5 53:5
conference
  16:14 24:17,19
  24:23 26:16
  29:8 30:13
conferred  40:16
confidential
  38:17 42:8
  46:12
confirm  7:2
  14:20 19:14
  31:4 62:4
confirmation
  10:8
confirmed  10:11
conjunction  27:3
  36:20 55:1,20
connect  8:15
considered
  49:23
consigned  11:18
consistent  15:16
  15:18
consolidated
  10:23 35:4
construct  8:5
  17:5,11 38:1
constructs  8:6
  22:18,19 38:2

contains  15:5
contention  13:2
  37:23 38:6,9,21
  45:5 51:10,12
contentions  7:14
  10:12 13:3,18
  14:4 15:2 17:21
  24:4,11 25:13
  26:20,24 28:10
  28:13 34:10,14
  39:6,7 45:11
  51:12,15 52:5,11
  54:12,20 55:15
  55:17 56:8 59:4
  59:14
contest  26:8
context  6:16
  36:2,9 46:16
continues  53:6
contours  52:5
contrary  21:5
  53:14
control  54:18
core  5:8 7:6
  15:19 18:6
  38:16,23 39:8
  46:20,22 51:17
  52:18 54:11,21
  57:19,20 60:7,24
  62:8
corporation  1:7
correct  8:3 9:3
  17:1,18 32:3,4
  33:15,22 34:6,8
  35:13,24 64:10
correctly  30:11
  32:17 64:8

correspondingly
  47:10
counsel  4:9,10
  46:16 62:17
  63:10 64:11
counsel's  33:14
count  56:19
couple  8:1 28:24
court  1:2 4:1,5,6
  4:7,8,8,17,21 5:5
  5:19,22 7:4,6
  9:9,14 10:1,4,8
  11:6,12 15:21
  16:20 17:15,19
  18:11 19:5,17
  20:14 26:5
  28:24 30:21
  31:19,22 32:16
  32:23 33:8,17,24
  34:11,24 35:8,16
  36:18 39:10
  40:3 42:15,18
  45:23 46:13
  49:6 52:18 53:3
  53:15 60:4,16,20
  61:6 62:17 63:9
court's  5:3 6:3
  50:8
cover  8:2
cross  5:5 46:15
crux  25:18 26:16
cry  21:4
cspine  2:13 4:3
  4:22 5:1,4,7 9:8
  9:20 10:6,9,13
  10:14,18 11:2,3
  11:15,15,16
  12:20 13:6,11,14

14:7,13,16,20
15:3,8,14,19
17:8,22 18:12,14
18:17 19:15
20:15,17 27:2
28:15 29:24
31:5 32:2 35:3
35:22 37:9,9
38:23 39:11
40:17,18 41:11
41:20 42:8,10
46:23 47:20
48:17 49:10,14
50:1,3,4,11
52:17 54:13
55:19 56:3,17
57:5 58:15 60:2
61:6 63:5
**cspine's** 5:9 6:22
7:10,14 9:17
10:8 14:11,12
16:9 18:5,7,7
19:14 23:13
40:10 42:8 44:7
44:11 47:22
49:3 55:10,22
**current** 54:2
55:16 57:7
**currently** 54:16

**d**

**d** 2:6
**dario** 2:19 4:16
**date** 45:9 53:8
56:4 60:7
**day** 64:14
**days** 52:21 53:4
53:8

**daytona** 10:13
11:22 12:1,3,5,6
12:9,10,11 13:4
13:7,13,16 14:14
14:14,20,21,24
15:4,6 17:13,17
19:11 20:6,7
21:6,7,19,24
22:5,6,8,12,14
22:16,21,23 23:5
23:6,8,10,19,20
24:11 26:18,19
27:3,18,21 28:4
28:21 34:22
35:6 36:4,5,6,17
36:20,20 37:13
38:12,13 43:2,17
43:20 44:9,15
45:13 48:18,22
48:23 49:1
51:15 55:20
56:19,20 57:14
57:14 58:2
59:11,16 61:5,17
61:18,22 62:4,5
**de** 1:24 9:2
10:13 11:19,23
12:20 14:7,8
16:1,6,11,16
18:1,8 19:11
21:16,20 23:10
23:19,20,21
26:23 27:9,9,14
27:23,24 28:2,7
28:21 29:2,12,16
30:10,16,17,20
30:20 34:18
37:3,15 38:24,24

40:12 41:19,23
42:12 43:14,15
43:19,23 44:1,11
48:9 49:4,10,21
50:4,7 51:8,16
52:8 54:18
55:12,24 57:8
58:7,17 59:17
60:8 61:1,3,4,17
61:19
**decided** 25:8
**deems** 47:15
**default** 25:16
26:3 45:17
**defendant** 1:8
4:22 5:16 16:10
19:2 41:5,5
**defendants** 11:2
20:17 51:6
**define** 24:20
**defined** 52:4
**defines** 11:15
**defining** 54:1
**definition** 26:2
37:4
**deformities** 8:3
9:3
**deformity** 11:22
12:3,5,10,11,16
13:4,8,13 14:14
14:21 20:6 22:5
22:8 27:3 29:1
29:15 30:2,7
35:6 36:4,5
37:13,21 38:12
38:14 41:2,17
43:2 46:23 47:7
47:13 48:22

51:16,19 52:9,19
55:20
**delaware** 1:2,13
1:17,23 2:3,4,11
4:10 25:16 26:3
45:17
**demonstrate**
28:19
**demonstrates**
6:4
**demonstratives**
36:23
**denied** 26:13,15
30:18 39:13
45:19 47:8
**deny** 7:9 46:18
47:19
**deponent** 64:7,8
**deposition** 64:10
**description** 3:7
**designed** 23:9,22
37:2
**despite** 24:7
**detail** 38:20
**determination**
45:19
**determine** 45:3,7
45:7 53:13
**developed** 39:15
**device** 22:21
23:5 55:4
**devices** 62:1
**di** 10:10
**different** 12:15
12:21 13:17
29:10
**diplomate** 1:14

