IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DR. MARK A. BARRY, | § § | |
| Plaintiff, | § § § | |
| v. | § § | C.A. No. 20-1787 (RGA) (SRF) CONSOLIDATED |
| STRYKER CORPORATION, ET AL., | § § § | **REDACTED VERSION** |
| Defendants. | § | |

**DR. BARRY'S RESPONSE TO SEASPINE DEFENDANTS'
LETTER BRIEF OF JANUARY 5, 2023**

OF COUNSEL:

KILPATRICK TOWNSEND &
STOCKTON, LLP
D. Clay Holloway
Mitchell G. Stockwell
Courtney S. Dabbiere
Suite 2800, 1100 Peachtree Street NE
Atlanta, GA, 30309
(404) 815-6537
cholloway@kilpatricktownsend.com
mstockwell@kilpatricktownsend.com
cdabbiere@kilpatricktownsend.com

Dario A. Machleidt
Kathleen R. Geyer
Christopher P. Damitio
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Telephone: 206-467-9600
dmachleidt@kilpatricktownsend.com
kgeyer@kilpatricktownsend.com
cdamitio@kilpatricktownsend.com

Taylor J. Pfingst
1801 Century Park East, Suite 2300
Los Angeles, CA  90067
(310) 966-4955
tpfingst@kilpatricktownsend.com

BARNES & THORNBURG LLP

Regina S.E. Murphy (No. 5648)
222 Delaware Ave., Suite 1200
Wilmington, DE 19801
Tel: (302) 300-2474
Fax: (302) 300-3456
gigi.murphy@btlaw.com

*Attorneys for Plaintiff Dr. Mark A. Barry*

Andrew W. Rinehart
1001 West Fourth Street
Winston-Salem, NC 27101
(336) 607-7312
arinehart@kilpatricktownsend.com

January 6, 2023

**Redacted Version filed on January 13, 2023**

Dear Judge Fallon:

The present dispute is limited to SeaSpine's refusal to produce discovery for the Mariner Adult Deformity system, which Your Honor ruled was within the scope of Accused Products. D.I. 177 at 1 ("SeaSpine's Motion for a Protective Order concerning discovery related to **Mariner Adult Deformity**" (emphasis added)); D.I. 113. The parties agreed that any discovery into the Disputed Products for which Your Honor did not grant discovery[1] is on hold until the Court rules on pending motions regarding those products (Dks. 122, 123). Despite this, SeaSpine misrepresents Dr. Barry's positions and the parties' meet and confer correspondence in an attempt to obfuscate the scope of this dispute. The real issue is SeaSpine continued dilatory game of delay when it comes to discovery and its bid for the equivalent of a summary judgment ruling on Mariner Adult Deformity based on Dr. Barry's preliminary infringement contentions and SeaSpine's refusal to produce documents in violation of Your Honor's Order (D.I. 113).

Prior to July, SeaSpine took the position that only Daytona Deformity System was in the case and refused to tell Dr. Barry whether any other deformity systems existed. Dr. Barry was forced to go to the Court to compel SeaSpine to disclose its other deformity system—Mariner Adult Deformity. D.I. 108-5 at 5 (15:4-22). When Dr. Barry identified Mariner Adult Deformity as an accused product, SeaSpine again refused to produce information related to Mariner Adult Deformity system. D.I. 108-7 at 3 ("[SeaSpine] does not dispute that Mariner Adult Deformity could be classified as a derotation system. If that were the *only* system disclosed by Dr. Barry . . . the parties would be having a different discussion."). Even after Your Honor agreed that Mariner Adult Deformity was a properly accused product and Dr. Barry produced claim charts on the Mariner Adult Deformity System, SeaSpine still refuses to produce information related to Mariner Adult Deformity. SeaSpine's repeated, meritless delay in providing discovery into its deformity systems should be rejected.