[direct - example]                                                    Page 6

**direct**  17:10
  37:12 53:5
**disagree**  26:17
  28:8 33:10
  44:12
**disagreed**  49:19
**disclose**  50:1,9
**discovery**  1:12
  5:21,22 6:11
  15:22 16:14
  24:17,18,19,23
  25:4,5,7 26:12
  26:15,16 27:12
  29:3,7 30:12
  33:2,11 34:4
  39:14 40:11,12
  40:17,19 41:6,9
  41:12,14 44:6,8
  44:14,24 45:7,18
  46:4 47:17
  48:16 49:7,16,22
  50:10,18,23 51:3
  51:17,20 52:4,7
  52:14 54:2,16
  55:12 57:15
  60:11 63:2 64:1
**discussed**  15:1
  19:14 46:17
**discussing**  14:24
  16:7
**discussion**  9:18
  30:7
**disparate**  21:13
**dispositive**  53:10
**dispute**  5:21
  6:11 13:14 16:8
  16:10,12 33:2
  40:9,15,23 43:24

44:6,24 61:14
**disputed**  25:21
**disputes**  5:23
  16:19 33:11
  50:11
**distributed**
  11:18
**distributes**  13:7
**district**  1:2,2
  57:18
**docket**  4:4 9:11
  35:11,13,18 38:3
**doctor**  17:9,9,13
**document**  14:16
  43:6,11,12 51:13
  55:11 59:10
**documents**  5:8
  7:7,15 14:11,12
  15:20 18:6
  19:14 24:1,3,6,7
  24:9,14 25:12,15
  28:15 33:4
  38:20,23 39:2
  42:8 46:9,12,20
  46:22 51:18
  52:18 53:1
  54:21 55:14
  56:5 57:11
  58:16,18 60:6,8
  61:18 62:8
**doing**  8:5
**donnelly**  1:14
  4:7 64:19
**door**  51:3
**dr**  4:10,13 6:20
  6:21 7:2,5,8,12
  7:24 8:2 9:1,5,7
  10:11 11:21,24

12:3,9,13,24
13:2,3,5,10,15
14:3,5,10 15:10
15:16 16:6,14
18:15 19:8
20:23 21:3,5,12
22:22 23:2,11
24:1,4,13,18,24
25:8,11,21,23
26:12 27:1
28:11 29:6,9
30:8,12,24 32:7
41:12 43:4 44:7
44:13 45:1
53:17 54:3
55:21 56:18
61:16 62:2 63:1
63:5
**due**  40:8
**duly**  64:7

**e**

**e**  13:2 17:21
  34:13 43:9
  51:13 64:3,3
**earlier**  16:2 48:7
**easier**  6:3
**eastern**  57:18
**effectively**  61:8
**effort**  6:5 56:2
**efforts**  39:14
  48:15
**egan**  2:9 4:23,24
**egg**  60:18 62:13
  62:14
**eight**  9:22
**either**  28:4 32:3

**element**  20:1
  25:22
**en**  8:5,5 9:4
  11:19 23:19
  27:9,14,23 30:17
  30:20 37:15
  54:18 55:11
  58:17
**encompass**  9:22
**engage**  31:22
**entertain**  63:2
**entire**  11:3 36:13
  61:9
**entirely**  48:1
**entitled**  24:24
  49:9
**equals**  58:3
**erroneous**  53:13
**esquire**  2:3,5,6,9
  2:9,12,18,19
**essentially**  9:16
  9:22 17:7 33:5
**event**  9:17
**events**  52:12
**evidence**  19:6
  22:7 27:5,7,11
  27:15 28:17
  33:3 34:15
  35:21 40:4 46:2
  46:7 51:23 54:4
  58:19,20 59:8,15
  59:18,21 60:1
  61:1,20,22
**exact**  24:14 27:5
**exactly**  21:13
  45:5 58:8 59:4
**example**  12:15
  41:17 54:14

[example - going]                                                                 Page 7

56:21
**examples** 11:22
  11:24 12:14
**exchange** 4:6
**exemplary** 13:18
  55:18
**exerted** 6:5
**exhibit** 13:2
  17:21 34:13
  43:9 51:13
**exhibits** 3:5,8
  6:9
**exist** 28:18 52:6
**existing** 40:5
**exists** 18:14
  52:16 61:20
**expand** 31:6
  49:2 52:12
**expansive** 37:1
**expect** 60:5 61:9
**experimental**
  29:16 52:23
**explain** 36:23
**explore** 31:15
**expressly** 60:23
**extend** 55:22
**extends** 13:11
**extent** 46:7
  47:24

**f**

**f** 64:3
**fact** 6:20 21:9
  24:13 26:12
  30:1 44:10
  45:12 60:17
  62:5,22

**facts** 18:20 19:23
**factual** 31:11,15
**fair** 52:7 56:9
**fallon** 1:19 4:2
**familiar** 37:10
**family** 29:24
**far** 21:4 39:12
  52:6
**favor** 30:15
**fear** 56:1 57:9
**federal** 26:5
  31:24 32:1
  33:18 51:4 63:4
**feel** 43:10 60:17
**feeling** 56:17
**feels** 63:1
**fifth** 41:4,4
**file** 30:23
**filed** 5:21 6:19
**filing** 58:1
**final** 46:1
**finally** 26:21
**find** 31:23 52:24
  53:2 55:5 59:23
**firm** 4:14
**first** 6:10,19
  7:11,22 25:8
  29:8 32:10
  41:24 42:1,21
  54:8 56:15
**fishing** 35:12
**fit** 7:12 19:21
  28:9 48:2
**fits** 34:4 57:20
**five** 39:1
**fixation** 15:8
**floor** 2:10

**focus** 15:21 16:3
  16:5,5 30:11
  34:24 44:10
  48:24 49:6,11
  51:14
**focused** 33:3
  36:19
**followed** 34:7
**following** 56:14
  59:22
**foreclosed** 57:14
**foreclosing** 54:3
**form** 17:8 31:17
**forth** 7:13 9:7
  12:9 15:4
**forward** 6:14
  58:23
**found** 19:5 23:15
  41:16
**foundation** 48:8
**four** 35:11
**frankly** 18:17
  24:8 39:3 40:10
  41:4 45:1 61:12
**free** 6:15 43:10
  47:14 53:11
**front** 11:9 34:14
  35:1,9 43:6 53:7
  59:1,23
**full** 20:23
**fully** 62:21
**further** 12:24
  13:6 18:11
  32:19 42:19
  47:17 49:12,22
  50:10 53:17
  60:20,21 63:3