**I.      Dr. Barry Only Seeks Discovery on Mariner Adult Deformity**

Tellingly, SeaSpine conceals from the Court the meet and confer and correspondence between the parties limiting the scope of this dispute to Mariner Adult Deformity. SeaSpine's Letter Brief to the Court mirrors its original Dec. 20 deficiency letter to Dr. Barry and does not address or acknowledge the parties narrowing of the dispute. *Compare* Ex. A *with* D.I. 180. SeaSpine's Dec. 20 letter unilaterally stated that SeaSpine refused to provide discovery into Mariner Adult Deformity System. Ex. A at 3. SeaSpine did not seek a meet and confer. Instead, Dr. Barry had to schedule a meet and confer so he could move to compel. During that meet and confer, Dr. Barry confirmed that he is ***not*** seeking discovery on any system except Mariner Adult Deformity. Ex. B at 1-2. Even when filing the Motion for a Discovery Hearing, Dr. Barry and SeaSpine agreed to narrow the scope of this dispute to only discovery about Mariner Adult Deformity because "there is no need to seek a protective order on products Dr. Barry is not seeking discovery on at this time." Ex. B at 1; Ex. C (redline showing narrowing of the dispute from all "products identified in the Infringement Claim Charts" to just "Mariner Adult Deformity"). Until filing its Letter Brief, SeaSpine did not express any disagreement with that understanding. *Compare* Ex. B at 1 ("We will accept your edits") *with* D.I. 180 at 3 n.4 ("Plaintiff is not entitled to avoid a protective order" on the Disputed Products).

Instead of acknowledging the agreement reached between the parties, SeaSpine misrepresents that Dr. Barry is "requiring SeaSpine to produce documents about products that

---

[1] The Disputed Products are Mariner MIS system, the Mariner Pedicle Screw system, the Malibu system, the NewPort system, the Atoll OCT system, the Sierra system, and the NorthStar system.

have already been excluded." D.I. 180 at 1-2. This is false. As Dr. Barry explained to SeaSpine in the meet and confer, there are two outstanding motions regarding the scope of the accused products: Dr. Barry's objections to Your Honor's prior ruling (D.I. 122) and Dr. Barry's motion to amend his complaint (D.I. 123). Until at least one of those motions is resolved in Dr. Barry's favor, Dr. Barry has not and will not seek discovery on the Disputed Products.

Dr. Barry also explained to SeaSpine he included the Disputed Products in the infringement contentions to preserve his rights given the pending motions and, should the Court rule in Dr. Barry's favor, to avoid any further delay in discovery. With the close of fact discovery approaching on February 17, 2023, Dr. Barry did not want to delay serving his infringement contentions until after receiving a core technical production from SeaSpine on the Disputed Products. Because SeaSpine already has Dr. Barry's infringement contentions regarding the Disputed Products, fulsome discovery can begin immediately upon the Court's ruling.

The only portion of the contentions at issue in this dispute are Dr. Barry's contentions that the Mariner Adult Deformity System alone infringes each and every limitation of the Asserted Claims. *See* Exs. D-H (highlighting allegations for Mariner Adult Deformity alone). There is no ripe dispute regarding any other products or theories; rather, SeaSpine essentially seeks summary judgment by refusing to participate in discovery.

## II.     Mariner Adult Deformity Contains Longitudinal Linking Tools

SeaSpine challenges the sufficiency of Dr. Barry's infringement contentions to essentially seek summary judgment of non-infringement without engaging in discovery. SeaSpine's documents show the existence of tools that can be used to link both along and across the spine. Nevertheless, SeaSpine ***substantively*** argues Mariner Adult Deformity "cannot be used for *en bloc* derotation because it does not include derotation clips that link engagement members along the spine." D.I. 180 at 3-4. This is an improper use of discovery and is false—when you own the information and refuse to produce relevant discovery, you can bend the information all you want.