**future** 62:21
  63:7

**g**

**game** 56:9
**getting** 9:12
  34:11 37:20
  53:23
**geyer** 2:5 4:15
  4:19 6:24 7:1,5
  9:24 10:3,19
  11:8,14 16:4
  17:2,18 18:13
  19:22 20:18
  22:3 24:17
  32:20 33:1,16,23
  34:7,20 35:5,15
  37:6 40:8 42:16
  42:22,24 45:1,24
  55:2
**gigi** 4:12
**give** 11:12 40:22
  42:8 46:5,5 48:4
  60:3 61:19 62:2
**given** 12:14,15
  50:11 62:22
  64:10
**gives** 14:16 17:8
**giving** 56:9
**go** 6:14 30:16
  35:4,19,20 36:9
  50:14 51:1 54:4
  58:23
**goal** 48:10
**goes** 30:22 36:22
**going** 7:21 40:21
  41:21,22 42:5
  44:1 46:18

[going - implants]

55:13,14 56:5,13
57:11,12 58:15
58:18 60:2,12
62:13
**good** 4:1,11,23
33:9 64:6
**grabbed** 28:20
**grant** 46:18,21
47:10
**granted** 62:23
**ground** 6:12
**group** 29:21
**guess** 6:12
**guide** 12:4 14:15
15:5 18:7 22:9
22:14 24:2
27:19 33:13
35:7 36:5 37:8
38:12,15 43:3,5
43:8,19 45:13
**guides** 14:13,20
15:3 23:16 28:5
55:2 57:3

**h**

**hand** 64:13
**handed** 55:3
**handle** 6:16
**happen** 32:7
**happened** 6:17
26:12 41:9
**happens** 43:4
**hard** 42:4
**head** 45:9
**hear** 18:12 20:14
26:22 32:19
63:6

**heard** 30:19 45:1
46:15 62:17
**hearing** 5:19
6:10 15:13,22
16:2 39:18
40:11,11,19 41:1
41:10,18,19 42:1
44:10,14,16
48:11 49:5 62:1
63:11
**helpful** 11:10
46:16
**hide** 62:13
**highly** 38:17
46:12
**hold** 55:13
**holder** 57:10
**holloway** 2:6
4:16 53:18,19
60:14,22 61:8,20
62:11
**hon** 1:19
**honor** 4:23 6:24
7:19 9:24 10:3
10:19 11:8 17:2
17:23 18:14
20:16,18,20,22
21:3,11,17,21
22:2,7,10,17,24
23:7,12,17,23,24
24:7,8,12,16,21
25:2,7,18 26:6
26:17,21,24 27:4
27:11,15 28:8,14
28:17,21 29:5,9
29:12,14,19 30:5
30:12 31:18
32:4,21 33:1,16

33:23 34:8,20
36:1 40:9 42:17
42:20,21,24 43:1
43:3,6,9,11,17
43:20 44:4,5,6,9
44:15,18,19,22
44:24 45:4,8,15
45:22,24 52:20
53:2,18 58:4,22
59:9 60:14,22
61:7,11,13,14
62:10,12,15 63:8
**hook** 58:9
**hooked** 55:24
56:20,21
**hundred** 39:2

**i**

**idea** 16:17 41:18
44:20
**identical** 18:20
19:9
**identification**
3:8 7:9 13:24
15:11,17 29:9,21
**identifications**
5:10 29:7 47:11
**identified** 7:8
9:1 14:10 15:10
15:14 20:24
26:18,20 27:7
29:9,13,18 42:2
47:1 54:14
**identifies** 11:16
11:24
**identify** 14:6
25:15 30:4 38:8
38:9 39:20 42:7

42:23 45:11,16
**identifying**
25:20 26:6
**ifus** 59:7
**impact** 54:1
**impediment**
63:2
**implant** 12:17
16:18,20 19:12
26:22 28:19
29:11 37:22,24
39:1 43:16 58:6
58:9 60:9 61:16
61:24
**implantable**
12:2,7 21:10
22:6,10,20 23:5
28:3 36:6,12,16
36:21 37:14,17
43:13 48:24
55:1
**implantables**
54:15 57:6
**implanted** 25:24
**implants** 8:6,12
8:17,23 9:3
10:14 12:1,11,12
12:21 13:17
14:8,22 16:8,16
17:17 18:9
20:10 21:8,15,19
23:8,11,18,21
24:20 27:22
28:6 37:1,14,18
37:24 38:7
40:14 41:3,6,23
42:6,7 43:18,20
43:23 45:3

48:16 51:7 61:2 61:23 62:3
**imply** 32:8
**important** 48:14 49:24
**impression** 32:14
**inception** 8:24
**include** 25:3 47:1 61:1
**included** 38:21 43:4 61:12,12
**includes** 8:1 21:19 22:15 43:17
**including** 29:10 47:21
**inclusion** 62:8
**incredibly** 39:3
**independent** 27:8,13 28:16 44:2
**index** 3:1
**indicated** 64:7
**indicating** 61:22
**indication** 28:5
**indications** 23:1 27:17 55:7
**individual** 20:13
**induced** 52:1 56:24
**inducement** 37:6
**industry** 18:1,4 37:10
**information** 28:12 38:19 39:12,16 41:13 45:2 46:8 48:9

48:14 49:3,10 50:6 54:19 57:21 60:19 62:3,8
**informing** 25:1
**infringe** 16:22 18:16,24 19:13 20:1,8,9 21:3,8 33:6 37:18 39:4 45:3 55:21
**infringement** 7:13,14 9:21 10:15 13:1,1,3 13:10,15 14:4 15:2 17:10 18:15 19:8 24:4 24:10 25:13 26:14,20,24 28:10,13 31:7 34:9 44:3 45:11 48:3 49:8 51:5 51:12,24 52:1 55:21 56:24 58:3
**infringer** 37:12
**infringes** 19:4 24:12 27:4 29:17
**infringing** 7:18 9:1 11:20,23 12:1,13,18,22 13:8,12 17:3,11 17:16 19:20 21:20 33:21 34:19 36:12 38:1,2 45:20 48:18 49:18 55:23 56:20

57:24 58:10
**initial** 29:20
**inquiry** 34:2 42:22 50:8 57:11
**insight** 60:9
**install** 19:3
**instructed** 19:2
**instructing** 28:1
**instruction** 50:24
**instructions** 15:6 18:8 22:16,18,23 23:4 24:2 57:2 59:3
**instructs** 19:15
**instrument** 11:20 17:13
**instrumentality** 54:11 56:23
**instruments** 8:7 8:22 9:2 10:14 11:17,23 12:10 12:11,20 13:13 13:16 16:7,12 36:10,11 37:16 38:7
**intend** 49:15
**intended** 15:24 61:16
**intent** 47:23
**intentionally** 28:11
**interchangeably** 44:2
**interested** 64:11
**interject** 33:8