Dr. Barry "need not in [his] contentions actually prove [his] infringement case." *WI-LAN Inc. v. Vizio, Inc.*, No. 15-CV-788, 2018 WL 669730, at *1 (D. Del. Jan. 26, 2018). "Infringement contentions must serve the purpose of providing notice to Defendants of Plaintiff's infringement theories beyond that which is provided by the mere language of the patent." *Id.* Dr. Barry's infringement contentions exceed these standards. For example, Dr. Barry identifies the "Segmental Derotation Assembly, Longitudinal" as a specific tool that links engagement members along the spine, i.e., longitudinally:

> "On information and belief, surgeons have used the Segmental Derotation Assembly (LG), Segmental Derotation Assembly (SM), and the ***Segmental Derotation Assembly, Longitudinal*** to connect a first group of pedicle screw engagement members of the Mariner Adult Deformity System both along and across the spine to construct a first pedicle screw cluster derotation tool. On further information and belief, SeaSpine has instructed, taught, encouraged surgeons to make such constructs. . . . ***On information and belief, the Mariner Adult Deformity System can also be linked longitudinally, i.e., along the spin, with the use of the Segmental Derotation Assembly, Longitudinal***."

*See, e.g.*, Ex. D at 8-9 (emphasis added) (citations omitted); Ex. E at 8-9 (same); Ex. F at 8-9 (same); *see also* Ex. G at 10-11; Ex. H at 10-11.

***SeaSpine does not dispute that its documents show the existence of the Segmental Derotation Assembly, Longitudinal tool***. SeaSpine's complaint is that Dr.

Barry bases his allegation of the use of the "Segmental Derotation Assembly, Longitudinal" tool on information and belief—i.e., circumstantial evidence. This is appropriate as infringement of the Asserted Claims hinges on inducement of the methods and systems used during a surgery. SeaSpine has produced information regarding the existence of tools, including the Segmental Derotation Assembly, Longitudinal, contained in the Mariner Adult Deformity System. *See, e.g.*, Ex. I (SeaSpine_Barry_002222) at 7 (part no. MD2-003027). SeaSpine has also produced documents showing that the Segmental Derotation Assembly (LG) and (SM), are used to link *across* the spine. *See* Ex. J (SeaSpine_Barry_002856) at -2905. It is not "mere suspicion or speculation" that the Segmental Derotation Assembly, **Longitudinal** links along the spine (i.e., longitudinally) **as indicated by the name of the tool itself**. That SeaSpine has not produced pictures of the Segmental Derotation Assembly, Longitudinal in use is dispositive of nothing.

      The cases cited by SeaSpine are inapposite. *Tessera* does not consider the sufficiency of infringement contentions; it addresses discovery regarding products that have "Ship To" addresses outside of the U.S. and therefore are "not made, used, sold or imported into the U.S." *Tessera, Inc. v. Broadcom Corp.*, No. CV 16-380-LPS-CJB, 2017 WL 4876215, at *2 (D. Del. Oct. 24, 2017). Importantly, the issue in *Tessera* was that the Court was not provided with underlying documents that could be relied on to find that sales of the accused products occurred in the United States. *Id.* at *3-4. Unlike *Tessera*, SeaSpine's documents confirm the existence of the Segmental Derotation Assembly, Longitudinal tool that is meant to be used to link engagement members longitudinally along the spine. Further, Dr. Barry's on information and belief allegations are significantly more limited and supported by SeaSpine's own documents, unlike those in *Theranos*. *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *5 (N.D. Cal. Nov. 30, 2012) (finding "a number of responses consist of nothing more than a conclusion," such as "On information and belief, the Theranos System, also known as the central database, contains a data reader.").

      SeaSpine has not identified any other deficiencies in Dr. Barry's allegations regarding the Mariner Adult Deformity System alone. The remainder of SeaSpine's complaints stem from contingent allegations related to the Disputed Products and theories for which there is no current dispute.[2] "To the extent that Defendants believe that they can disprove [Dr. Barry's] position regarding" the use of Mariner Adult Deformity for *en bloc* surgery, "that issue can be adjudicated, on the merits, at the appropriate time" during summary judgment and after discovery. *Princeton Digital Image Corp. v. Harmonix Music Sys., Inc.*, No. CV 12-1461-LPS-CJB, 2018 WL 2298340, at *4 (D. Del. May 14, 2018) (citing *SSL Servs., LLC v. Cisco Sys., Inc.*, Case No. 2:15–cv–00433–JRG–RSP, 2016 WL 727673, *8 (E.D. Tex. Feb. 24, 2016) (explaining "infringement contentions are not meant to provide a forum for litigation of the substantive issues" and defendant's disagreements with factual accuracy or legal correctness of plaintiff's theories had no bearing on sufficiency of plaintiff's contentions (cleaned up))).