**internet** 23:15
**interoperability** 37:11
**interpreted** 32:17
**interrogatories** 51:11
**interrogatory** 15:15
**interrupt** 60:15
**invited** 60:1
**irrelevant** 49:17
**issue** 6:13 7:23 24:19 39:6,7,8 39:10 40:13,16 53:4 62:19,22 63:1
**issues** 4:18,20 6:4,13 37:20 40:18 46:14,17
**item** 35:11 51:13
**items** 34:16

**j**

**j** 1:19
**jacobs** 17:23 36:1
**job** 6:3 50:17 64:24
**john** 1:14 4:7 64:19
**joining** 4:2 5:1
**judge** 4:2,3 6:11 15:13,16,18,23 16:11,13,19 25:4 30:18 39:13,18 39:20 40:20 41:10 42:11

48:6,11 49:2,6
49:23 50:9
53:12 54:9 56:6
58:14
**judgment** 19:7
33:5,12
**july** 48:11
**jurisdictions**
57:18

**k**

**kate** 4:15 7:1
**kathleen** 2:5
**keep** 35:12
**kilpatrick** 2:6
4:14
**kin** 64:11
**kind** 31:21 53:23
**knew** 27:5 41:11
**know** 19:18 24:5
33:10 36:24
37:2,12 39:17,22
40:2 41:14
49:15
**knowledge** 57:7
**kutak** 2:12 5:2

**l**

**label** 26:9
**labeled** 19:19
38:17
**laid** 6:12 53:21
**language** 59:4
**largely** 48:7
**lastly** 44:19
**law** 4:14 18:14
20:21,22 26:7,8
52:1,2 53:14

**lays** 54:13
**lead** 4:18,20
54:21 56:24
**leading** 6:17
**leads** 62:24
**leave** 5:12 30:23
**led** 49:24
**left** 47:5 58:13
**legal** 1:22
**letter** 9:17 24:9
29:6 31:3 32:2
43:5,7
**letters** 5:21
**level** 38:20 41:14
**levels** 11:19
**light** 54:8 58:13
**limitations** 30:5
**limited** 25:5
29:15 30:18
40:11 42:11
44:8
**limiting** 25:7
44:14
**limits** 54:15
**line** 4:13 5:16,17
10:15 12:2,6,16
12:17 21:10
22:6 29:22 36:6
37:13,16 43:12
48:21,23 50:2
**lines** 12:16 23:18
27:8,13 28:16
31:17 36:16,21
50:4,9,12 57:4
**list** 13:21 34:1
40:21 42:13
51:1

**listed** 38:11
**litigation** 48:3
**little** 6:15
**llp** 2:2,12
**loaned** 11:18
**local** 54:10 59:23
**long** 22:15
**look** 9:10 10:8
38:3 43:10
57:22 59:15,16
**looking** 10:4
**loop** 57:16
**lost** 35:18 44:20
**lot** 38:18
**loud** 7:3
**low** 39:3 58:9

**m**

**machine** 64:8
**machleidt** 2:19
4:16
**magistrate** 4:2
**maintain** 46:10
**maintained**
44:18
**making** 35:20
50:5
**malibu** 12:2,6,12
13:5,18 15:1
17:12 22:6,10,12
36:6,21 38:11
43:12 47:3
48:23 54:14
55:1 56:22,22
58:2,9 59:12,16
**manner** 9:4
18:24 19:13

**manufactured**
11:17
**mariner** 19:12
20:7 29:1,10,11
29:15,21 30:1,3
30:6 37:22
41:16 42:2
46:23 47:2,2,7
47:13 51:18
52:8,19 61:5
**mark** 1:4
**marked** 3:8
**market** 2:10
**marketing** 30:1
**match** 21:15
28:23
**matter** 19:3 21:4
31:17 51:24
52:2
**matters** 5:23
**mean** 30:2 32:8
60:15
**meaning** 51:4
54:9 55:23
**measured** 33:18
51:5
**mechanism**
56:12
**medical** 55:4
**meet** 6:5 25:22
25:24 53:5
**memorandum**
53:16
**mention** 5:20
17:24 22:13
43:11 57:4
**mentioned** 22:3

[merits - original]                                                                 Page 11

| | | | |
|---|---|---|---|
| **merits** 39:7 | **necessarily** | **notary** 1:15 64:5 | **obtain** 39:14 |
| **met** 40:16 | 33:10 | 64:20 | 45:7,18 48:15 |
| **metal** 8:11,14,15 | **necessary** 21:8 | **noted** 20:23 | **obtaining** 48:9 |
| 8:22 | 22:1 | 24:18 25:19 | 49:3 |
| **method** 43:22 | **need** 21:2 41:13 | 29:6 30:11 | **obviously** 32:7 |
| **methods** 8:3 9:2 | 52:24 59:12 | 50:13,15 61:15 | **occur** 52:12 |
| **mix** 21:15 28:22 | 62:2,21 | **notice** 9:21 10:9 | **oct** 47:4 |
| **moment** 44:21 | **needed** 49:22 | 12:20 13:15 | **october** 1:10 |
| **months** 56:4 | 63:7 | 33:20 34:3,5,8 | 64:14 |
| **morning** 4:1,11 | **needs** 21:22 32:6 | 35:22 36:15,19 | **offered** 27:2 |
| 4:23 | 36:8 45:2 | 39:24 40:5 42:9 | 55:19 |
| **morris** 2:8 4:24 | **neglected** 5:14 | 42:24 43:24 | **official** 64:13 |
| **motion** 5:7,9,22 | **neither** 19:23 | 46:5,5 48:17 | **okay** 4:8 5:5 |
| 6:21,23 7:10 | 61:13 64:11 | 51:6 58:2 64:6 | 11:14 |
| 9:17 19:7 31:23 | **never** 24:21 | **notion** 21:11 | **online** 55:4 |
| 46:19 47:1,7,11 | 55:14 60:2 | 23:10 28:9,14 | **open** 34:14 51:3 |
| 47:21 | **new** 39:24 40:6 | 43:15,22 44:12 | **opening** 7:24 |
| **motions** 1:12 5:6 | 41:17 50:22 | 45:10,15 | 13:3 29:6 43:7,9 |
| 6:19 46:15 64:1 | 52:22 | **notwithstanding** | **opportunity** |
| **move** 8:18,19 | **newly** 5:8 7:7,11 | 24:13 45:12 | 30:14 31:14 |
| 30:23 35:17 | 9:22 14:5 28:9 | 62:5 | **opposing** 27:12 |
| 53:6 | 39:24 | **novel** 31:21 | **opposition** 6:22 |
| **moving** 33:5,12 | **newport** 47:3 | **number** 3:7 4:4 | 63:6 |
| **multiple** 8:18 | **nichols** 2:8 4:24 | 5:22 11:1 15:15 | **order** 6:18 15:16 |
| 11:19 | **nitta** 2:12 5:2,3 | 34:12 35:13 | 15:19 21:2 |
| **murphy** 2:3 4:11 | 20:16,17 29:5 | 51:14 | 26:15 32:6,12 |
| 4:12,19 | 31:9 32:4,21 | **numbers** 35:11 | 45:2,6,18,19 |
| | 33:3 37:20 39:5 | **numerous** 22:15 | 46:22 47:6 |
| **n** | 42:19,20 46:1,7 | 22:16 | 52:19 53:7,13,15 |
| | 52:20,21 59:10 | | 53:16,21 54:9 |
| **name** 29:23 | 61:7 62:15 63:8 | **o** | 56:1,6 58:12,14 |
| 50:17 | **nitta's** 59:8 | | 58:23 60:20,21 |
| **named** 56:7,8 | **non** 19:8,20 | **object** 29:14 | 60:24 |
| **names** 50:12 | 29:12 39:14 | 62:7 | **ordered** 32:9 |
| **naming** 59:6 | 43:20 53:10 | **objection** 29:11 | 60:4 |
| **narrow** 24:23 | 57:10,21 | **objections** 53:11 | **orders** 42:11 |
| **narrower** 30:16 | **north** 2:10 47:4 | 53:12 | **original** 24:4,18 |
| **nearly** 18:20 | | **observers** 5:15 | |
| 19:9 | | | |