      Nor has SeaSpine alleged any "clearly defined . . . serious injury" related to discovery of Mainer Adult Deformity. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772,

---

[2] For example, SeaSpine also references Dr. Barry's citation to Dr. Sharma's expert report which was only cited in Dr. Barry's theories based on the Disputed Products, which is not ripe.

786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure."). Without such harm, SeaSpine cannot meet the good cause standard for a protective order.

**III.    There is No Ripe Dispute Regarding Discovery for the Disputed Products**

SeaSpine for the first time argues Dr. Barry "is not entitled to avoid a protective order by purporting to parse out portions of this infringement theory." D.I. 180 at 3, n.4. In other words, because Dr. Barry is preserving his position regarding what products and theories are in the case, SeaSpine will not participate in discovery on products Your Honor already ruled were in the case. As described above, SeaSpine did not previously argue the contentions must fail *in toto*; rather, it agreed to narrow this dispute. Ex. B at 1; Ex. C. Even setting aside SeaSpine's failures to meet and confer, there is no legal or factual basis for SeaSpine's argument.

There is no need for a protective order when the parties have agreed to forgo discovery pending a Court ruling. Under Rule 26(c)(1), the court may limit the scope of discovery upon a showing of good cause. Fed. R. Civ. P. 26(c)(1). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Pansy*, 23 F.3d at 786. As SeaSpine acknowledges, SeaSpine is not being asked to produce discovery about the Disputed Products. Thus, there is no "disclosure" that could possibly meet a good cause standard. SeaSpine has also not alleged and cannot allege any "clearly defined and serious injury" from merely being in possession of contentions contingent upon a future Court ruling. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (holding that "[b]road allegations of harm, unsubstantiated by specific examples . . . will not suffice" to meet the good cause standard). At best, this issue is not ripe until the Court rules on the pending motions.

More worryingly, SeaSpine is asking the Court to forbid discovery that may touch on the Disputed Products or theories while there are active disputes whether they are in the case. As Dr. Barry previously set forth, SeaSpine is using the discovery process to argue substantive non-infringement for any construct built with tools from one system and implants from another despite the numerous SeaSpine documents confirming compatibility and interoperability of its spinal systems. This is wrong as a matter of law and is why Dr. Barry appealed Your Honor's ruling and alternatively sought leave to amend Your Honor's non-prejudicial ruling. *LadaTech, LLC v. Illumina, Inc.*, 841 F. Supp. 2d 860, 877 (D. Del. 2012); *Align Tech., Inc v. 3Shape A/S*, No. CV 17-1647-LPS, 2020 WL 5979353, at *8 (D. Del. Oct. 8, 2020). If SeaSpine continues to substantively resist Dr. Barry's infringement theories based on combinations of products, SeaSpine cannot then use such combinations as a basis for non-infringement at trial. This is purely a tactical game played by SeaSpine and has derailed all of discovery.

**IV.    Sanctions**

This is the third time Dr. Barry has come to the Court to seek discovery on Mariner Adult Deformity. In each prior dispute, the Court agreed with Dr. Barry that discovery into the Mariner Adult Deformity System is proper. Therefore, Dr. Barry seeks attorneys' fees for the expenses of this third dispute regarding Mariner Adult Deformity should the Court deny SeaSpine's motion. "[T]he imposition of sanctions for abuse of discovery under Fed. R. Civ. Pro. 37 is a matter within the discretion of the trial court." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) (quotation marks omitted); *see also* L.R. l.3(a). As described above, SeaSpine refused to engage in discovery on Mariner Adult Deformity and did not seek a meet and confer. Instead, Dr. Barry was forced to schedule the meet and confer to seek resolution of this issue—again.

4

                                                           Respectfully submitted,

                                                           */s/ Gigi Murphy*

                                                         Gigi Murphy (No. 4919)

Enclosures

cc: Counsel of Record for Seaspine Defendants (via CM/ECF)