ortho 2:13
ought 9:20 40:5
outcome 64:11
overcome 34:2
overlap 5:6
overlapping
  34:23 60:13
  62:16

**p**

p 1:14 2:9,9
  64:19
p.m. 63:12
page 3:7 7:24
  10:16 38:4
  50:16,20
pages 22:15
  27:24 43:3
paragraph 9:6
  10:2,5,17 11:14
  11:21,23 17:22
  21:10 22:3,4
  34:21 35:2,8,17
  35:19,24 36:3,3
  36:9 42:23,24
  48:21 54:23
  56:11 58:5,8
paragraphs 9:10
  9:19,20 36:15,22
  50:20
part 29:23 33:18
  34:24 37:23
  39:10 46:18,19
  46:21 54:8 56:3
  56:15 60:4,11,23
  62:23
particularly
  6:10 43:6

parties 6:3 16:6
  40:15 50:21
  53:5,11 62:24
parts 16:8
party 31:22
  33:20 64:11
patent 5:24
  18:17 19:1,4
  20:2,4 38:5
patents 8:2
  16:23 20:8
pause 9:13
pedicle 13:5,6,11
  30:3 47:2 57:6
  58:7
pennsylvania
  1:16
perform 7:18
  12:12,17,22 13:8
  14:18 27:9,23
  36:12 37:15
  38:2 43:13
performing 8:8
permission 5:3
permitting 51:17
person 37:7
pfingst 2:18 4:16
phase 59:14
photos 36:23
pictures 8:1,15
  22:15,19 55:7
piece 7:21
pilot 52:24
pis 47:2
place 35:18 64:7
placed 48:16
places 15:1

plaintiff 1:5 2:7
  4:13 5:11 7:1
  16:22 17:1 19:1
  30:23 32:23
  39:21,23 45:16
  47:14,21 48:1,14
  48:15 49:5,7,12
  49:19 50:12,14
  50:21 52:15
  53:17 57:22
plaintiff's 5:6,10
  15:24 46:19
  48:10 49:9
  50:17
plaintiffs 18:22
  52:7
platform 33:11
pleaded 48:20
pleading 25:19
  25:21 26:4
plus 58:2
point 18:5 20:20
  23:13,24 24:15
  25:19 26:7 27:5
  28:6 32:9 34:21
  35:20 39:22
  40:2 44:4,22
  45:5 46:1 57:9
  60:11
pointed 22:22
  34:12 42:24
  55:2
pointing 27:6
points 20:18
  24:1 42:21
  49:24 61:10
  62:20,20

portions 24:8
position 16:24
  31:2,5 41:24
  44:7,8,12,16,18
  55:10 57:10,12
  58:13 59:20
  61:9,15 63:6
possible 27:13
  57:13 61:2
post 33:13
posterior 15:8
potentially 54:4
practice 17:24
  31:23 47:22
  54:10
practices 20:4
precisely 15:9
  57:17
preclude 56:2
predominantly
  5:24
prejudice 47:8
  47:14 60:17
prepared 6:14
present 2:17 6:3
presented 28:18
  30:12 51:22
presenting 21:4
presently 52:16
presumably 39:1
  61:19
presume 31:20
presumption
  60:10
pretty 17:24
prevent 50:10
previously 6:17
  45:19

| | | | |
|---|---|---|---|
| **prior** 27:24 | 59:24 60:5,7,21 | **progresses** 52:11 | **q** |
| **problem** 32:16 | 60:24 62:23 | **prong** 34:2 | |
| 37:23 59:22 | **productions** | **proof** 33:21 | **question** 24:23 |
| 61:21 62:13 | 14:12 | **proper** 8:20,21 | 24:24 26:1 |
| **procedural** | **products** 5:11 | 25:15 32:10 | 30:21 32:24 |
| 31:13 | 7:7,9,12,15,18 | 61:13 | 33:9 54:7 56:12 |
| **procedure** 56:20 | 9:8,23 11:16 | **proportionality** | 56:14,15 |
| **proceed** 6:18 | 12:2,7 13:20,23 | 33:14 | **questioning** 40:3 |
| 11:7 | 14:5,6 15:10,14 | **prospect** 33:10 | **questions** 29:1 |
| **proceedings** | 15:17,18,20 16:1 | **prove** 56:18 | 53:20,23 |
| 63:10 | 17:6 18:4,16,24 | 57:13 58:17,19 | **quite** 6:1 18:17 |
| **process** 6:6 45:9 | 19:3,11,16,18,24 | **provide** 6:15 | 39:3 40:10 41:3 |
| **produce** 5:8 | 20:2,4,12,13,23 | 60:8 | **quoted** 22:11 |
| 15:19 40:17 | 21:1,2,11,13 | **public** 1:15 | 50:21 59:4 |
| 41:21,22 42:5 | 22:7,10,24 24:16 | 23:14 57:24 | **r** |
| 50:6 52:18 | 24:21,22 25:3,6 | 64:6,20 | |
| 54:13 58:16,18 | 25:7,9,24 26:2 | **publicly** 38:18 | **r** 1:19 64:3 |
| **produced** 14:13 | 26:13 28:9,13,19 | 41:13 49:21 | **raised** 20:19,21 |
| 38:16,23 46:9 | 28:22 29:8,10 | 55:9 57:10,21 | 24:24 39:11 |
| 56:4 60:6 61:18 | 30:6,15,19 31:1 | **purchase** 19:2 | 62:20 |
| **product** 5:9 | 31:8,12 32:10 | 19:15 | **rare** 55:5 |
| 10:15 12:16,16 | 33:6 34:1,1,16 | **purpose** 13:24 | **rdr** 64:19 |
| 13:22 14:1 | 35:23 36:7,12,16 | **purposes** 25:16 | **read** 6:9 11:11 |
| 15:12 17:4,14 | 36:21 37:5,11,14 | 26:2 29:24 | 21:18 32:17 |
| 19:19,20 20:11 | 37:17 39:4,14 | 59:14 | 36:2,9 46:13 |
| 21:6,20 23:4,18 | 40:1,6,13,15,22 | **pursuant** 45:17 | 54:23 |
| 24:11,13 25:1,20 | 41:11,21 42:14 | 64:6 | **reading** 35:2 |
| 25:22 26:6,11,19 | 43:13 44:2,4,17 | **put** 12:20 33:20 | 37:7 |
| 27:8,13 28:3,16 | 45:6 46:24 | 35:22 36:15 | **really** 20:12 |
| 29:11,18,22,24 | 47:12,12,17,18 | 39:5,23 42:23 | 36:13 |
| 31:17 40:21 | 48:24 50:6,17,18 | 43:24 55:4 | **realm** 30:10 |
| 41:17 42:2 44:9 | 50:22 51:1,2,23 | 57:23 58:2 59:7 | **reargue** 61:8 |
| 49:8 50:2,4,9,12 | 52:14 54:5,13 | **puts** 38:4 58:14 | **reason** 7:11 |
| 52:22 55:6 57:4 | 59:6 | **putting** 23:11 | 22:13 23:7,17 |
| **production** 7:6 | **professional** | 33:24 46:16 | 27:10 36:8 41:1 |
| 18:6 38:16 39:9 | 1:23 | | **reasons** 7:11 |
| 46:19,22 53:2,7 | **progress** 48:2 | | 17:20 31:10 |
| 54:12 57:19,20 | 53:6 | | **reclassify** 26:13 |
| | | | 26:14 |

recognize 62:18
reconsideration
  58:12
record 11:11
  23:14 31:4,21
  33:19 34:4 35:5
  52:6,16 64:10
recorded 64:8
records 47:9
refer 8:12 25:8
  53:24 54:2
reference 10:1
  11:13 22:11,17
  22:20,24 28:3
  43:12
referenced 9:19
  21:10
references 23:4
referencing
  10:21,22,24
referred 9:15
  16:15
referring 11:4
  50:16
refers 11:3 54:24
refuse 57:11
refuses 54:13
refusing 40:17
  41:20
regarding 9:8
regina 2:3
registered 1:14
  1:23
reiterated 12:24
related 30:2 35:3
  35:13
relating 10:18
  30:22

relevance 33:17
  34:2 52:13,13
relevant 33:14
  51:4
relief 30:22
  31:21 47:15,19
  47:23 63:3
rely 25:11
remaining 46:24
  47:6
removed 8:23
repeatedly 21:7
  21:18 26:18
reply 9:17 18:18
  38:4
reporter 1:15
  4:5,7,9
reporters 1:23
representation
  10:10 16:2
representing 2:7
  2:13
request 31:21
  60:23 61:11
requested 47:20
requests 24:18
require 57:19
required 5:12
  13:21 15:19
  37:15 38:1 50:6
  58:21
requirement
  62:7
requires 38:7
  43:22
requiring 32:12
research 39:22
  50:14

resisting 29:3
respect 20:21
  22:2 29:4 40:8
  42:21 44:5,19
  47:16 51:18
respectfully
  58:22 62:11
respond 61:10
  62:12
responded 50:8
response 5:18
  32:19,24 49:9
  59:8 61:6 62:1
  63:6
responses 15:15
result 50:22
resulted 10:15
results 40:19
return 60:17
returning 56:2
reveal 60:9
review 53:12
reviewed 6:9
revolved 49:12
rewrite 59:3
rga 1:8
right 9:23 11:7
  15:21 20:14
  31:13 32:18,23
  35:10,16 42:18
  45:23 46:13
  59:2,22
ripe 32:6 40:24
ripened 16:13
  40:15
rise 21:11
robust 46:11

rock 2:12 5:2
rod 8:11 27:2
  55:18,19,22 59:5
rods 8:12
rotate 11:19
rotation 9:2
  10:13 11:23
  12:20 14:7,8
  16:1,6,11,16
  18:1,8 19:11
  21:16,20 23:10
  23:19,20,21
  26:23 27:9,9,14
  27:23,24 28:2,7
  28:21 29:2,12,16
  30:10,16,17,20
  30:20 34:18
  37:3,15 38:24,24
  40:12 41:19,23
  42:12 43:14,15
  43:19,23 44:1,11
  48:9 49:4,10,21
  50:4,7 51:8,16
  52:8 54:18
  55:12,24 57:8
  58:7,17 60:8
  61:1,3,4,17,19
rotator 59:17
rule 33:15 34:3
  44:24 54:10,13
  56:11
rules 31:24 32:1
  33:18 51:4
  59:23 63:4
ruling 25:6
  39:16 48:5,5,7,7
  48:8 50:1 51:21
  52:3,17 53:10

[ruling - stated]                                                Page 15

60:12 62:18,20
**rulings** 53:9
**run** 39:15

**s**

**satisfied** 56:11
**saw** 56:6
**saying** 17:15,19
  20:5 32:12
  41:20 45:2 58:4
  59:5,6 61:16
**says** 12:3 21:18
  26:9 27:1 34:22
  35:1,5,9 39:5
  46:7 54:17 58:6
  58:8,16,20
**scoliosis** 8:4 9:4
**scope** 9:8 14:2,4
  15:24 16:18
  52:4,13,14 54:1
**screw** 13:5 17:12
  27:1 30:3 47:3
  55:8,17,18 56:3
  56:22,22 57:6
  58:7 59:18
**screwing** 8:10
**screws** 8:10,11
  8:11 13:6,11
  17:7 18:3 55:7
  56:21 58:3
**scroll** 35:16
**seal** 64:13
**second** 7:8,14
  15:11 42:6 54:8
**secondly** 28:14
**section** 36:13
**see** 8:14 24:9
  43:2 49:14

50:14 52:15
55:14 59:21
62:24
**seeing** 36:24
**seek** 5:12 30:23
  32:8 47:15,23
  54:5,11
**seeking** 25:4
  30:22
**seen** 60:6
**sees** 48:2
**segmental** 29:16
  49:16,17
**sells** 57:5
**separate** 11:2
  16:8 29:7 31:16
  38:14,15 40:23
**separately** 41:2
**serve** 53:14
**served** 24:5
  34:10
**set** 7:13 9:7 15:4
  22:16
**sets** 12:9 20:23
**seven** 56:4
**shape** 17:8
**shaped** 48:8
**share** 55:23
**sharing** 13:11
**sherry** 1:19 4:2
**shorthand** 64:9
**show** 33:4 55:6
**shows** 33:4 38:6
  55:11 61:1,2
**side** 33:20 34:4
  38:5,5
**sides** 6:6,7

**sierra** 47:4
**signature** 64:18
**similar** 13:19
**simple** 23:8
**simply** 21:17
  22:11 23:12
  26:11 27:19
  28:20 33:24
  45:16 51:1,9
  52:3 56:5 58:5
  59:6
**sincere** 6:5
**single** 12:22
  13:22,22 18:23
  19:9 21:6,9
  22:17,20 28:3
  29:22
**situation** 60:18
**six** 7:7
**small** 7:21 14:14
  14:21 15:4,7
  20:7 22:23
  27:18 38:13
  45:13
**sold** 11:17 23:20
  50:3
**sole** 29:17
**solutions** 1:22
**soon** 59:1
**sort** 43:16 44:3
**speak** 6:12 34:17
**speakers** 34:23
  60:13 62:16
**specialized**
  28:22
**specific** 7:22
  10:12 12:14,15
  33:4 54:20

55:11
**specifically** 8:4
  9:6 10:2 11:16
  12:1 14:6 23:9
  27:1 37:2 40:20
  42:13 49:13
  51:22 54:14
  55:17
**specify** 61:11
**spinal** 8:3 9:3
  12:17 13:5,17
  14:7 15:8 16:1,5
  18:1 19:12 27:3
  37:10 48:9,16
  50:4 55:20
**spine** 8:16,19,21
**spot** 58:15
**squarely** 7:12
**stage** 29:17 46:3
  52:24
**stand** 42:5
**standard** 25:17
  25:19,24 26:3,4
  45:17
**standing** 7:10
  16:22 19:24
  64:6
**star** 47:4
**start** 4:9 5:20
  6:20 20:20
**started** 5:14
  41:20
**starting** 4:10
**starts** 8:9,9
**state** 1:16 9:18
  43:18
**stated** 9:14
  18:14 49:6,12

**statement**  9:15
  27:19 41:12
  50:19
**states**  1:2 13:6
  36:3 48:22
**stature**  14:15,21
  15:4,7 20:7
  22:23 27:18
  38:14 45:13
**status**  52:22,24
**stay**  8:23
**step**  31:13 32:10
  56:7
**steps**  48:1
**stipulate**  31:5,16
**stipulating**
  31:10
**stop**  9:9
**street**  2:10
**stricken**  5:11
**strike**  7:10 47:11
**strong**  57:12
  58:24
**strongly**  28:8
**structures**  9:1
**stryker**  1:7 4:3
  5:16,17 10:7,22
  11:5
**stuck**  39:19
**stuff**  59:11,12
**subject**  53:9
  61:14
**submission**  6:19
  9:16
**submissions**  6:9
  46:18
**subsequent**
  36:22

**substance**  53:20
**substantive**
  53:24 56:16
**succinct**  6:1
**sufficiency**  46:2
  46:6
**sufficient**  12:19
  13:19 19:7
  59:13 60:20
**sufficiently**
  51:10
**suggest**  27:7
**suggesting**  61:20
**suggests**  27:22
  47:24
**suite**  1:23 2:4
**sum**  56:4
**summary**  19:7
  33:5,12
**supervision**  64:9
**supplemental**
  15:15
**support**  9:20
  18:15 27:6,7
  28:15 45:10
**supported**  17:20
  23:12 48:19
**supporting**  19:6
**supports**  28:6
  62:5
**supposed**  61:23
  61:24
**sure**  35:10 46:10
  52:21 56:12
**surgeon**  7:17 8:8
  8:13,18 14:17
  17:6 18:16
  19:10 28:1,20

37:8,8
**surgeons**  14:16
  55:3,3
**surgeries**  7:18
  8:1,9 10:12
  12:13 13:9
  14:18
**surgery**  7:22
  12:18,23 17:6
  36:13 38:2
  49:16
**surgical**  12:4
  14:13,15,19 15:3
  15:5 18:7 22:8,9
  22:14 23:16
  24:2 27:19 28:4
  35:6 36:4 37:7
  38:12,15 43:3,4
  43:8 45:13 55:2
  57:3
**survive**  19:7
**susceptible**
  55:12
**suspicion**  58:24
**swapped**  23:12
  34:17 37:2 51:8
  60:10
**sworn**  64:7
**system**  11:22
  12:3,5,21,21
  13:4,5,8,17
  14:14,15,21,22
  15:7 16:10,12
  18:3 19:12 20:7
  21:19,23 22:5,8
  23:9,21 27:3
  29:2,2,4 30:3
  35:6 36:4,5,20

37:13,21,22,24
  38:12,14,14 39:1
  40:12 41:2 42:3
  43:2,22 44:15
  46:23 47:2,3,3,3
  47:4,4,4,7,13
  48:19,22 49:1,4
  49:13 51:16,19
  52:8,9,19 55:9
  55:20 56:3,19
  58:10 61:19
**systems**  8:3 14:7
  14:9,11,17,23
  15:8 16:1,6,15
  16:17,18,20
  17:16,17 18:1,2
  18:9,10 20:6,8
  20:10 27:2,21
  34:18 37:3
  38:24 39:1,21
  41:7,24 42:12
  47:6 48:10,17
  49:21 50:7 51:8
  51:16 55:1,18,19
  55:22 57:8 59:6
  60:8,9 61:1,3,4

---

**t**

**t**  2:12 64:3,3
**take**  4:17 26:9
  47:21 48:1
  53:11 57:12
  58:5,8
**taken**  1:13 16:24
  64:6
**talking**  51:19
**talks**  36:10,11,13

| | | | |
|---|---|---|---|
| **taylor** 2:18 4:15 | 39:17,24 40:4 | **times** 59:11 | 54:16 |
| **teach** 7:15 | 55:22 | **today** 4:18 5:4 | **tubes** 8:15,22 |
| **teaches** 12:5 | **theory** 7:13 13:1 | 45:21 58:17 | **tunnell** 2:8 |
| 14:16,20 | 13:16 17:20 | **today's** 53:8 | **turns** 45:8 |
| **technical** 5:8 7:6 | 18:15 21:14 | **told** 43:9 61:23 | **two** 7:10 10:16 |
| 15:20 18:6 | 26:14 27:13 | **tool** 43:19 55:11 | 12:14,15 18:16 |
| 38:16,23 39:8 | 34:5,12 35:22 | 58:7,9 61:17 | 18:23 19:3,10,16 |
| 46:20,22 51:18 | 39:15,19 48:19 | **tools** 8:14,14,17 | 20:2 26:9 29:6 |
| 52:18 57:19,20 | 51:5,7,9 63:4 | 17:7 21:8,16,20 | 32:24 38:4,23 |
| 60:7,24 62:8 | **thereof** 64:11 | 23:10,20,21 | 42:21 53:20 |
| **technique** 12:4 | **thing** 55:7 | 26:23 27:9,23 | **type** 7:22 47:23 |
| 14:13,15,19 15:3 | **things** 26:9 | 28:7,21 29:12 | 60:18 |
| 15:5 18:7 22:9 | 34:13 54:17 | 30:10,16,17,20 | **types** 10:12 |
| 22:14 23:16 | 55:6 57:23 | 37:18,19 43:16 | 13:18 |
| 24:2 27:19 28:4 | 58:16 | 43:23 44:1,11 | |
| 35:7 36:5 37:8 | **think** 6:16 7:20 | 55:24 56:19 | **u** |
| 38:12,15 43:3,5 | 11:3 16:4,17 | 58:2 61:3 | |
| 43:8,18 45:13 | 18:13 19:22 | **top** 8:17 | **unclear** 10:20 |
| 55:2 57:3 | 31:12 32:5,16 | **topic** 9:18 | **understand** 7:19 |
| **technology** | 34:8 38:3 39:10 | **total** 56:5 | 16:21,24 44:23 |
| 18:18,22 22:12 | 42:10 47:22 | **townsend** 2:6 | 58:4 |
| **telehponic** 1:12 | 52:6 58:12 | 4:15 | **understands** |
| **tell** 55:8 64:7 | 62:19 | **train** 44:20 | 37:9 |
| **telling** 60:2 | **thornburg** 2:2 | **transcribed** 64:9 | **understood** |
| **term** 11:15 | 4:12 | **transcript** 1:12 | 15:23 31:19 |
| **terms** 47:20 | **thoroughly** 6:8 | 6:10 50:16,20 | 53:3 |
| 51:23 | 46:14 | 53:14 | **undertook** 42:22 |
| **testimony** 64:6,8 | **thought** 44:21 | **transcription** | **united** 1:2 |
| 64:10 | 50:10 53:21 | 64:9 | **unrelated** 5:23 |
| **texas** 57:18 | **threading** 8:10 | **transpired** 54:9 | **use** 8:13 14:17 |
| **thank** 4:17,21 | **three** 29:10 | **trial** 51:23 | 15:6 18:8 19:16 |
| 6:6,24 7:4 11:6 | 36:14 | **tried** 58:14 | 22:16,19,23 23:2 |
| 20:16 32:22 | **time** 8:19 16:13 | **true** 28:17 43:17 | 24:3 27:2,14,17 |
| 33:1 42:18,20 | 24:3 25:8,12,13 | 64:10 | 28:2 37:17 |
| 45:21 53:22 | 29:5 33:9 38:13 | **truth** 64:7,8,8 | 52:23 55:8,8,19 |
| 63:8,10 | 40:24 41:4 46:8 | **try** 55:16 | 57:2 59:3 |
| **theories** 9:21 | 47:8,22 48:5 | **trying** 26:14 | **user** 18:23 19:2 |
| 10:9 31:6 33:19 | 62:21 63:7 64:7 | 30:4 38:22 | 19:10 |

| | |
|---|---|
| **users**  19:15 | **withheld**  41:5 |
| **uses**  11:22 13:4 | **witness**  64:10,13 |
| 18:23 22:12 | **word**  52:23 |
| **v** | **work**  18:4 23:22 |
| **v**  4:3 | **works**  37:9 |
| **various**  40:6 | **worth**  7:21 |
| 50:12 | **wrap**  31:7 35:23 |
| **veritext**  1:22 | 39:24 |
| **versus**  38:5,6 | **wrapped**  37:4 |
| 41:2 | **wrapping**  40:6 |
| **vertebrae**  8:10 | **write**  59:2 |
| 8:18,19 11:19 | **writing**  53:15 |
| **vs**  1:6 18:18 | **wrong**  18:17 |
| **w** | |
| **walked**  11:10 | |
| **want**  5:19 6:6 | |
| 7:2 23:24 30:24 | |
| 32:7 38:10 | |
| 44:22 61:9 | |
| **wanted**  31:20 | |
| 49:7 58:23 | |
| **wants**  30:24 | |
| 50:22 52:15 | |
| **warranted**  52:16 | |
| 63:3 | |
| **way**  17:8 21:18 | |
| 25:2 32:10 54:4 | |
| 57:24 | |
| **weaponizing** | |
| 42:11 | |
| **wednesday**  1:10 | |
| **weighing**  41:10 | |
| **went**  50:19 | |
| **westlaw**  18:19 | |
| **wilmington**  1:13 | |
| 1:24 2:4,11 | |